**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| Friends of Blue Mound State Park,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>Wisconsin Department of Natural Resources et al.,<br><br>　　　　Defendants. | Case No. 21-cv-00676-jdp |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DEFENDANTS' COMPLETE RESPONSES TO PLAINTIFF'S DISCOVERY REQUESTS**

Plaintiff Friends of Blue Mound State Park (the "Friends Group"), by and through its attorneys, Perkins Coie, LLP, respectfully submits this memorandum in support of its motion to compel Defendants'—Wisconsin Department of Natural Resources ("WDNR") and WDNR officials Steve Schmelzer and Missy VanLanduyt (collectively, "Defendants")—to complete their responses to the Friends Group's discovery requests.

The Defendants have repeatedly and verifiably failed to produce complete sets of records responsive to the Friends Group's requests for information. First, the Defendants withheld records directly relevant to the Friends Group's First Amendment retaliation, Fourteenth Amendment due process, and Wisconsin open records law claims in response the Friends Group's August 2021 open records request (the "Open Records Request"). Then, during discovery in this proceeding, the Friends Group again discovered that the Defendants failed to produce a highly relevant email chain. The Defendants' repeated failures to produce complete records have interrupted depositions and wasted the parties' resources. The circumstances surrounding the Defendants' failures to

produce these records prove that the Defendants have never conducted the careful and thorough search for responsive records to which the Friends Group is entitled.

Therefore, and as explained further below, the Court should grant the Friends Group's motion to compel. The Friends Group requests that the Court, in addition to whatever relief the Court deems appropriate, order the Defendants to reconduct their search for records responsive to each of the Friends Group's discovery requests and to verify the accuracy and completeness of this search. Further, the Friends Group requests that the Court order the Defendants to pay the Friends Group's reasonable expenses incurred in making this motion, including attorney's fees.

## BACKGROUND

This discovery dispute arises out of the Friends Group's civil action in this Court for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and for mandamus and punitive damages pursuant to Wisconsin open records law. (Compl. ¶ 1, ECF. No. 1-2) The Friends Group alleges that the Defendants violated the Friends Group's constitutional rights under the First Amendment of the U.S. Constitution and Article 1, § 4 of the Wisconsin Constitution to petition the government without incurring retaliation. (*Id.* ¶ 3) Further, the Friends Group alleges that the Defendants violated the Friends Group's right to procedural due process under the Fourteenth Amendment of the U.S. Constitution by using intimidation tactics to block the Friends Group's access to the courts and to administrative review. (*Id.* ¶ 4) Finally, the Friends Group alleges that the Defendants acted arbitrarily and capriciously, and in violation of Wisconsin open records law, by willfully excluding key responsive records about the Defendants' retaliation. (*Id.* ¶ 5)

More specifically, the Friends Group, a small non-profit organization made up of a little over a dozen volunteers, alleges that the Defendants unlawfully threatened, coerced, and intimidated the Friends Group's representatives in a meeting on August 5, 2021 (the "August 5

Meeting"). *Id.* ¶ 3, 37. Earlier that year, the Friends Group had filed a lawsuit in state court challenging the WDNR's final decision to construct a snowmobile trail in an ecologically sensitive area of Blue Mound State Park. (*Id.* ¶ 32) In response to the then-pending lawsuit, Ms. VanLanduyt, a high-ranking WDNR official, asked the Friends Group's representatives to meet with her and Mr. Schmelzer—without the Friends Group's attorneys present—for a "casual conversation." (*Id.* ¶ 33) Ms. VanLanduyt assured the Friends Group's representatives that the August 5 Meeting would not be about the lawsuit. (*Id.* ¶ 34) Ms. VanLanduyt's assurances, however, were an outright lie. (*Id.* ¶ 35) At the August 5 Meeting, these two high-ranking WDNR officials threatened to terminate the Friends Group's agreement with WDNR unless the Friends Group dropped its lawsuit. (*Id.* ¶ 37) Such termination would dissociate the Friends Group from the park for which it has tirelessly volunteered and fundraised for over 30 years. (*Id.* ¶ 37)

After that fateful meeting, in August 2021, the Friends Group's counsel submitted an Open Records Request to WDNR seeking all records related to the August 5 Meeting. (*Id.* ¶ 40) In response, the WDNR willfully withheld a key responsive record, which proves that Ms. VanLanduyt and Mr. Schmelzer threatened the Friends Group. (*Id.* ¶ 71) The Defendants' failure to produce this record was not only a violation of Wisconsin's open records law: it also foreshadowed the Defendants' continued failure to produce complete sets of records responsive to the Friends Group's requests via discovery in this Court.

## STATEMENT OF FACTS

This discovery dispute boils down to one simple problem: the Defendants are either purposefully hiding documents and/or they have never conducted a careful and thorough search for records responsive to the Friends Group's requests.

**A.    Even prior to discovery, the Defendants failed to produce all records responsive to the Friends Group's Open Records Request.**

On August 18, 2021, the Friends Group's counsel submitted an Open Records Request to the WDNR. (*Id.* ¶ 40) It requested all records detailing communications between WDNR officials related to the August 5 Meeting:

> "I am requesting an opportunity to inspect or obtain copies of public records, including any internal correspondence or any other written documentation, related to the August 5, 2021 meeting between representatives from the Friends of Blue Mound State Park and WDNR officials. In particular, I am requesting records of communications involving DNR Parks Director Steven Schmelzer and Recreational Partnerships Section Chief Missy Vanlanduyt from June 25, 2021 to present including the key words "Blue Mound," "Friends Group," "Friends," "Agreement," "termination," "meeting," "Bill Van Haren," "Willi Van Haren," "Karl Heil," "Gregory Wiegand," or "snowmobile." I am also requesting records of any communications involving DNR employees or officials during the same time period containing the terms above."

*Id.* The Defendants failed to respond to the Open Records Request for three weeks. (*Id.* ¶ 42) On September 9, 2021, the Friends Group's counsel submitted a demand letter to Defendants threatening an enforcement action if Defendants failed to respond to the Open Records Request by September 15, 2021. (*Id.* ¶ 42) Only after this demand letter did Defendants, on September 14, 2021, respond with an initial set of documents. (*Id.* ¶ 42) Another three weeks later, on October 7, 2021, the Friends Group received a few additional documents from WDNR. (*Id.* ¶ 47) The same day, WDNR represented that it had "concluded its search and located the final records responsive to [the] request." (*Id.*)

WDNR verifiably failed, however, to produce all records responsive to the Open Records Request. On October 5, 2021, the Friends Group's counsel received—through its own independent investigation and through a third party—a record directly responsive to its request for all records detailing communications between WDNR officials related to the August 5 Meeting. (*Id.* ¶ 44) The DNR produced this record to a third party but failed to produce it pursuant to the Open Records

Request. (*Id.* ¶ 46) During her deposition in this case, the WDNR's head of public records admitted that this document should have been produced. (*See* Walker Dep. 74:6–10, ECF No. 18)

This record is an email thread between Mr. Schmelzer and Ms. VanLanduyt discussing the August 5 Meeting.  (Compl.  ¶ 44, ECF No. 1-2) It provided an agenda for the August 5 Meeting (the "Meeting Agenda"). (*Id.*) The Meeting Agenda describes the Defendants' plan to retaliate against the Friends Group for filing its lawsuit: "Review of existing agreement: We will be initiating our 30 days [agreement termination notice] with an opportunity to cure if necessary. Only way to cure is to drop the suit." (*Id.*)

Defendants did not produce the Meeting Agenda in their open records response, even though the email contained obviously responsive keywords and subject matter: it contained the words "Blue Mound" and the names of the Friends Group's representatives, and it was a communication between Mr. Schmelzer and Ms. VanLanduyt the day before the August 5 Meeting. (*Id.* ¶ 46)

## B.    The Defendants continue failing to produce all records responsive to the Friends Group's discovery requests.

During a deposition in this case, the Friends Group learned that Defendants had yet again failed to produce an obviously responsive record—but this time in response to the Friends Group's formal discovery in this proceeding. Below are the relevant portions of the Friends Group's discovery requests:

**INTERROGATORY NO. 1:** Have any Communications regarding the termination of the Friends Group agreement between the WDNR and the FBMSP occurred between You and anyone else and/or between any of Your employees?

**INTERROGATORY NO. 2:** Have any Communications regarding the termination of, or failure to extend, other Friends Group's agreements occurred between You and anyone else and/or between any of Your employees?

**INTERROGATORY NO. 4:** Have any Communications regarding anything that could be interpreted as retaliatory conduct against one or more Friends Groups or other volunteer groups that serve Wisconsin state parks … occurred between You and anyone else and/or between any of Your employees?

**REQUEST FOR PRODUCTION NO. 1:** Produce all Documents and Communications referenced or relied upon in responding to the above interrogatories.

**REQUEST FOR PRODUCTION NO. 2:** Produce all other Documents that support or refute your responses to the interrogatories.

**REQUEST FOR PRODUCTION NO. 3:** Produce all internal and external Documents and Communications … in Your possession or control relating in any way to the Friends of Blue Mound State Park.

**REQUEST FOR PRODUCTION NO. 5:** Produce all internal and external Documents and Communications … in Your possession or control relating to the termination of, or failure to extend, any Friends Group agreement ….

**REQUEST FOR PRODUCTION NO. 6:** Produce all internal and external Documents and Communications … in Your possession or control between any WDNR employee and … any other non-profit organizations that have initiated litigation against the WDNR.

(Potts Decl. ¶ 6; Ex. A, 6–8) The Friends Group received responses from Defendants on February 18, 2022. In response to Interrogatory No. 1, the Defendants produced answers only from Ms. VanLanduyt and Mr. Schmelzer. (Potts Decl. ¶ 7; Ex. B, 4; Ex. C, 14). The Friends Group's counsel called the Defendants' counsel on April 20, 2022. (Potts Decl. ¶ 8; Ex. D) The Friends Group requested answers from other relevant WDNR officials to the extent that those answers would provide new information and would result in the production of more responsive documents under Request for Production No. 1. (*Id.*) The Defendants' counsel responded that only Mr. Schmelzer and Ms. VanLanduyt were present at all the meetings, thus they were the only people who answered. The Defendants' counsel went on to assure the Friends Group's counsel that: "there are no other documents that are responsive to [Request for Production] 1 that have not been produced." (*Id.*)

In response to Requests for Production Nos. 5 and 6, the Defendants provided only CCAP and Pacer litigation records. (Potts Decl. ¶ 7; Ex. B, 5) During the April 20 call, the Defendants requested that the Friends Group "identify specific lawsuits" for which the Defendants could "conduct a lawsuit-specific search and supplement its response." (Potts Decl. ¶ 7; Ex. B, 5) The Defendants agreed to send any communications regarding three other friends groups who have sued WDNR. (Potts Decl. ¶ 8; Ex. D, 2) The Defendants' counsel said there was no need to submit an additional discovery request because the Defendants offered to supplement their responses. (*Id.*)

On May 9, 2022, the Friends Group's counsel sent a list of three friends groups to Defendants' counsel. (Potts Decl. ¶ 9; Ex. E) As of June 13, 2022, the Defendants represented that they were "working on supplementing the other Friends groups' discovery." (Potts Decl. ¶ 10; Ex. F) To date, the Defendants have still not produced any such records responsive to Requests for Production Nos. 5 and 6. (*Id.*)

The Friends Group's counsel also asked for any communications supporting Ms. VanLanduyt and Mr. Schmeltzer's characterizations of the August 5 Meeting. (Potts Decl. ¶ 8; Ex. D, 1) The Defendants' counsel again assured the Friends Group's counsel that the Defendants had produced all existing responsive documents. *Id.* Indeed, for each concern the Friends Group's counsel raised about Defendants' production pursuant to its discovery requests, the Defendants' counsel assured the Friends Group's counsel that the Defendants had produced all existing non-privileged responsive records. (*Id.*)

Yet, during a deposition on May 11, 2022, the Friends Group learned of emails that were directly responsive to the Friends Group's discovery request and are material to the claims in this case, which had not been produced by the Defendants. More specifically, on May 11, 2022 at 9:00 A.M., the Friends Group deposed Diane Milligan, Deputy Counsel at WDNR. (Milligan Dep.

1:15–16, ECF No. 19) The Friends Group deposed Ms. Milligan to learn which documents from the Open Records Request she authorized for release. (*Id.* 35:19–23) During the deposition, the Friends Group's counsel asked Ms. Milligan about an email chain related to the Open Records Request (Request No. PR8841). (*Id.* 46:7–13) PR8841 was the open records request through which the third party (a Madison.com reporter) had sourced the Meeting Agenda that Defendants failed to produce to Plaintiff pursuant to the Open Records Request.[1] (*Id.* 47:12–15) During the deposition, the Defendants' counsel refused to let Ms. Milligan answer questions about how Ms. VanLanduyt had responded to PR8841. *Id.* 48:23–25. She insisted that the Friends Group had Ms. VanLanduyt's PR8841 email responses (the "VanLanduyt Emails"). (*Id.* 47:16–18) The Friends Group's counsel told the Defendants' counsel that it did not have the VanLanduyt Emails. (*Id.* 47:24–25)

After the deposition concluded, the Friends Group conducted a search of the records produced by the Defendants, and the VanLanduyt Emails were not included in the production. In other words, the Friends Group's counsel was correct: the Defendants failed to produce the VanLanduyt Emails in their response to the Friends Group's discovery requests. The Defendants' counsel sent the VanLanduyt Emails to the Friends Group's counsel for the very first time on May 11, 2022 at 10:26 A.M. Central Time, about an hour and a half into to Ms. Milligan's deposition.[2] (Potts Decl. ¶ 11; Ex. G, 4) The Friends Group's counsel was therefore unaware of the VanLanduyt Emails and saw them for the first time while deposing Ms. Milligan. (Milligan Dep. 47:24–25, ECF No. 19)

Crucially, the VanLanduyt Emails included Ms. VanLanduyt's response to WDNR's records coordinator's question whether the Defendants "actually used" the Meeting Agenda "for

---

[1] PR8841 requested "any records referencing termination of operating agreements with friends groups since 2010."
[2] While the time on the email is 8:26 A.M., the receiving attorney was in the Pacific Time Zone.

the meeting on 8/5/21". (Potts Decl. ¶ 11; Ex. G, 5) In the VanLanduyt Emails, Ms. VanLanduyt responds: "We used it to review the notes ahead of the meeting but did not use it during the meeting and did not hand it out." (*Id.*) Because of Ms. VanLanduty's characterization of the Meeting Agenda, the records custodian considered it to be a "draft," which could be withheld. (*Id.*)

The Friends Group's discovery requests' keywords and subject matter clearly implicated the VanLanduyt Emails. The Defendants should have produced the VanLanduyt Emails pursuant to: 1) Interrogatory No. 1 for all records "referenced or relied upon in responding to" "any Communications regarding the termination of the Friends Group agreement between the WDNR and the [Friends Group] … between any [WDNR] employees"; and 2) Request for Production No. 3 for "all internal … Communications … relating in any way to [the Friends Group]." (Compl. ¶ 44, ECF No. 1-2; Potts Decl. ¶ 6; Ex. A, 5–8)

The Defendants' failure to produce all records responsive to the Friends Group's requests thus continues into discovery. The Defendants have repeatedly assured the Friends Group that the Defendants have already produced all existing non-privileged records responsive to its requests. Yet, the Defendants' repeated and verifiable failures to produce obviously responsive records proves that the Defendants have never performed the careful and thorough search required by the federal rules of discovery.

## C. The Defendants have failed to respond to the Friends Group's subsequent requests that the Defendants produce all records responsive to its discovery requests.

The Friends Group has requested that Defendants verify the accuracy and completeness of their produced records, but the Defendants have been unresponsive. On May 12, 2022, the Friends Group's counsel alerted the Defendants' counsel via email that the Defendants failed to produce the VanLanduyt Emails until Ms. Milligan's deposition. (Potts Decl. 12; Ex. G, 3) The Friends Group's counsel expressed his concern that the Defendants again failed to produce all documents

responsive to the Open Records Request and the Friends Group's discovery requests. (*Id.*) The Defendants' counsel responded the same day, assuring the Friends Group's counsel that she would "look into this." (*Id.*)

Eighteen days later, the Friends Group's counsel again emailed the Defendants' counsel on May 30, 2022 for an update. (Potts Decl. ¶ 12, Ex. G, 2) The Friends Group's counsel sought the Defendants' "complete discovery responses prior to the upcoming depositions" the following week. (*Id.*) The Friends Group's counsel offered to reschedule the depositions if the Defendants needed more time to sort out what had happened, but he emphasized that the Friends Group did not want to take more depositions without having all relevant documents in hand. *Id.* He noted that the Friends Group would almost certainly not have deposed Ms. Milligan had the Defendants disclosed the VanLanduyt Emails. (*Id.*)

The Defendants' counsel never responded and depositions carried on as scheduled. After deposing Mr. Schmelzer on June 1, 2022, the Friends Group's counsel put the possibility of recalling Mr. Schmelzer on the table if the Friends Group located more documents that the Defendants failed to produce. (Schmelzer Dep. 97:23–25, 98:1–6, ECF No. 20) The Defendants' counsel agreed. (*Id.* 98:7)

### RULE 37(a)(1) NOTICE AND DISCLOSURE

The Friends Group hereby certifies that it has provided Defendants notice of its Motion to Compel and that it has conferred with Defendants in good faith to obtain disclosure from Defendants without court action. Fed. R. Civ. P. 37(a)(1). The Friends Group conferred with Defendants twice via live, voice-to-voice communication. *Boehm v. Scheels All Sports, Inc.*, No. 15-cv-379, 2015 WL 8516825, at *1 (W.D. Wis. Dec. 11, 2015). On April 20, 2022, the Friends Group's counsel called Defendants' counsel, and Defendants' counsel falsely represented that the

Defendants had produced all responsive non-privileged records pursuant to the Friends Group's discovery requests. After learning that Defendants failed to produce the VanLanduyt Emails, the Friends Group's counsel again discussed the matter with the Defendants' counsel at the end of Mr. Schmelzer's deposition. The Defendants' counsel has not responded to the Friends Group's counsel's emails regarding the Defendants' failure to disclose the VanLanduyt Emails.

## GOVERNING STANDARD

The Court should grant a motion to compel discovery when the opposing party fails to answer an interrogatory or fails to produce documents pursuant to a request for production. Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). An incomplete disclosure is a failure to disclose. Fed. R. Civ. P. 37(a)(4). Interrogatories and requests for production may relate to any matter within the scope of Federal Rule of Civil Procedure 26(b). Fed. R. Civ. P. 33(a)(2), 34(a). "For good cause, the court may order discovery of *any* matter relevant to the subject matter involved in the action." *Dauska v. Green Bay Packaging Inc.*, 291 F.R.D. 251, 257 (E.D. Wis. 2013) (quoting Fed. R. Civ. P. 26(b)(1)). Rule 26(b)(1) provides the broad scope of relevant subject matter:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The Court "has broad discretion over pretrial discovery rulings." *Berger v. Wood Cnty. Sheriff's Dep't*, No. 21-cv-454, 2022 WL 594544, at *1 (W.D. Wis. Feb. 28, 2022) (citing *Thermal Design, Inc. v. Am. Soc'y of Heating Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th. Cir. 2014)). "Public policy favors disclosure of relevant materials." *Boehm v. Scheels All*

*Sports, Inc.*, No. 15-cv-379, 2016 WL 6462213, at *2 (W.D. Wis. Nov. 1, 2016) (citing *Patterson v. Avery Denison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)).

Once the Friends Group shows that the Defendants failed to respond to a discovery request, the Defendants "bear[] the burden of showing why the request is improper." *Dauska*, 291 F.R.D. at 258. Though the Court "must limit the frequency or extent of discovery otherwise allowed if the discovery sought is unreasonably cumulative or duplicative," *Berger*, 2022 WL 594544, at *1, "[b]efore restricting discovery, the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it." *Id*. In making discovery rulings, the Court must also account for "society's interest in furthering 'the truthseeking function' in the particular case before the court." *Lisse v. Select Portfolio Servicing, Inc.*, No. 17-cv-206, 2017 WL 6021316, at *7 (W.D. Wis. Dec. 5, 2017) (quoting *Patterson*, 281 F.3d at 681)).

## ARGUMENT

**A.   The Court should order the Defendants to reconduct their search for records responsive to each of the Friends Group's discovery requests and to verify the accuracy and completeness of their search.**

The Court should grant the Friends Group's Motion to Compel. The Defendants have repeatedly and verifiably failed to produce complete records responsive to the Friends Group's requests. Under these circumstances, the appropriate remedy is for the Court to order the Defendants to reconduct their search for records responsive to each of the Friends Group's discovery requests and to verify the accuracy and completeness of this search.

**1.   The Defendants have never conducted a careful and thorough search for records relevant to the Friends Group's claims.**

Based on the facts above, the Defendants have not conducted a careful and thorough search for responsive records. The Friends Group is entitled to "a 'careful and thorough' search for all responsive documents." *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 376 (S.D.

Ind. 2009) ("Rule 34 guarantees that the requesting party will receive, concurrently with the response, **all** documents reasonably available.") (emphasis in original); *Profile Gear Corp. v. Foundry Allied Indus., Inc.*, 937 F.2d 351, 353–54 (7th Cir. 1991) (affirming district court's entry of summary judgment after defendant failed to "immediately engage in a thorough search for all documents described in [plaintiff's] document request that remain undisclosed" pursuant to Rule 37 order). The Defendants may not "[u]nilaterally decid[e] to conduct a cursory initial search to be followed by 'rolling' productions from subsequent, more thorough, searches .…" *Novelty, Inc.*, 265 F.R.D. at 376; *Leaf v. Cottey*, No. 02-CV-433, 2005 WL 2218232, at *5 (S.D. Ind. Sept. 8, 2005) ("When a party responds to discovery, it has the obligation to search for and investigate the location of all responsive documents within its domain, and to update discovery responses in a reasonably timely manner.")

With all due respect for the Defendants' counsel, the Friends Group hopes that carelessness explains the Defendants' failure to produce responsive records. The Friends Group has not, however, ruled out worse explanations. *See, e.g., Govas v. Chalmers*, 965 F.2d 298, 300 (7th Cir. 1992) ("Even more startling than the incidents of delay is the … indication that [plaintiffs] tried to hide evidence which weakened their claims."); *Profile Gear Corp.*, 937 F.2d at 352 ("[T]he only plausible explanation for [defendant's] response that no documents satisfied [the document] request … is that [defendant] and [defendant's] counsel lied when responding to these requests.").

At best, the Defendants failed to conduct the careful and thorough search to which the Friends Group is entitled. The Defendants failed to produce the Meeting Agenda—a silver bullet piece of evidence proving the retaliation occurred—even though the Meeting Agenda was directly responsive to the Open Records Request's keywords and subject matter. Then, the Defendants failed to produce the VanLanduyt Emails, which are directly responsive to both the Open Records

Requests and the Friends Group's discovery requests. Failing to produce the VanLanduyt Emails is another indication of carelessness or malfeasance, especially since the Defendant's counsel was able to produce them in the middle of the Milligan deposition. The Defendants could not possibly have missed the Meeting Agenda and the VanLanduyt Emails after conducting a careful and thorough search for responsive records.

Thus, the Defendants have clearly never conducted a careful and thorough search for responsive records. The Defendants' failure to do so has already resulted in an incomplete disclosure, and therefore a failure to disclose, pursuant to the Friends Group's discovery requests. Fed. R. Civ. P. 37(a)(4). Therefore, the Court should grant the Friends Group's motion to compel. Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv).

**2.    Ordering the Defendants to reconduct and verify the accuracy and completeness of their search for responsive records is the appropriate remedy.**

Ordering the Defendants to reconduct and verify the accuracy and completeness of their search is the appropriate remedy. It is unfair for the Defendants to force the Friends Group to rely on their potentially incomplete production, especially where Defendants continue to produce piecemeal records directly responsive to the Friends Group's discovery requests. This tactic clearly contravenes the public policy of favoring disclosure of relevant materials. *Boehm*, 2016 WL 6462213, at *2.

Naturally, because the Court has broad discretion over pretrial discovery rulings, *Berger*, 2022 WL 594544, at *1, the Court has broad discretion to fashion a remedy appropriate for any specific discovery violation. *O'leary v. Humana Ins.*, No. 17-C-1774, 2020 WL 7029341, at *3 (E.D. Wis. Nov. 30, 2020) ("District courts have the power to impose sanctions that are 'proportionate to the circumstances surrounding a party's failure to comply with discovery rules' ....") (quoting *Rice v. City of Chi.*, 333 F.3d 780, 784 (7th Cir. 2003)).

Simple fairness governs the permissible remedy for a discovery violation. *Glover v. Bd. of Educ. of Rockford Pub. Schs., Dist. 205*, No. 02 C 50143, 2004 WL 785270, at *2 (N.D. Ill. Apr. 12, 2004) ("[T]here is no rule, *per se*, requiring [defendants] to sequentially number documents, [but defendants] are incorrect in thinking they can haphazardly produce documents . … [I]t is … only fair for Defendants to organize and label the documents it has produced."). Fairness requires the opposing party to produce complete, responsive records pursuant to discovery requests, not just what the opposing party thinks the movant needs. *Boehm v. Scheels All Sports, Inc.*, No. 15-cv-379, 2016 WL 6811559, at *3 (W.D. Wis. Nov. 17, 2016) ("Fairness requires that [defendant] disclose in full its communications .… [Defendant] cannot cherry-pick [seller's] favorable comments while barring plaintiff's access to the remainder of [seller's] relevant communications when plaintiffs cannot otherwise access this evidence. And although [defendant] says that plaintiffs now have the information necessary, … [Defendant] must disclose its emails .…").

Where a movant proves that an opposing party has produced incomplete discovery responses, the Court should order the opposing party to reconduct its discovery obligations. *Boehm*, 2016 WL 6462213, at *2; *H.C. Duke & Son, LLC v. Prism Mktg. Corp.*, No. 11-cv-04006, 2013 WL 12247811, at *4 (C.D. Ill. Nov. 7, 2013) ("Defendants must redo their written responses to Plaintiff's discovery requests to specifically identify which documents respond to which requests."). The same is true even where the movant shows that the opposing party failed to produce complete discovery responses but cannot specifically identify the records the opposing party failed to produce. *Boehm*, 2016 WL 6462213, at *2 ("Plaintiffs allege they have not received all available materials from [defendant], despite having requested them more than 10 months ago. It is not clear what materials [defendant] has that he has not yet produced, but the court will compel him to produce whatever he has.").

Under the circumstances of the present case, fairness dictates that the appropriate remedy is for the Court to order the Defendants to reconduct and verify the accuracy and completeness of their search. At least twice now, the Plaintiff has caught the Defendant failing to produce responsive records. This has put, and continues to put, the Friends Group in the unfair position of having to rely on the Defendants' incomplete production. This unfairness already disadvantaged the Friends Group when the Defendants produced the VanLanduyt Emails during Ms. Milligan's deposition. It is simply unfair for the Defendants to produce records piecemeal when a careful and thorough search would produce all of Defendants' responsive records at once. Therefore, ordering the Defendants to reconduct and verify the accuracy and completeness of their search is the appropriate remedy.

### 3.    Ordering the Defendants to reconduct and verify the accuracy and completeness of their search is proportional to the needs of the case because doing so will almost certainly reveal relevant records.

The remedy the Friends Group seeks will benefit the Group because it will almost certainly reveal more relevant records that the Defendants have failed to produce. The Friends Group may obtain records regarding any nonprivileged matter that is relevant to its action. Fed. R. Civ. P. 26(b)(1). The extreme relevance of each of the records Defendants have thus far failed to produce pursuant to the Friends Group's requests proves that there are almost certainly other relevant records that the Defendants have failed to produce.

To prevail on its First Amendment claim, the Friends Group must establish three elements. It must show: 1) that it engaged in protected First Amendment activity; 2) that Defendants took adverse action against it; and 3) that its protected conduct was at least a motivating factor of the adverse action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The Meeting Agenda that the Defendants failed to produce in response to the Open Records Request bears directly on all three of these elements: 1) it referenced the Friends Group's protected First Amendment activity

(i.e., suing the WDNR); 2) it proves that the Defendants took adverse action against the Friends Group by "initiating their 30 days agreement termination notice"; and 3) it provides evidence that the Friends Group's lawsuit was a motivating factor of the Defendants' threat: "[o]nly way to cure is to drop the suit."

The fact that the Defendants through federal discovery also failed to produce another responsive, highly relevant record adds to the Friends Group's distrust of the Defendants. The Defendants failed to produce the VanLanduyt Emails, which demonstrate the reason *why* the Defendants failed to produce the Meeting Agenda.

Under Wisconsin Open Records law, requesters "may bring an action for mandamus" "[i]f an authority withholds a record or a part of a record," and a court may award a requester punitive damages if it finds that the records custodian "has arbitrarily and capriciously denied or delayed response to a request." Wis. Stat. § 19.37(1)(a), (3). The VanLanduyt Emails are extremely relevant to the Friends Group's Wisconsin open records law claims: they include VanLanduyt's characterization of the Meeting Agenda, and they include the records coordinator's thought process in concluding that the Meeting Agenda was a withhold-able "draft." Yet again, the Defendants thus failed to disclose a record vital to the Friends Group's claim that Defendants unlawfully withheld a "record" and that the WDNR did so arbitrarily and capriciously.

Each record that the Defendants have failed to produce pursuant to the Friends Group's requests has proven extremely relevant to the Friends Group's claims in this Court. As such, the Friends Group will likely benefit from the requested remedy because it will almost certainly reveal more relevant records to which the Friends Group is entitled under the broad scope of discoverable relevant subject matter. Fed. R. Civ. P. 26.

**4.**  **Because the Defendants have never conducted a careful and thorough search, the remedy sought in this motion is proportional to the needs of the Friends Group's case and is not unduly burdensome for the comparatively well-resourced Defendants.**

The remedy the Friends Group seeks - an order compelling the Defendants to re-do their search for records and verify that their responses are complete - is not something the Plaintiff's should even need to ask this Court for; however, given the circumstances, the Friends Group feels it is left with no other alternatives. Frankly, the Friends Group is hoping that an order from this Court will cause the Defendants to be more deliberate and careful with their responses.

The Friends Group's request of this Court is clearly proportional to the needs of the Friends Group's case and is not unduly burdensome for the comparatively well-resourced Defendants who apparently never conducted a careful and thorough search for responsive records in the first place. This remedy is proportional to the needs of the Friends Group's case considering: 1) the importance of the issues at stake in this action; 2) the amount in controversy; 3) the parties' respective access to relevant information; 4) the parties' resources; 5) the information's importance in resolving the issues; and 6) the benefit of the proposed discovery clearly outweighing Defendants' burden and expense in producing it. Fed. R. Civ. P. 26(b)(1).

Taking each consideration in turn, first, the issues at stake in the Friends Group's action are incredibly important, especially when accounting for the "truthseeking function" of discovery. *Lisse*, 2017 WL 6021316, at *7. This case arises out of the Defendants' retaliation against the Friends Group for petitioning the government, the Defendants' attempt to block the Friends Group from accessing the courts, and the Defendants' attempt to stonewall the Friends Group's rightful access to government records to which it is entitled under Wisconsin's open records law. To vindicate the Defendants' actions in this discovery dispute would further embolden the Defendants to withhold information relevant to parties' claims against the government for its bad acts.

Second, the amount in controversy, though yet to be determined, weighs nonetheless in favor of ordering the Defendants to reconduct their search and verify its accuracy and completeness. The money damages at stake "are only one factor, to be balanced against other factors." Fed. R. Civ. P. 26(b)(1) (advisory committee's note to the 2015 amendment). Where the amount of money in controversy is unclear, the Federal Rules of Civil Procedure recognize "the significance of the substantive issues, as measured in philosophic, social, or institutional terms." *Id.*; *L. Zingerman, D.D.S., P.C. v. Nissan N. Am., Inc.*, No. 14 C 7835, 2016 WL 4206062, at *4 (N.D. Ill. Aug. 10, 2016) (considering under this proportionality factor whether "litigation involves matters of 'importance far beyond the monetary amount involved.'")*; CCA Recordings 2255 Litig. v. United States*, No. 19-cv-2491, 2020 WL 4284222, at *3 n.22 (D. Kan. July 27, 2020) (considering liberty interests under the "amount in controversy" proportionality prong). The protection of Free Speech, for example, "may have importance far beyond the monetary amount involved." Fed. R. Civ. P. 26(b)(1) (advisory committee's note to the 2015 amendment). Even if the Friends Group was not seeking monetary damages from the Defendants, the amount in controversy includes the liberty interests at stake here: freedom from retaliation for petitioning the government, due process, and transparent government.

Third, the Defendants are the only party with access to the information the Friends Group needs. The present discovery dispute is a classic case of "'information asymmetry'": "situations in which one party has ready access to 'vast amounts of information' and the other party has very little … [T]hese circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so." *In re Adkins Supply, Inc.*, 555 B.R. 579, 590 (N.D. Tex. 2016) (internal citation omitted) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment). Here, the Defendants have access to all records relevant to the Friends

Group's case. The Defendants' failure to disclose these records has forced the Friends Group to source records from third parties. Given this information asymmetry, the Defendants must meet a heavy burden to demonstrate that any objections of overbreadth or undue burden weigh against reconducting their search and verifying its accuracy and completeness. *Id.*

Fourth, the Defendants are better resourced than the Friends Group. The Friends Group is a small coalition of volunteers represented *pro bono* in this case. The WDNR is a state-funded agency with ample resources to produce records responsive to the Friends Group's requests. *Simon v. Nw. Univ.*, No. 15-CV-1433, 2017 WL 467677, at *3 (N.D. Ill. Feb. 3. 2017) ("[T]he Court finds there is a relatively low burden on Northwestern to produce the documents requested by [inmate] Plaintiff.").

Fifth, reconducting discovery is incredibly important in resolving the issues. "A 'party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as the party understands them.'" *Cnty. of Cook v. Bank of Am. Corp.*, No. 14 C 22280, 2019 WL 6309925, at *1 (N.D. Ill. Nov. 25, 2019) (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment). Ordering the Defendants to reconduct and verify the accuracy and completeness of their search is important to resolving the issues in this case. As demonstrated above, each time the Friends Group has accessed information that Defendants once withheld, the information has been squarely relevant to the Friends Group's case.

Finally, the burden and expense of the proposed discovery order does not outweigh its likely benefit. The "party claiming undue burden or expense ordinarily has far better information— perhaps the only information—with respect to that part of the determination" whether information beyond what has to date been disclosed bears on the issues in this case. *Id.* Ordering the Defendants

to reconduct and verify the accuracy and completeness of their search is not an unduly burdensome remedy precisely because the Defendants have sole access to the relevant records. Again, the Defendants bear the burden of demonstrating that the proposed discovery request in this case does not outweigh its burden and expense. *In re Adkins Supply, Inc.*, 555 B.R. at 590. Because the Defendants have repeatedly failed to produce records directly responsive to the Friends Group's requests, the Defendants could not have ever conducted a careful and thorough search for records in the first place.

Considering the totality of the circumstances and weighing the value of the records the Friends Group seeks against the Defendants' burden of providing them, *Lisse*, 2017 WL 6021316, at *7, the Friends Group's proposed remedy is proportional to the needs of the Friends Group's case and is not unduly burdensome for the comparatively well-resourced Defendants.

**B.      The Court should order the Defendants to pay the Friends Group's reasonable expenses incurred in making this motion, including attorney's fees.**

The Friends Group respectfully requests that, pursuant to Federal Rule of Civil Procedure 37, the Court award the Friends Group its reasonable expenses incurred in making this motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A) ("If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.").

**CONCLUSION**

For the foregoing reasons, the Friends Group respectfully requests that the Court, in addition to whatever relief the Court deems appropriate, order the Defendants to reconduct and verify the accuracy and completeness of their search for records responsive to the Friends Group's

discovery requests, and it requests that the Court order the Defendants to pay the Friends Group's reasonable expenses incurred in making this motion.

DATED:  July 7, 2022

*s/ Brian H. Potts*
Brian H. Potts
BPotts@perkinscoie.com
David R. Zoppo
DZoppo@perkinscoie.com
Jared E. Padway
JPadway@perkinscoie.com
Juan Jose Fonseca Angel
JFonsecaAngel@perkinscoie.com
Olivia S. Radics
ORadics@perkinscoie.com
PERKINS COIE LLP
33 E Main St, Ste 201
Madison, Wisconsin 53703-3095
Telephone:  608.663.7460
Facsimile:   608.663.7499

Cassie D. Roberts Riggs (*Pro Hac Vice*)
CRoberts@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone:  503.727.2000
Facsimile:   503.727.2222

Kaela Shiigi (*Pro Hac Vice*)
KShiigi@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone:  415.344.7000
Facsimile:   415.344.7050

*Attorneys for Plaintiff*
*Friends of Blue Mound State Park*
