# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

---

**FRIENDS OF BLUE MOUND STATE PARK,**

        Plaintiff,

   v.

                            Case No.  21-cv-676

**WISCONSIN DEPARTMENT OF NATURAL
RESOURCES,
STEVEN SCHMELZER,
MELISSA VANLANDUYT,**

        Defendants.

---

## FIRST AMENDED COMPLAINT

---

Plaintiff the Friends of Blue Mound State Park (the "Friends Group" or "Plaintiff"), by and through its attorneys, Perkins Coie LLP, for its complaint herein alleges and states as follows:

## <u>OVERVIEW</u>

1.    This is a civil action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983; for declaratory and injunctive relief pursuant to the rule-making procedures of Chapter 227, Wis. Stat.; for mandamus pursuant to Wis. Stat. § 19.37(1); and for punitive damages pursuant to Wis. Stat. § 19.37(3).

2.    Defendant employees of the Wisconsin Department of Natural Resources ("WDNR") have violated Plaintiff's constitutional right to petition the government without incurring retaliation for doing so.

3.    More specifically, and as described more fully herein, the Defendant WDNR employees have threatened, coerced, and intimidated Plaintiff's representatives in violation of the

First Amendment of the United States Constitution and Article 1, § 4 of the Wisconsin Constitution.

4.     Defendants have also violated Plaintiff's right to procedural due process under the Fourteenth Amendment of the United States Constitution by using intimidation tactics to try to block Plaintiff's access to the courts and its statutory right to administrative review under Wis. Stat. Ch. 227.

5.     Defendants have further restricted Plaintiff's free speech in violation of Article 1, Section 3 of the Wisconsin Constitution, the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §1983.

6.     More specifically, and as described more fully herein, the WDNR has issued a vague and overbroad policy that impermissibly regulates the Plaintiff's and other similarly situated parties' speech.

7.     The WDNR's policy further discriminates based on the speech's content and the views it represents.

8.     Defendants have also violated the rule-making procedures of Wis. Stat. Chapter 227 by issuing a statement of policy without the benefit of a duly promulgated rule, as required by Wis. Stat. § 227.10(1).

9.     The Friends Group brings this action under the United States and Wisconsin Constitutions because, first, on August 5, 2021, high-ranking representatives of the WNDR met with the Friends Group's representatives without their attorneys present and threatened to terminate an existing partnership agreement with the Friends Group unless the group agreed to dismiss its pending lawsuits against the WDNR.

10.    The high-ranking WDNR representatives then, through their attorneys, denied that they made these threats; however, the Friends Group later obtained documentary proof (attached as Exhibit A) that these threats occurred.

11.    Additionally, early discovery in this case unveiled the issuance of a WDNR rule (the "Rule Against Speaking Out") restricting the Plaintiff's and other similarly situated organizations' free speech based on the content of the speech in a manner not narrowly tailored to advance a compelling governmental interest, in violation of Plaintiff's and other similarly situated organizations' First Amendment rights. *See Reed v. Town of Gilbert*, 576 U.S. 155, 171–73 (2015).

12.    The Defendants issued the Rule Against Speaking Out without the requisite authority and in violation of Wis. Stat. § 227.10(1).

13.    Further, the WDNR staff arbitrarily and capriciously and in violation of Wisconsin's open records laws excluded a key responsive record in WDNR's responses to Plaintiff's request for records under the Wisconsin Open Records Law in violation of Wis. Stat. § 19.35.

14.    Plaintiff respectfully requests that this Court declare that the WDNR's actions constitute: a) a deprivation of Plaintiff's and its members' right to petition the government in violation of the First Amendment of the United States Constitution and Article 1, § 4 of the Wisconsin Constitution, b) a deprivation of Plaintiff's right to due process under the Fourteenth Amendment of the United States Constitution, c) a violation of Plaintiff's and those similarly situated free speech rights in violation of Article 1, Section 3 of the Wisconsin Constitution, the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §1983; and d) a violation of Wisconsin rulemaking procedures under Chapter 227, Wis. Stat.

15.    Additionally, the Plaintiff respectfully requests that this Court declare that the Rule Against Speaking Out is invalid and unenforceable.

16.     Further, the Plaintiff respectfully requests that this Court permanently enjoin the WDNR and the specific WDNR employee Defendants from a) making any further threats of retaliation or taking any further retaliatory action against the Friends Group in any way related to its lawsuits against the WDNR, including but not limited to WDNR terminating the Friends Group's agreement with the WDNR related to the Blue Mound State Park (the "Park"), and b) implementing and enforcing the Rule Against Speaking Out.

17.     Lastly, the Plaintiff respectfully requests that this Court issue an order requiring WDNR to release all records related to the August 5th meeting, as Plaintiff has requested through a lawful open records request, and award Plaintiffs its costs prosecuting this action and punitive damages in an amount to be determined at trial for Defendant WDNR's *willful* disregard of its obligation to fully comply with Plaintiff's request for responsive records under Wisconsin's Open Records Law.

## THE PARTIES

18.     Plaintiff, the Friends of Blue Mound State Park, is a small nonprofit 501(c)(3) organization.

19.     The Plaintiff has an agreement with the WDNR that allows the group to be designated as a "Friends Group" that supports and assists the WDNR in providing recreational, interpretive, scientific, historical, educational, and related visitor services to enhance Blue Mound State Park.

20.     The Friends Group is associated with the Park in accordance with Wis. Admin. Code NR § 1.71. The relationship between the WDNR and the Friends Group is governed by an agreement pursuant to NR § 1.71(4)(b)(2), which was most recently renewed on November 19, 2019, and is valid until December 31, 2024 (the "Agreement"). Exhibit B.

21.     Under the Agreement, the Friends Group is organized to support the Park and its visitors and must limit its official activities to those that benefit the Park. Exhibit B at 2.

22.     The Friends Group and its individual citizen members have worked tirelessly to enhance the Park for many years. Over the past decade, the Friends Group's activities and initiatives have donated over $1 million to the WDNR for use at the Park, and Plaintiff's volunteers annually contribute significant volunteer hours. The Friends Group, for example, built the Friends Shelter, a 2,400 square foot ADA accessible all-season shelter and learning center at the trailhead area of the Park and funded the installation of solar panels on the Friends Shelter and Park administrative office. The Friends Group has also contributed to and/or fully funded the purchase of recreational equipment and infrastructure, including the swimming pool renovation, playground equipment, mountain bike trail construction and renovation, and ski grooming equipment.

23.     The Friends Group organizes several annual fundraiser events for the Park, including candlelight ski events, a trail run fundraiser, and the Horribly Hilly Hundreds Bike Event fundraiser, which was last held on June 18, 2022. Collectively, these events typically raise tens of thousands of dollars annually for the Park.

24.     The Friends Group has over a dozen dedicated members that have put in countless volunteer hours to improving and maintaining the Park.

25.     For example, Karl Heil, Gail Van Haren, Willi Van Haren, Greg Weigand, Tom Hawes, David Zoromski, and Paul Zoske are all long-term members who are highly involved in Friends Group activities.

26.     No other dedicated group exists to maintain the Park's habitats for native plant and animal species that Plaintiff's members have worked to protect through prairie/savanna cleanup events and invasive species control.

27.	The Friends Group's and its members' substantial interests and First and Fourteenth Amendment rights under the United States Constitution, as well as their rights under Article 1 of the Wisconsin Constitution, are severely threatened by Defendants' actions, including the Defendants' threats to terminate the Friends Group Agreement.

28.	Defendant Steven Schmelzer is the current WDNR Parks Director.

29.	On information and belief, Director Schmelzer began working at the WDNR in 1992 as a Park Ranger at Devil's Lake State Park and has worked in various positions at the WDNR for the past 29 years. In 2020, Director Schmelzer was promoted to district park supervisor after having served as the Devil's Lake Park superintendent for 12 years. A year later, Director Schmelzer was promoted to WDNR Parks Director.

30.	Defendant Melissa ("Missy") VanLanduyt is the Recreation Partnerships, External Relations, and Communication Section Chief for the WDNR Bureau of Parks and Recreation Management.

## JURISDICTION AND VENUE

31.	This Court has jurisdiction as the court of general jurisdiction in Wisconsin. Wis. Stat. § 753.03.

32.	This Court has personal jurisdiction over the individual Defendants as they are residents of the State of Wisconsin and work for an agency in the state. Wis. Stat. § 801.05(1)(b).

33.	The WDNR is an agency of the State of Wisconsin, and therefore this Court has jurisdiction over the WDNR.

34.	Venue in this district is appropriate pursuant to Wis. Stat. § 801.50(2) because the claims arose in Iowa County, the Plaintiff is a resident of Iowa County, and Blue Mound State Park is partially in Iowa County.

35. State courts have concurrent jurisdiction over § 1983 claims. *See Martinez v. California*, 444 U.S. 277, 283–84, n 7 (1980) *Shaw v. Leatherberry*, 2005 WI 163, ¶ 15, 286 Wis. 2d 380, 389, 706 N.W.2d 299, 304; *Thorp v. Town of Lebanon*, 2000 WI 60, ¶ 19, 235 Wis. 2d 610, 623, 612 N.W.2d 59, 67. Therefore, this Court is an appropriate forum to hear this lawsuit.

## STATEMENT OF THE CASE AND FACTUAL BACKGROUND

36. This complaint concerns Defendants' intimidation tactics and threats to terminate the Friends Group Agreement in response to the Friends Group's lawsuits challenging the WDNR's and the Wisconsin Natural Resources Board's (the "NRB") approval of the Plan and Environmental assessment (the "EA").

37. This complaint also concerns a rule that the WDNR recently implemented— without following the required rulemaking process under Chapter 227, Wis. Stat., and in excess of its statutory authority—under which the WDNR can terminate a friends group when the group "speaks out publicly against" the WDNR (the Rule Against Speaking Out).

38. On June 25, 2021, the Friends Group filed the Initial Petition in Dane County Circuit Court challenging the WDNR's and NRB's final decision to construct a new snowmobile trail in a sensitive ecological area of the Park. The same day, the Friends Group also filed a Petition for a Contested Case Hearing with the WDNR and the NRB regarding their final decision on the Plan and EA.

39. On July 15, 2021, the Plaintiff received a letter from the WDNR denying Plaintiff's Petition for a Contested Case Hearing. Plaintiff thereafter filed another Petition for Judicial Review in Dane County Circuit Court on August 13, 2021 challenging the denial of the Petition for a Contested Case Hearing.

40.     The Friends Group's Petitions for Judicial Review and Petition for Contested Case Hearing argue that the WDNR's and the NRB's actions were unlawful and illogical for numerous reasons including that there is already a snowmobile trail running through the Park; the WDNR has admitted that snowmobile use is declining in the region; and, most importantly, just five years ago, the WDNR rejected a proposal to establish a new snowmobile trail in the Pleasure Valley portion of the Park—the same area where the new snowmobile trail is to be constructed—citing the "sensitive ecological landscape"; the prohibitively high cost of maintaining water control measures, culverts, and flood management structures; and a high level of disturbance that "may cause user conflicts and reduce ecological sustainability." Exhibit C - 2017 Draft Master Plan.

41.     On July 28, 2021, Defendant VanLanduyt contacted a representative of the Friends Group via e-mail and asked to meet without either party's counsel present for a "casual conversation." Exhibit D. Defendant VanLanduyt claimed that the meeting was to "discuss the Blue Mound [State Park] master plan, our agreement and answer questions you may have." *Id.*

42.     On August 4, 2021, the day prior to the meeting, Defendant VanLanduyt contacted the Friends Group's representative via phone to inform him that only two board members could attend the meeting. The morning of the meeting, Defendant VanLanduyt again contacted the representative via phone to ask for list of possible meeting attendees. She also gave further assurances that the meeting would not be about the lawsuits but informed the representative that the WDNR would not hold the meeting if a certain board member was present.

43.     The premise for the invitation - that it was to be a casual conversation not about the lawsuit - was in fact an outright lie.

44. The meeting was held on August 5, 2021, at 2:30 p.m. at the Friends Shelter at the Park and was attended by Defendants Schmelzer and VanLanduyt from the WDNR and two representatives from the Friends Group whose attendance was "approved" by the WDNR.

45. At the start of the meeting, the Defendants cut right to the chase: Defendant Schmelzer informed the Friends Group that if the group did not drop its then-pending lawsuits by August 17, 2021, then the WDNR would terminate the Friends Group's Agreement and the Friends Group would no longer have any association with the Park going forward, the same Park the Friends Group and its members have worked to protect since at least 1990.

46. On August 11, 2021, counsel for Plaintiff wrote a letter to Governor Tony Evers and Attorney General Josh Kaul notifying them that Defendants Schmelzer and VanLanduyt, two high-ranking WDNR officials, had tried to intimidate Plaintiff's members and threatened to retaliate against Plaintiff if the group did not drop its pending lawsuits challenging the DNR's and NRB's approval of the Plan. Exhibit E.

47. In response, on August 20, 2021, after stating the same over the phone, the Wisconsin Department of Justice sent an email disputing that the retaliation occurred. Exhibit F.

48. On August 18, 2021, the Plaintiff's counsel submitted a public records request to the WDNR, requesting the following:

> I am requesting an opportunity to inspect or obtain copies of public records, including internal correspondence or any other written documentation, related to the August 5, 2021 meeting between representatives from the Friends of Blue Mound State Park and WDNR officials. In particular, I am requesting records of communications involving DNR Parks Director Steven Schmelzer and Recreational Partnerships Section Chief Missy Vanlanduyt from June 25, 2021 to present including the key words "Blue Mound," Friends Group," "Friends," "Agreement," "termination," "meeting," "Bill van Haren," "Willi Van Haren," "Karl Heil," "Gregory Wiegand," or "snowmobile. I am also requesting records of any communications involving DNR employees or officials during the same time period containing the terms above.

Exhibit G.

49.     On August 18, 2021, the WDNR confirmed receipt of the request and assigned the request to Emily Durrant. Exhibit H.

50.     After not receiving any records from WDNR for more than ten business days, on September 9, 2021, the Plaintiff's counsel submitted a follow-up letter to the WDNR asking for the records.

51.     On September 14, 2021, Ms. Durrant of the WDNR responded to Plaintiff's open records request with a zip file of documents. Ms. Durrant's email noted that the WDNR was still processing Plaintiff's request but that the WDNR decided to provide a partial release of records. Exhibit I.

52.     On October 5, 2021, pursuant to its own independent investigation, the Plaintiff received from a third party an email between Defendant Vanlanduyt and Defendant Schmelzer dated the day before the meeting in question, which said:

> Here is what I have. I asked Willi for the list of people – it included Karl. I requested we meet without Karl or figure out a different date at which we could meet without Karl. So we'll see. Here are my notes. Let me know if you have edits – otherwise I'll tweak slightly but we can meet at Blue Mound at noon? Or meet over lunch somewhere?

53.     The notes attached to the email contained an agenda for the meeting that was scheduled for the next day, August 5, 2021. Under the heading, "Overall agenda," the notes read:

> Review of existing agreement

- We will be initiating our 30 days [agreement termination notice] with an opportunity to cure if necessary

- Only way to cure is to drop the suit

54.     This email and the attached agenda were **not** produced by the WDNR in Ms. Durrant's September 14, 2021 open records response, despite the fact that the email was titled

"Blue Mound," mentioned Karl (Heil) and Willi (Van Haren) and was a communication between Defendants Vanlanduyt and Schmelzer the day before the meeting at issue occurred. Exhibit A.

55.    On October 7, 2021, Katherine Walker of the WNDR provided a "final" response to Plaintiff's August 18, 2021 open records request. Ms. Walker's email provided four additional responsive records and noted that the WDNR "has concluded its search and located the final records responsive to your request." Again, the WDNR did **not** produce the email between Defendants Schmelzer and Vanlanduyt that was provided to the Plaintiff by a third party. With this final response, the WDNR closed the open records request. Exhibit J.

56.    Given this series of events, the Plaintiff and this Court now have documentary proof that high-level WDNR officials made illegal retaliatory threats against the Friends Group, then denied doing so through their counsel, and finally withheld documents pursuant to an open records request that proved that the retaliatory threats occurred.

57.    This sort of behavior should have no place in our state government.

58.    On October 8, 2021, counsel for Plaintiff informed the WDNR's attorneys of the existence of the unproduced email and the WDNR's blatant open records violation.

59.    On that same day, the WDNR "supplemented" its open records response with additional documents, including the email that was not originally produced.

60.    Given the WDNR's actions to date, the Plaintiff now believes this Court's intervention is necessary to ensure the WDNR is actually complying with the law and has provided all responsive records in response to Plaintiff's open records request.

61.    To that end, in addition to seeking relief from this Court related to the WDNR's unlawful retaliatory actions, the Plaintiff is also asking this Court for an order requiring WDNR to comply fully with the Plaintiff's open records request and for damages.

62.     Additionally, on November 18, 2021, as part of the Friends Group's Public Records request, Plaintiff obtained an email from Defendant Melissa VanLanduyt to Diane Brusoe with a list of "points about friends groups." *See* Exhibit K.

63.     In that email, Defendant VanLanduyt asserts WDNR's ability to dissolve a friends group agreement on the basis of a friends group "speaking out publicly against" the WDNR (the Rule Against Speaking Out). Exhibit K.

64.     Under the Rule Against Speaking Out, "[i]n the event that a friends group does speak out against the [WDNR], it is the programs [sic] responsibility to determine the risks and opportunities associated with the friends group when determining if dissolution of the agreement is warranted." Exhibit K.

65.     The Rule Against Speaking Out represents a statement of policy or general order by WDNR as confirmed by the testimony of Defendants Schmelzer and VanLanduyt during their respective depositions on June 1, 2022, and June 2, 2022, and by the testimony of Diane Brusoe, WDNR's Deputy Division Administrator for the Division of Fish, Wildlife, and Parks, during her May 3, 2022, deposition.

66.     WDNR did not follow the rulemaking requirements of Chapter 227, Wis. Stat. when it issued the Rule Against Speaking Out, including preparing a statement of scope, and providing for a public notice and comment period.

## COUNT ONE—FIRST AMENDMENT AND ARTICLE I, § 4 OF THE WISCONSIN CONSTITUTION

67.     The Plaintiff realleges the preceding paragraphs in this Complaint.

68.     The First Amendment to the United States Constitution provides that the government shall not make laws "abridging the freedom of speech . . . or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

12

69. The First Amendment also implies a right to free speech and a right to petition the government without incurring retaliation from the government. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) ("As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech.") (internal quotation marks omitted).

70. Defendants' threat to terminate the Agreement was made as a direct response to the Friends Group's lawsuits challenging the WDNR's approval of the Plan and EA and was a violation of Plaintiff's First Amendment right to free speech. *See Hutchins v. Clarke*, 661 F.3d 947, 956 (7th Cir. 2011) (finding adverse action when "defendant's speech is threatening, harassing, or intimidating").

71. Defendants' threat to terminate the Agreement in response to the Friends Group's lawsuit was also a violation of Article 1, § 4 of the Wisconsin Constitution (right of the people peaceably to assemble and to petition the government).

72. The Friends Group and its members will be aggrieved if the WDNR terminates the Agreement. While termination of the Agreement does not officially dissolve the group, without the Agreement, the group can no longer serve as a friend of the Park.

73. Without this Court's intervention, Plaintiff and its members will be unlawfully deprived of their right to petition the government without retaliation, and they will have no adequate remedy at law.

## COUNT TWO—PROCEDURAL DUE PROCESS

74. The Plaintiff realleges the preceding paragraphs in this Complaint.

75. The Fourteenth Amendment to the United States Constitution provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law."

76.     Plaintiff and its members have a protected property interest in the use of the Park and protected, state-created due process rights under Wis. Stat. ch. 227. To protect their interests, the Plaintiff and its members have petitioned for judicial review of the decision by the WDNR and NRB to approve the Plan and EA and the decision to deny Plaintiff's request for a contested case hearing.

77.     Defendants' threats suggest bias and a lack of impartiality within the WDNR concerning the WDNR's and NRB's approval of the Plan and EA and the adjudication of Plaintiff's and its members' request for a contested case hearing.

78.     A fair trial in a fair tribunal is a basic requirement of due process, and that rule applies to administrative agencies such as the WDNR as well as to courts.

79.     The WDNR's and NRB's adjudication of Plaintiff's request for a contested case hearing exhibited a lack of due process as a result of a biased decisionmaker.

80.     In addition, Defendants' threats interfere with Plaintiff's right to judicial review under Wis. Stat. §§ 227.52 and 227.53 and impede the due administration of justice.

81.     Without this Court's intervention, Plaintiff and its members will be unlawfully deprived of their right to petition the government without retaliation as well as their right to due process under the constitution and Wis. Stat. ch. 227.

## COUNT THREE—
## FACIAL CHALLENGE TO THE CONSTITUTIONALITY OF THE RULE AGAINST SPEAKING OUT AS A CONTENT-BASED RESTRICTION ON SPEECH

82.     The Plaintiff realleges the preceding paragraphs in this Complaint.

83.     The Rule Against Speaking Out, on its face, regulates the Friends Group's (and other similarly situated groups') speech based on the content of the speech and/or what type of information the speech conveys.

84.     The Rule Against Speaking Out, on its face, regulates the Friends Group's (and other similarly situated groups') ability to speak out publicly against the WDNR.

85.     The Rule Against Speaking Out, on its face, amounts to viewpoint discrimination of speech.

86.     The Rule Against Speaking Out, on its face, regulates speech because of disagreement with the message it conveys.

87.     Content-based distinctions, restrictions, and/or regulations on speech, such as the distinctions, restrictions, and/or regulations imposed by the Rule Against Speaking Out are presumptively unconstitutional, subject to strict scrutiny, and may only be upheld if narrowly tailored to serve a compelling state interest.

88.     The Rule Against Speaking Out, on its face, is not narrowly tailored to serve a compelling state interest.

89.     The Rule Against Speaking Out, on its face, is not a valid time, place, or manner regulation of constitutionally protected speech.

90.     By issuing the Rule Against Speaking Out, the Defendants have violated the Wisconsin Constitution, including but not limited to Article 1, §3.

91.     By issuing the Rule Against Speaking Out, the Defendants have violated the United States Constitution, including but not limited to the First and Fourteenth Amendments.

## COUNT FOUR—FACIAL VAGUENESS AND OVERBREADTH CHALLENGE TO THE CONSTITUTIONALITY OF THE RULE AGAINST SPEAKING OUT

92.     The Plaintiff realleges the preceding paragraphs in this Complaint.

93.     By definition, WDNR must form a subjective personal opinion, exercise judgment, or otherwise perform a subjective or ad hoc determination regarding whether a friends group is "speaking out publicly against [WDNR]."

94.    WDNR has not defined "speaking out," "publicly," or "against the department" as it relates to the Rule Against Speaking Out.

95.    On its face, the Rule Against Speaking Out is vague, ambiguous, and/or overbroad and does not provide fair notice to the Friends Group (and those similarly situated to the Friends Group) of the conduct proscribed by the Rule Against Speaking Out.

96.    On its face, the Rule Against Speaking Out confers on the WDNR and/or its officials the sole, unstructured, unlimited, and/or unbridled discretion to determine matters such as whether an offense has been committed, whether a condition has been satisfied, and/or whether to permit or deny constitutionally protected speech.

97.    By being vague, ambiguous, and/or overbroad, the Rule Against Speaking Out violates the Wisconsin Constitution, including but not limited to Article I, §§ 1 and 3.

98.    By being vague, ambiguous, and/or overbroad, the Rule Against Speaking Out violates the United States Constitution, including but not limited to the First and Fourteenth Amendments.

## COUNT FIVE—VIOLATION OF WISCONSIN'S ADMINISTRATIVE RULE-MAKING PROCEDURES UNDER WIS. STAT. CH. 227

99.    The Plaintiff realleges the preceding paragraphs in this Complaint.

100.   The Rule Against Speaking Out is a rule under Wis. Stat. § 227.01

101.   Under Wis. Stat. § 227.01, a rule is a 1) a regulation, standard, statement of policy, or general order 2) of general application 3) that has the force of law and 4) that is issued by an agency 5) to implement, interpret, or make specific legislation enforced or administered by the agency or to govern the organization or procedure of the agency. *Wisconsin Legislature v. Palm*, 2020 WI 42, ¶ 22, 391 Wis. 2d 497, 942 N.W.2d 900.

102. The Rule Against Speaking Out is a regulation, standard, statement of policy, or general order by WDNR because it represents WDNR's policy in regard to its ability to terminate agreements with friends groups.

103. During his deposition, Defendant Schmelzer testified the Rule Against Speaking Out accurately represents the WDNR's current policy in regard to its ability to terminate agreements with friends groups.

104. During her deposition, Defendant VanLanduyt testified the Rule Against Speaking Out accurately represents the WDNR's current policy in regard to its ability to terminate agreements with friends groups.

105. During her deposition, Defendant VanLanduyt testified the Rule Against Speaking Out accurately represents the WDNR's current policy in regard to its ability to terminate agreements with friends groups.

106. When promulgating rules, the WDNR is required to adhere to the rulemaking procedures the Wisconsin Legislature has set forth in Chapter 227, Wis. Stat. The rulemaking process requires the WDNR to, among other this, prepare a statement of scope, obtain approval from the Governor, hold a public hearing, and allow for public comment, among other requirements. Wis. Stat. 227.10 *et seq*. These statutory requirements are intended to provide governmental oversight of, and promote public participation in, the agency rulemaking process, and to provide notice to persons or entities who will be affected by the agency rule.

107. The WDNR failed to comply with Wis. Stat. Chapter 227 procedures when it issued the Rule Against Speaking Out.

108. Because the WDNR failed to promulgate the Rule Against Speaking Out in accordance with the statutory rule-making procedures set forth in Chapter 227, Wis. Stat., the Rule Against Speaking Out is invalid and unenforceable.

## COUNT SIX—WISCONSIN OPEN RECORDS LAW

109. The Plaintiff realleges the preceding paragraphs in this Complaint.

110. Wisconsin's Open Records Law, Wis. Stat. §§ 19.31–19.39, is a series of laws designed to guarantee that the public has access to public records of government bodies at all levels.

111. In violation of Wisconsin's Open Records Law, the WDNR did not produce a responsive document—a silver bullet that proves Defendants Schmelzer and Vanlanduyt had, in fact, threatened Plaintiff—before closing out Plaintiff's open records request.

112. Without this Court's intervention, the Defendant WDNR will be emboldened to continue to violate Wisconsin's Open Records Law at the expense of Plaintiff and of all Wisconsin citizens.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests an Order from the Court:

1. Declaring that Defendants' threats constitute: (a) a deprivation of Plaintiff's and its members' right to petition the government without retaliation in violation of the First Amendment of the Constitution and Article 1, § 4 of the Wisconsin Constitution; and (b) a deprivation of Plaintiff's right to due process under the Fourteenth Amendment of the Constitution.

2. Permanently enjoining the WDNR from making any further threats of retaliation or taking any retaliatory action against the Friends Group, including but not limited to terminating the WDNR's and the Friends Group's Agreement due to Plaintiff's pending lawsuits or

any further lawsuits concerning the Park, which is necessary given the WDNR's shocking behavior and untrustworthiness to date;

3. Ordering the WDNR to comply fully with the Plaintiff's open records request submitted on August 18, 2021;

4. Declaring that the Rule Against Speaking Out violates the Friends' rights protected under the Wisconsin Constitution;

5. Declaring that the Rule Against Speaking Out violates the Friends' rights protected under the First Amendment of the United States Constitution;

6. Declaring that the Rule Against Speaking Out is invalid and unenforceable because it was promulgated in violation of the rule-making procedures of Wis. Stat. Ch. 227;

7. Awarding attorney's fees and costs to Plaintiff under 42 U.S.C. § 1988;

8. Awarding Plaintiff attorney's fees, costs, and punitive damages under Wis. Stat. § 19.37(2) & (3); and

9. Granting such further relief as may be just, equitable, and appropriate, and in the public interest.

Dated this 8th day of July, 2022.

_s/ Brian H. Potts_
Brian H. Potts
BPotts@perkinscoie.com
David R. Zoppo
DZoppo@perkinscoie.com
Jared E. Padway
JPadway@perkinscoie.com
Juan Jose Fonseca Angel
JFonsecaAngel@perkinscoie.com
Olivia S. Radics
ORadics@perkinscoie.com
33 E Main St, Ste 201
Madison, Wisconsin 53703-3095
Telephone:  608.663.7460
Facsimile:   608.663.7499

Cassie D. Roberts Riggs, *Admitted PHV*
CRoberts@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone:  503.727.2000
Facsimile:   503.727.2222

Kaela Shiigi, *Admitted PHV*
KShiigi@perkinscoie.com
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone:  415.344.7000
Facsimile:   415.344.7050

**PERKINS COIE LLP**

*Attorneys for Plaintiff*
*Friends of Blue Mound State Park*