IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FRIENDS OF BLUE MOUND
STATE PARK,

      Plaintiff,

    v.                         Case No. 21-CV-0676

WISCONSIN DEPARTMENT OF
NATURAL RESOURCES, et al.,

      Defendants.

---

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

JOSHUA L. KAUL
Attorney General of Wisconsin

BEAUREGARD W. PATTERSON
Assistant Attorney General
State Bar #1102842

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-9488
(608) 294-2907 (Fax)
pattersonbw@doj.state.wi.us

## TABLE OF CONTENTS

INTRODUCTION .................................................................4

STATEMENT OF FACTS .................................................5

    I.    Background: the Friends Group. ..................................5

    II.    The Friends Group's state court lawsuits against WDNR ............7

    III.    The alleged "Rule Against Speaking Out."....................9

    IV.    The August 5 meeting and the current status of the Agreement. ..................................................... 10

LEGAL STANDARD........................................................ 12

ARGUMENT ..................................................................... 12

    I.    Plaintiff's motion on the two facial constitutional challenges fails for three reasons................................. 12

        A.    There is a genuine issue of material fact as to whether the alleged "Rule Against Speaking Out" even exists. .......................................................... 13

        B.    As a public contractor, the Friends Group does not have a First Amendment right to speech that unduly interferes with the mission of its employer, WDNR.................................................................. 15

            1.    Public contractors speaking on matters pursuant to their official contractual duties are not protected by the First Amendment regardless of the content of their speech. ................. 15

            2.    The Friends Group is a de facto branch of WDNR and does not have a First Amendment right to speak against WDNR programs that its supports................................................. 18

3.      A rule restricting speech that friends groups do not have a constitutional right to make would not be unconstitutionally vague or overbroad. ............................................................. 20

C.      WDNR is not a person under 42 U.S.C. § 1983 and thus is immune to the facial constitutional challenges to the alleged "Rule Against Speaking Out." ........................................................................ 21

II.     The Friends Group's Wis. Stat. ch. 227 claim fails because this Court lacks subject matter jurisdiction over Wisconsin rulemaking claims, and the "Rule Against Speaking Out" is not a "rule" subject to Wis. Stat. ch. 227's promulgation requirements. ........................... 23

A.      The court lacks subject matter jurisdiction over this claim. ................................................................... 23

B.      The "Rule Against Speaking Out" is not a "rule" subject to Wis. Stat. ch. 227's promulgation requirements. ................................................................. 24

1.      The "Rule Against Speaking Out" was not an act of agency rulemaking. .......................................... 25

a.      VanLanduyt's May 24, 2021, email is not a statement of WDNR policy or general order. ................................................ 25

b.      VanLanduyt's May 24, 2021, email lacked the force of law. .................................... 26

c.      VanLanduyt's May 24, 2021, email was not issued by WDNR. ....................................... 27

2.      Even if WDNR were to adopt a "Rule Against Speaking Out," it would be an internal management rule not subject to promulgation. .............................................................. 28

CONCLUSION ................................................................ 29

## INTRODUCTION

This Court should deny Plaintiff's motion for summary judgment because it is based on an allegedly undisputed fact that is wrong or, at the very least, is disputed. Plaintiff Friends of Blue Mound State Park (the "Friends Group"), the official state friends group for Blue Mound State Park claims that the Wisconsin Department of Natural Resources (WDNR) has a policy against official friends groups speaking out. WDNR has no such policy and, at the very least, WDNR disputes this to be the case (and who would know better about WDNR's official policies that WDNR itself).

The Friends Group asks for summary judgment on three claims: Claim III—a facial challenge to the alleged "Rule Against Speaking Out" on the basis that it is unconstitutional content-based and viewpoint discrimination, Claim IV—a facial challenge to the alleged "Rule Against Speaking Out" on the basis that is an unconstitutionally vague and overbroad restriction on speech, and Claim V—a challenge to the alleged "Rule Against Speaking Out" under Wis. Stat. § 227.40 on the basis that it is an unpromulgated rule.

This Court should deny the Friends Group's motion for summary judgment. Regarding the two facial constitutional challenges, Plaintiff's motion fails because the "Rule Against Speaking Out" does not exist, public contractors like the Friends Group do not have a First Amendment right to

speech that unduly interferes with the mission of their employer, and WDNR is not a proper defendant as it is not a "person" under 42 U.S.C. § 1983. Regarding the rulemaking claim, Plaintiff's motion also fails because this Court lacks subject matter jurisdiction over Wisconsin rulemaking claims and the "Rule Against Speaking Out" is not a "rule" subject to Wis. Stat. ch. 227's promulgation requirements.

Therefore, this Court should deny the Friends Group's motion for summary judgment on Claims III, IV, and V and should instead grant Defendants' previously filed motion for summary judgment.

## STATEMENT OF FACTS

## I.    Background: the Friends Group.

The Friends Group is a nonprofit 501(c)(3) organization. (Dkt. 49 ¶ 1 (Pl.'s Proposed Findings of Fact); Dkt. 28 ¶ 18 (Am. Compl.).) The Friends Group has an agreement with WDNR (the "Agreement") that designates it as the official group that supports and assists WDNR in providing recreational, interpretive, scientific, historical, educational, and related visitor services to enhance Blue Mound State Park (the "Park"). (Dkt. 49 ¶¶ 1–2.) The Agreement is governed by Wis. Admin. Code NR § 1.71(4)(b)2., was most recently renewed on November 19, 2019, and is valid until December 31, 2024. (Dkt. 28 ¶ 20; 28-2:4.) Under the Agreement, the Friends Group is organized to support the Park and its visitors and must limit its official activities to those that benefit

5

the Park. (Dkt. 28-2:2.) As a formal "friends group," the Friends Group's existence and relationship with WDNR is governed by statutes and administrative rules. (Dkt. 28-2.) Most directly relevant is Wis. Admin. Code NR § 1.71, which provides a set of rules "applicable to all friends groups formed to support department properties, facilities and programs, including not-for-profit concession corporations and cooperating associations." Wis. Admin. Code NR § 1.71(2).

As a general matter, the rule authorizes WDNR to "work with a friends group established under the provisions of this section as the lead volunteer organization for a property, facility or program," and allows WDNR to "grant friends groups certain privileges, such as use of department equipment and facilities, under the terms of a written agreement." *Id.* NR § 1.71(1). The rules also establish requirements for an organization to be recognized as a formal friends group. *Id.* NR § 1.71(4)(b)1. The group "shall organize as a non-profit, non-stock, tax-exempt corporation, and shall be structured through articles of incorporation and by-laws to direct its mission and activities to the support of the property, group of properties, or other department facilities and programs as approved by the department." *Id.*

The rules also dictate what objectives official friends groups may pursue. *Id.* NR § 1.71(4)(a). These include "[p]romot[ing] department properties and programs to visitors and potential visitors through publications, special events

and interpretive programs"; "[p]rovid[ing] and coordinat[ing] volunteer service for department properties and programs"; "[p]rovid[ing] financial support to department properties, facilities and programs for such things as development projects, land acquisition, programs and interpretation," including "rais[ing] revenues for department properties, facilities and programs through such methods as membership fees, grants, donations, sales and special events"; and "[n]ot serv[ing] as an official advisory group to the property or program with which affiliated." *Id*. NR § 1.71(4)(a)1.–3., 5.

The Agreement also governs the Friends Group's activities requiring it to support, assist, and promote WDNR's mission at the Park through the coordination of volunteer services, events, activities, and financial support to the Park for such things as development projects, land acquisition, programs, and interpretation. (Dkt. 28-2:3.) Additionally, the Friends Group has authority to fundraise, sponsor activities, organize volunteers, apply for grants for the Park, and make community partnerships to benefit the property. (Dkt. 28-2:6.) And the Friends Group has permission to engage the community in the promotion and protection of the Park, support the Park, and embark on large capital campaigns to raise funds for the Park. (Dkt. 28-2:6.)

## II.   The Friends Group's state court lawsuits against WDNR.

On June 25 and August 13, 2021, the Friends Group filed separate petitions for review challenging changes WDNR made to the Park's plan that

would add a snowmobile trail. (Dkt. 49 ¶¶ 11–14.) On March 16, 2022, the state circuit court dismissed both of the Friends Group's petitions for lack of capacity to sue WDNR and lack of standing.[1] (Defs.' Additional Proposed Findings of Fact (PFOF) ¶ 17.)[2] The state court found that the Friends Group lacked capacity to sue, because "the Friends' Articles legally restrict Friends from acting in ways that do not support the DNR's management of the Park" as "the Friends' core corporate purpose is to assist, support, and promote the DNR." (*Id.*; Dkt. 54 ¶ 6; 54-4:43–45 (Patterson Decl., Oct. 14, 2022).) Further, the state court held that the Friends Group had no standing to bring the petitions because its a creature of the state created to support WDNR programs. (Defs.' Additional PFOF ¶ 17; Dkt. 54 ¶ 6; 54-4:45–46.) Specifically, the state court ruled:

> Friends by virtue of its Articles of Incorporation, the Wisconsin Administrative Code NR 1.71(4)(b)1 and its Friends Agreement with the DNR, as a unique affiliation with the DNR, while individuals or entities similar to Friends may have standing, Friends' unique affiliation with the DNR puts Friends in the same position as the counties in *Columbia County vs. Board of Trustees of Wisconsin Retirement Fund*, 117 Wis. 2d 310. Friends and the DNR are creatures of the state. Just because other environmental groups have been allowed to challenge the DNR's decisions, Friends cannot. It has a unique relationship with the DNR which other environmental groups do not have. Because of this unique relationship with the Department as an officially recognized friends group, Friends is not in the zone of interests that is protected

---

[1] The Friends Group has appealed the state trial court's ruling.

[2] Defendants' Additional Proposed Findings of Fact are identical to Defendants' Proposed Findings of Fact, (Dkt. 55), which were submitted along with their motion and brief for summary judgment.

under Chapter 227 and the WEPA. Its recreational, educational, and conservational interests in the park are a function of support for the DNR programs. As such, Friends has not suffered an injury and are not within the zone of interest under Chapter 227 or the WEPA.

(*Id*.)

## III.   The alleged "Rule Against Speaking Out."

The Friends Group alleges that WDNR issued a "Rule Against Speaking Out" that authorizes WDNR to dissolve the agreements of friends groups that publicly speaking out against WDNR. (Dkt. 49 ¶¶ 22–23; 28 ¶ 11.) It alleges that the so-called "Rule Against Speaking Out" was implemented without following requirements under Wis. Stat. ch. 227 (Dkt. 49 ¶ 27; 28 ¶ 37), and was a statement of policy or general order by WDNR (Dkt. 49 ¶ 25; 28 ¶ 65).

In their summary judgment motion, the Friends Group offers one piece of evidence to support the allegation that there is a "Rule Against Speaking Out." The Friend Group alleges, "[a]ccording to the WDNR, if a friends group speaks out against the agency, 'it is the programs [sic] responsibility to determine the risks and opportunities associated with the friends group when determining if dissolution is warranted.'" (Dkt. 51:23.) This was a statement made by VanLanduyt in a May 24, 2021, email to Diane Brusoe, the deputy administrator for the Division of Fish, Wildlife & Parks. (Dkt. 50 ¶ 7 Ex. 5 (Potts Decl.); Brusoe Decl. ¶¶ 4–7.) VanLanduyt worked within the Division of Fish, Wildlife & Parks, and her supervisor, Schmelzer, reported directly to

Brusoe. (Brusoe Decl. ¶ 3.) VanLanduyt's email was a set of talking points that she prepared for a meeting of the Wisconsin Department of Natural Resources Board (the "Board") on May 26, 2021. (*Id*. ¶ 5.) VanLanduyt prepared these talking points to address potential Board member questions about friends groups. (*Id*.) The talking points broadly outline background information about friends groups including their agreements, volunteer hours, and fundraising. (*Id*. ¶ 7.) However, the talking points shared in VanLanduyt's email were never used. (*Id*. ¶ 8.)

VanLanduyt's talking points do not represent a statement of policy or general order by WDNR. (*Id*. ¶ 9.) WDNR has no rule or policy that authorizes the termination of a friends group agreement when a group speaks out publicly against WDNR, and no friends group has been terminated on the basis of a "Rule Against Speaking Out." (*Id*. ¶ 10; Dkt. 53 ¶¶ 4–5 (Heilman Decl.).)

## IV.   The August 5 meeting and the current status of the Agreement.

The Agreement allows either party to terminate the Agreement "at any time upon 30 days advanced written notice, outlining, in detail, an explanation for termination," and section 12.B. of the Agreement allows either party to terminate the Agreement "upon 30 days written notice to the other party if, after reasonably effort by said party to correct a default, it is determined that conditions still exist contrary to the Friends Agreement." (Dkt. 28-2:7–8.) Defendants have not terminated the Agreement, nor have they exercised the

30 days written notice against the Friends Group. (Defs.' Additional PFOF ¶ 19; Dkt. 51:7 (Pl.'s Br.).) The Agreement is currently in effect and remains in effect through December 31, 2024. (Defs.' Additional PFOF ¶ 20; Dkt. 51:7; 28 ¶ 20; 28-2:4.)

The Friends Group alleges that Defendants, Steven Schmelzer[3] and Melissa VanLanduyt,[4] met with representatives of the Friends Group on August 5, 2021. (Dkt. 49 ¶ 18; 28:9 ¶ 45.) The Friends Group alleges that "Schmelzer informed the Friends Group that if the group did not drop its then-pending lawsuits by August 17, 2021, then the WDNR would terminate the Friends Group's Agreement and the Friends Group would no longer have any association with the Park going forward." (Dkt. 49 ¶ 19; 28:9 ¶ 45.) However, the Friends Group has not voluntarily dismissed any of its pending state court actions against WDNR,[5] (Defs.' Additional PFOF ¶ 22), and WDNR has not terminated its Agreement with the Friends Group (*id.* ¶ 26).

---

[3] WDNR Parks Director.

[4] WDNR Recreation Partnerships, External Relations, and Communication Section Chief.

[5] The Friends Group brought this current lawsuit more than two months after the August 5 meeting, and more than two months after the alleged deadline to drop the state lawsuits. (Dkt. 28 ¶¶ 9, 45; 1-2:3, 17.)

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010).

## ARGUMENT

### I.   Plaintiff's motion on the two facial constitutional challenges fails for three reasons.

The Friends Group has not established its entitlement to summary judgment on Counts III and IV for three reasons. First, the "Rule Against Speaking Out" does not exist and, at the very least, there is a genuine issue of disputed fact when WDNR says there is no such policy. Second, the Friends Group is a public contractor and thus do not have a First Amendment right to speech that unduly interferes with the mission of its employer—such as

filing lawsuits against WDNR. Third, WDNR—the only defendant on these claims—is not a "person" that can be sued under 42 U.S.C. § 1983.

### A. There is a genuine issue of material fact as to whether the alleged "Rule Against Speaking Out" even exists.

Plaintiff's motion is based on an alleged "Rule Against Speaking Out." In its own summary judgment motion, WDNR showed that it has no such rule or policy to terminate a friends group agreement when a group speaks out publicly against WDNR. (Defs.' Additional PFOF ¶ 24.) The General Counsel of WDNR has explained that there is no such policy, no friends group has been terminated under this alleged policy, and the Friends Group has not been terminated. (Dkt. 53 ¶¶ 4–5.)

Instead, the Agreement provides how the Friends Group's relationship with the Park can be terminated. Under the Agreement, either party may terminate the Agreement "at any time upon 30 days advanced written notice, outlining, in detail, an explanation for termination," or "upon 30 days written notice to the other party if, after reasonable effort by said party to correct a default, if it is determined that conditions still exist contrary to the Friends Agreement." (Dkt. 28-2:7.)

The Friends Group claims that it is undisputed that WDNR has such a policy. The evidence it relies on for this proposition, however, does not establish that there is no genuine issue of material fact. The Friends Group relies on a

May 24, 2021, email from VanLanduyt to deputy division administrator Brusoe. (Dkt. 50 ¶ 7 Ex. 5.) Relying on this email, the Friends Group claims that "if a friends group speaks out against the agency, 'it is the programs [sic] responsibility to determine the risks and opportunities associated with the friends group when determining if dissolution is warranted.'" (Dkt. 51:23.) However, VanLanduyt's email was a set of talking points that were never used, not a directive or pronouncement of WDNR. (Brusoe Decl. ¶ 8.)

VanLanduyt's email was a set of talking points that she prepared for a meeting of the Board on May 26, 2021, to address potential Board member questions about friends groups. (*Id*. ¶ 5.) VanLanduyt's talking points broadly outline background information about friends groups, including their agreements, volunteer hours, and fundraising. (*Id*. ¶ 7.) However, these talking points were never used. (*Id*. ¶ 8.) And Brusoe has explained that these unused talking points do not represent a statement of policy or general order by WDNR. (*Id*. ¶¶ 9–10.)

While Defendants believe the undisputed facts show that the "Rule Against Speaking Out" is not the policy of WDNR, there is at least a genuine issue of material fact on this point. Both WDNR's general counsel and deputy division administrator for the Division of Fish, Wildlife & Parks have said this is not the policy of WDNR, the deputy division administrator involved has said the talking points were never used, and, importantly, the agency has not taken

any action against the Friends Group after it sued WDNR in state court. (Defs.'
Additional PFOF ¶¶ 19–20, 22, 25–26; Brusoe Decl. ¶ 12.) Further, no friends
group agreement has ever been terminated on the basis of the "Rule Against
Speaking Out." (Defs.' Additional PFOF ¶ 25; Brusoe Decl. ¶ 11.) Plaintiff has
not shown that there is no genuine issue of material fact that the "Rule Against
Speaking Out" is the policy of WDNR. (Defs.' Additional PFOF ¶ 24.)

> **B.    As a public contractor, the Friends Group does not have a
> First Amendment right to speech that unduly interferes
> with the mission of its employer, WDNR.**

Plaintiff's  motion  proceeds  from  the  assumption  that  its  First
Amendment rights are not limited by the voluntary Agreement it entered into
with WDNR. That Agreement, however, makes the Friends Group a public
contractor and places limits on its First Amendment activity that preclude this
Court from granting Plaintiff's motion.

> **1.    Public contractors speaking on matters pursuant to
> their official contractual duties are not protected by
> the First Amendment regardless of the content of
> their speech.**

Although  laws  and  regulations  that  restrict  speech  on  the  basis  of
content are ordinarily subject to strict scrutiny, this is not the case for speech
restrictions placed on public employees or public contractors, like the Friends
Group. *Siefert v. Alexander*, 608 F.3d 974, 991 (7th Cir. 2010); *Comsys, Inc. v.
Pacetti*, 893 F.3d 468, 471 (7th Cir. 2018). This is because "some forms of speech

fall outside the protections of the First Amendment." *Siefert*, 608 F.3d at 991. "And in the case of public employees, the Supreme Court has relaxed the scrutiny it applies to regulation of government employee speech, holding that a public employee's right to speak on matters of public concern must be balanced against the government's need for efficient operation of government functions." *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418–19 (2006); *Connick v. Myers*, 461 U.S. 138, 142 (1983); *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)).

A public employee's speech is only constitutionally protected if (1) the speech was made as a private citizen; (2) the speech addressed a matter of public concern; and (3) the government's interests as an employer in promoting effective and efficient public service does not outweigh the public employee's interest in expressing that speech. However, public employees speaking pursuant to their official duties are not protected by the First Amendment regardless of the content of their speech. *Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007). This is because "a public employee is not speaking as a citizen, and therefore is not protected by the First Amendment, when speaking as part of the job." *Comsys, Inc.*, 893 F.3d at 471.

These legal standards apply to public contractors the same as public employees. *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 726 (1996). The Supreme Court holds the First Amendment protects independent

contractors from the termination or prevention of automatic renewal of at-will government contracts in retaliation for their exercise of the freedom of speech, and the Pickering balancing test, adjusted to weigh the government's interests as contractor rather than as employer, determines the extent of that protection. *Bd. of Cnty. Comm'rs, Wabaunsee Cnty. v. Umbehr*, 518 U.S. 668, 668 (1996). "[N]o legally relevant distinction exists between employees and contractors in terms either of the government's interest in using patronage or of the employee or contractor's interest in free speech." *Id.* at 679 (alteration in original) (citing Comment, *Political Patronage in Public Contracting*, 51 U. Chi. L. Rev. 518, 520 (1984)). Accordingly, the Seventh Circuit, as well as the other circuits that have considered the issue, holds that a public contractor is unprotected by the First Amendment when it speaks as part of its contractual duties, and this is true "especially when the contractor is acting as a de facto branch of a public body." *Comsys, Inc.*, 893 F.3d at 471; *see Decotiis v. Whittemore*, 635 F.3d 22, 26 n.1 (1st Cir. 2011); *Marez v. Bassett*, 595 F.3d 1068, 1074 (9th Cir. 2010); *Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1285 (11th Cir. 2012).

### 2. The Friends Group is a de facto branch of WDNR and does not have a First Amendment right to speak against WDNR programs that its supports.

The Friends Group is a creature of the state created exclusively to support WDNR programs. (Defs.' Additional PFOF ¶ 17; Dkt. 54 ¶ 6; 54-4:45–46.) It is a de facto branch of WDNR that aids in the administration and maintenance of the Park. Wis. Admin. Code NR § 1.71(4)(a)3.; (Dkt. 28-2:3). By law, the Friends Group has no right or capacity to serve as an official advisory group to the Park. Wis. Admin. Code NR § 1.71(4)(a)5. Rather under the Agreement and Wis. Admin. Code NR § 1.71, the Friends Group has to support, assist, and promote *WDNR's mission at the Park* through the coordination of volunteer services, events, activities, and financial support to the Park for such things as development projects, land acquisition, programs, and interpretation. Wis. Admin. Code NR § 1.71(4)(a)3.; (Dkt. 28-2:3).

Additionally, the Friends Group is responsible for promoting department properties and programs to visitors and potential visitors through publications, special events, and interpretive programs. Wis. Admin. Code NR § 1.71(4)(a)1. Further, the Friends Group has authority to fundraise, sponsor activities, organize volunteers, apply for grants for the Park, and make community partnerships to benefit the property. (Dkt. 28-2:6.) And the Friends Group has permission to engage the community in the promotion and protection of the

Park and embark on large capital campaigns to raise funds for the Park. (Dkt. 28-2:6.)

Given these duties, the Friends Group does not have a First Amendment right to publicly speak out against WDNR when doing so is in direct opposition to WDNR's mission, policies, projects, and programs for the Park. Regardless of the content, WDNR may regulate speech the Friends Group makes pursuant to its official duties, which includes speech on matters that concern the Friends Group's support of the mission, policies, projects, programs, financing, community engagement, volunteer efforts, land acquisition, development, etc. of the Park. *Spiegla*, 481 F.3d at 965. It is within WDNR's reasonable governmental interest to regulate public speech by the Friends Group that is in opposition to its contractual duties or would otherwise unduly interfere with WDNR's mission. *See Jungels v. Pierce*, 825 F.2d 1127, 1131 (7th Cir. 1987) ("It is true that a public employee does not have an absolute right to speak out on matters of public concern yet keep his job. If what he says interferes unduly with the mission of his employer, the employer can fire him.").

Simply put, the Friends Group cannot not be acting in support of WDNR's mission, policies, projects, and programs for the Park when it publicly opposes WDNR's policies for the Park and engages in litigation to terminate WDNR projects for the Park, such as the snowmobile trail in question. And it is precisely this principle which lead the state circuit court to dismiss both of

19

the Friends Group's legal challenges against WDNR for lack of capacity[6] as well as lack of standing.[7] (Defs.' Additional PFOF ¶ 17.)

### 3.   A rule restricting speech that friends groups do not have a constitutional right to make would not be unconstitutionally vague or overbroad.

In defining the "Rule Against Speaking Out," the Friend Group states that "[a]ccording to the WDNR, if a friends group speaks out against the agency, 'it is the programs [sic] responsibility to determine the risks and opportunities associated with the friends group when determining if dissolution is warranted.'" (Dkt. 51:23.) Even assuming this alleged "Rule Against Speaking Out" existed, it would not be unconstitutionally vague or overbroad.

As a public entity, WDNR has the right to evaluate whether the speech of its contractors has interfered with WDNR's mission, and it has the right to terminate a contractor relationship if it determines that the contractor's

---

[6] The Friends Group lacked capacity to sue, because "the Friends' Articles legally restrict Friends from acting in ways that do not support the DNR's management of the Park" as "the Friends' core corporate purpose is to assist, support, and promote the DNR." (Defs.' Additional PFOF ¶ 17; Dkt. 54 ¶ 6; 54-4:43–45.)

[7] The Friends Group lacked standing to sue, because "by virtue of its Articles of Incorporation, the Wisconsin Administrative Code NR 1.71(4)(b)1 and its Friends Agreement with the DNR" the Friends Group has "a unique relationship" with WDNR and is a "creature[ ] of the state." (Defs.' Additional PFOF ¶ 17; Dkt. 54 ¶ 6; 54-4:45–46.) "Its recreational, educational, and conservational interests in the park are a function of support for the DNR programs. As such, Friends has not suffered an injury and are not within the zone of interest under Chapter 227 or the WEPA." (Defs.' Additional PFOF ¶ 17; Dkt. 54 ¶ 6; 54-4:46.)

speech has unduly interfered with WDNR's mission. As discussed in the previous section, friends groups are public contractors and, as a result, do not have a First Amendment right to make public speech pursuant to their official duties, which includes speech on matters that concern their support for WDNR's mission, policies, projects, programs, financing, community engagement, volunteer efforts, land acquisition, development, etc. of its parks. *Spiegla*, 481 F.3d at 965. And, friends groups have no right to engage in public speech that is in opposition to their contractual duties or would otherwise unduly interfere with WDNR's mission. *See Jungels*, 825 F.2d at 1131.

The "Rule Against Speaking Out" as alleged by Plaintiff, simply affirms WDNR's reasonable governmental interest in regulating and responding to public speech, by its contractors, that interferes with WDNR's mission. Given that this principle is recognized in case law, it is neither overly broad or vague.

## C. WDNR is not a person under 42 U.S.C. § 1983 and thus is immune to the facial constitutional challenges to the alleged "Rule Against Speaking Out."

The Friends Group's facial constitutional challenges are brought under 42 U.S.C. § 1983. This Court should dismiss the Friends Group's facial constitutional challenges because the only defendant to these claims, WDNR, is not a "person" that can be sued under section 1983.

Based on the factual allegations and relief requested in the complaint, the Friends Group brings its facial constitutional challenges against WNDR

and not against the state officer defendants. In support of its facial challenges, the Friends Group alleges that WDNR has issued a vague and overbroad policy that impermissibly regulates Plaintiff's and other similarly situated parties' speech. The Friends Group claims that WDNR implemented a rule last year under which it can terminate a friends group when the group "speaks out publicly against" WDNR (which, they characterize as the "Rule Against Speaking Out"). (Dkt. 28 ¶ 37.) Further, the Friends Group alleges that the Rule Against Speaking Out represents a statement of policy or general order by WDNR. (Dkt. 28 ¶ 65.)

For remedies, the Friends Group requests declarations that the Rule Against Speaking Out violates the Friends Group's rights protected under the Wisconsin Constitution and the First Amendment of the United States Constitution. (Dkt. 28:19.)

Federal courts do not have general authority over state agencies. *Hameetman v. City of Chicago*, 776 F.2d 636, 640 (7th Cir. 1985). A plaintiff cannot sue a state or a state agency under 42 U.S.C. § 1983, the federal civil rights statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Bradley v. DCF*, 528 F. App'x 680, 681 (7th Cir. 2013). Instead, 42 U.S.C. § 1983 allows federal courts to "decree injunctive and other relief against state officers, including hearing officers and other adjudicators, who violate federal rights." *Hameetman*, 776 F.2d at 640. In other words, a plaintiff can sue a

person for violating its civil rights under 42 U.S.C. § 1983, but it cannot sue a state agency. Because WDNR is not a person, but rather an agency or arm of the State of Wisconsin, the Friends Group's facial unconstitutionality claims under 42 U.S.C. § 1983 must be dismissed.

## II. The Friends Group's Wis. Stat. ch. 227 claim fails because this Court lacks subject matter jurisdiction over Wisconsin rulemaking claims, and the "Rule Against Speaking Out" is not a "rule" subject to Wis. Stat. ch. 227's promulgation requirements.

### A. The court lacks subject matter jurisdiction over this claim.

The procedure under Wis. Stat. § 227.40 is "the exclusive means for obtaining a judicial determination of the validity of an administrative rule." *Appointment of Couns. in State v. Wittig*, 198 Wis. 2d 1, 6, 542 N.W.2d 458 (Ct. App. 1995). The statute provides that this "exclusive means" is by "an action for declaratory judgment as to the validity of the rule or guidance document brought in the circuit court for the county where the party asserting the invalidity of the rule or guidance document resides." Wis. Stat. § 227.40(1). Here, Plaintiff is bringing this declaratory judgment action in federal court, not in "circuit court for the county where" it resides. *Id.* This claim should be dismissed because Plaintiff has not properly followed the exclusive procedure to review the validity of a rule. *Wittig*, 198 Wis. 2d at 9. This Court has recently dismissed claims brought under Wis. Stat. ch. 227 for lack of subject

matter jurisdiction. *Seneca v. Great Lakes Inter-Tribal Council, Inc.*, No. 21-CV-304-WMC, 2022 WL 1618758, \*5 (W.D. Wis. May 23, 2022).

**B.      The "Rule Against Speaking Out" is not a "rule" subject to Wis. Stat. ch. 227's promulgation requirements.**

The Friends Group alleges that WDNR has adopted the "Rule Against Speaking Out" as a statement of policy and argues that the "Rule Against Speaking Out" is an unpromulgated rule in violation of Wis. Stat. ch. 227. (Dkt. 51:13; 28 ¶¶ 37, 66, 106.) However, the Friends Group's only proffered evidence to support these allegations is an internal email written by Defendant VanLanduyt. (Dkt. 49 ¶¶ 23–24.) The talking points in this email were never used and were not adopted by WDNR leadership. It therefore is not an agency directive and certainly does not create a rule.

The Wisconsin Statutes define a "[r]ule" as "a regulation, standard, statement of policy, or general order of general application that has the force of law and that is issued by an agency to implement, interpret, or make specific legislation enforced or administered by the agency or to govern the organization or procedure of the agency." Wis. Stat. § 227.01(13). The alleged "Rule Against Speaking Out" does not exist. It is not a statement of WDNR policy or general order. It does not have the force of law. It was not issued by WDNR. And even if WDNR were to adopt the "Rule Against Speaking Out," it would be an internal management rule not subject to promulgation.

24

1.    **The "Rule Against Speaking Out" was not an act of agency rulemaking.**

    a.    **VanLanduyt's May 24, 2021, email is not a statement of WDNR policy or general order.**

The Friend Group alleges, "[a]ccording to the WDNR, if a friends group speaks out against the agency, 'it is the programs [sic] responsibility to determine the risks and opportunities associated with the friends group when determining if dissolution is warranted.'" (Dkt. 51:23.) However, neither WDNR nor its leadership issued the statement Plaintiff quotes. Rather, it was a statement made by VanLanduyt in a May 24, 2021, email to Brusoe. (Dkt. 50 ¶ 7 Ex. 5; Brusoe Decl. ¶¶ 4–7.) VanLanduyt's email to Brusoe does not establish a "Rule Against Speaking Out." Her email was a set of talking points that were never used, not a directive of WDNR. (Brusoe Decl. ¶ 8.) "In order to constitute a rule, the directive must be that of an agency." *Tavern League of Wis., Inc. v. Palm*, 2021 WI 33, ¶ 23, 396 Wis. 2d 434, 957 N.W.2d 261 (Patience Drake Roggensack, C.J., with two justices joining and one justice concurring.)

VanLanduyt's email was a set of talking points that she prepared for a meeting of the Board on May 26, 2021, to address potential Board member questions about friends groups. (Brusoe Decl. ¶ 5.) VanLanduyt's talking points broadly outline background information about friends groups, including their agreements, volunteer hours, and fundraising. (*Id*. ¶ 7.) However, the talking points shared in VanLanduyt's email were never used. (*Id*. ¶ 8.)

These unused talking points do not represent a statement of policy or general order by WDNR. (*Id.* ¶ 9.) WDNR has no rule or policy that authorizes the termination of a friends group agreement when a group speaks out publicly against WDNR, and no friends group has been terminated on the basis of a "Rule Against Speaking Out." (*Id.* ¶ 10; Dkt. 53 ¶¶ 4–5.) Of course, it makes little sense to call an internal email a statement of policy made by an agency. Therefore, the so-called "Rule Against Speaking Out" is not an unpromulgated rule, because it is not a directive of WDNR. At the very least, there is a genuine issue of material fact as to whether this alleged rule is the policy of WDNR.

### b. VanLanduyt's May 24, 2021, email lacked the force of law.

The facts show that VanLanduyt's May 24, 2021, email did not have the force of law because the agency has not taken any action against the Friends Group despite the group having sued WDNR in state court. (Defs.' Additional PFOF ¶¶ 19–20, 22, 25–26; Brusoe Decl. ¶ 12.) The Friends Group alleges that Defendants Schmelzer and VanLanduyt met with representatives of the Friends Group on August 5, 2021, to tell them if the Friends Group did not drop its then-pending lawsuits against WDNR by August 17, 2021, then its Agreement with WDNR would be terminated. (Dkt. 28 ¶ 45.) Even assuming that these allegations are true, this alleged threat did not have the force of law, because it was neither express "mandatory language" or the "official voice"

of WDNR. *Cnty. of Dane v. Winsand*, 2004 WI App 86, ¶ 11, 271 Wis. 2d 786, 679 N.W.2d 885 (citation omitted); *Cholvin v. Dep't of Health & Fam. Servs.*, 2008 WI App 127, ¶ 29, 313 Wis. 2d 749, 758 N.W.2d 118. As stated previously, WDNR did not adopt the points in VanLanduyt's email; the "Rule Against Speaking Out" was not a directive of WDNR. (Brusoe Decl. ¶¶ 8–9.)

Further, the undisputed facts show that when the Friends Group did not drop its pending lawsuits, WDNR neither terminated nor gave notice to terminate its Agreement with the Friends Group. (Defs.' Additional PFOF ¶ 22.) Indeed, no friends group agreement has ever been terminated on the basis of the "Rule Against Speaking Out." (*Id.* ¶¶ 25–26; Brusoe Decl. ¶ 11.) The alleged "Rule Against Speaking Out" has never been enforced and thus does not have the force of law. (Defs.' Additional PFOF ¶ 24.) At a minimum, there is a genuine issue of material fact as to whether this alleged rule has the force of law.

### c. VanLanduyt's May 24, 2021, email was not issued by WDNR.

As stated previously, the VanLanduyt's May 24, 2021, email was not a WDNR directive; it was never used. (Brusoe Decl. ¶¶ 8–9.) WDNR has no policy or general order that authorizes it to terminate a friends group agreement when a group speaks out publicly against WDNR. (Defs.' Additional PFOF ¶ 24; Brusoe Decl. ¶ 10.) And no friends group agreement has been terminated

on the basis of a "Rule Against Speaking Out." (Defs.' Additional PFOF ¶¶ 25–26; Brusoe Decl. ¶ 11.) The alleged rule was merely an unused internal document that was never announced to the public. At a minimum, there is a genuine issue of material fact as to whether this alleged rule was issued by WDNR.

> ## 2. Even if WDNR were to adopt a "Rule Against Speaking Out," it would be an internal management rule not subject to promulgation.

WDNR may adopt a policy that "[c]oncerns the internal management of an agency and does not affect private rights or interests," Wis. Stat. § 227.01(13)(a), without going through the rulemaking procedure. Even assuming WDNR had adopted a "Rule Against Speaking Out," it would be an internal management rule not subject to promulgation. This is because a "Rule Against Speaking Out" would not affect the private rights or interests of friends groups. As discussed in section I.C., friends groups, as public contractors, do not have a First Amendment right to make public speech pursuant to their official duties, which includes speech on matters that concern their support for WDNR's mission, policies, projects, programs, financing, community engagement, volunteer efforts, land acquisition, development, etc. of its parks. *Spiegla*, 481 F.3d at 965. And, friends groups have no right to engage in public speech that is in opposition to their contractual duties or

would otherwise unduly interfere with WDNR's mission. *See Jungels*, 825 F.2d at 1131. Therefore, WDNR could adopt such a directive without promulgating it as a rule.

## CONCLUSION

For the reasons stated above, this Court should deny Plaintiff's motion for summary judgment on Counts III, IV, and V of the amended complaint, and should dismiss these claims.

Dated this 4th day of November 2022.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Beauregard W. Patterson
BEAUREGARD W. PATTERSON
Assistant Attorney General
State Bar #1102842

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-9488
(608) 294-2907 (Fax)
pattersonbw@doj.state.wi.us