| | |
|---|---|
| **FRIENDS OF BLUE MOUND STATE PARK**, <br><br> Plaintiff, <br><br> vs. <br><br> **WISCONSIN DEPARTMENT OF NATURAL RESOURCES, STEVEN SCHMELZER, MELISSA VANLANDUYT,** <br><br> Defendants. | Case No. 21-cv-676 |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ....................................................................................... 1

II.    ARGUMENT ............................................................................................. 2

    A.    The Court should grant summary judgment in favor of the Friends on its facial constitutional challenges to the Rule Against Speaking Out (Counts III and IV)..................................................................... 2

        1.    The Defendants have unequivocally admitted that the Rule Against Speaking Out reflects the WDNR's current policy, so there is no genuine dispute of fact about whether this rule exists. ................................................................................. 2

        2.    The Friends is not a public contractor or *de facto* branch of the WDNR whose First Amendment rights can be curtailed by its agreement with the WDNR and, in any event, its speech against the WDNR is entitled to protection under the First Amendment. .................................................................. 6

            a.    The Friends is not a public contractor of the WDNR. ................................................................. 7

            b.    The Friends is not a *de facto* branch of the WDNR. ..................................................................... 10

            c.    Even assuming the Friends is a public contractor, the speech at issue here is nonetheless entitled to constitutional protection under the *Pickering* balancing test........................................................................... 13

        3.    The Rule Against Speaking Out is unconstitutionally vague and overbroad..................................................................... 15

        4.    The Court should grant the Friends' motion for summary judgment on Counts III and IV as to Defendants Schmelzer and VanLanduyt because the Friends are properly suing those individuals in their official capacity and seeking prospective relief under *Ex Parte Young*. ............................................. 17

    B.    The Court should grant the Friends' motion for summary judgment on Count V because the WDNR did not promulgate the Rule Against Speaking Out pursuant to the required procedures under Wis. Stat. ch. 227. ............................................................................. 19

1.     The Court has subject matter jurisdiction over the Friends' rulemaking claims under Wis. Stat. ch. 227. ........................................ 19

        a.     This Court has supplemental jurisdiction over the Friends' state-rulemaking claim. ................. 19

        b.     This Court should appropriately apply the law in the cases provided by Defendants.................... 22

2.     The "Rule Against Speaking Out" is a "rule" subject to Wisconsin rulemaking procedures. ......................................... 24

        a.     The Rule Against Speaking Out is a statement of policy or general order of the WDNR. ....................................................... 24

        b.     The Rule Against Speaking Out has the force of law. ............................................... 25

        c.     The WDNR's Rule Against Speaking Out was issued by the agency. ........................... 26

        d.     The WDNR's Rule Against Speaking Out was not an internal management rule not subject to Chapter 227 rulemaking procedures. ................................................ 27

III.     CONCLUSION ............................................................................ 28

# I.     INTRODUCTION

This case concerns the Defendants' unconstitutional policy of terminating or threatening to terminate its relationship with groups—including the Friends—that have agreements with the WDNR to support Wisconsin state parks.[1] The Friends filed suit in state court against the WDNR after it authorized construction of a new snowmobile trail in the Blue Mound State Park. In response to that legal action, the Defendants threatened to terminate the WDNR's agreement with the Friends unless it dropped its pending lawsuits against the new snowmobile trail. This threat was the product of the Defendants' unconstitutional Rule Against Speaking Out, which allows the WDNR to terminate an agreement it has with a friends group if that groups speaks out publicly against the agency. This rule reflects an unconstitutional restriction on the Friends' First Amendment rights and it was promulgated without proper public notice or hearing, in violation of Wisconsin law. For that reason, the Friends moved this Court for summary judgment on Counts III, IV, and V of their Complaint.

The Defendants oppose that motion, arguing that the Rule Against Speaking Out does not exist, that the Friends is a public contractor with no First Amendment rights, and that the Court lacks jurisdiction over the Friends' state law rulemaking claims. In making these arguments, the Defendants contradict the sworn testimony of their own witnesses and statements they made to this Court when removing this action from Iowa County Circuit Court.  Their opposition to the Friends' motion for summary judgment reflects little more than an attempt to improve their litigating position, even if doing so means taking a contradictory and internally inconsistent

---

[1] Unless otherwise indicated, capitalized defined terms in this reply brief have the same meaning as they do in the Plaintiffs' opening brief in support of its motion for summary judgment, ECF No. 51.

position on critical factual and legal issues. The Court should reject this cynical opportunism and grant the Friends' motion for summary judgment on Counts III, IV, and V of its Complaint.

## II.    ARGUMENT

### A.    The Court should grant summary judgment in favor of the Friends on its facial constitutional challenges to the Rule Against Speaking Out (Counts III and IV).

#### 1.    The Defendants have unequivocally admitted that the Rule Against Speaking Out reflects the WDNR's current policy, so there is no genuine dispute of fact about whether this rule exists.

Defendants have admitted that, when it comes to a friends group like the Plaintiff, the WDNR retains the authority to dissolve its agreements with those groups "for multiple reasons *including friends groups speaking out publicly against the department*." Plaintiffs' Proposed Findings of Fact ("PPFOF"), ECF No. 49 ¶¶ 23–24 (emphasis added). Three different high-ranking WDNR officials—Defendants Schmelzer and VanLanduyt and Diane Brusoe, the Deputy Division Administrator for the WDNR's Division of Fish, Wildlife, and Parks—admitted during their depositions that this represents the WDNR's current official policy. PPFOF ¶ 25. The Defendants are now attempting to backtrack on these unequivocal admissions with new, contradictory testimony from Ms. Brusoe and Cheryl Heilman, the WDNR's general counsel. *See* ECF Nos. 53, 59. The Court should disregard these sham affidavits, which the Defendants are using to fabricate a dispute of material fact where none exists, and grant summary judgment in favor of the Friends on Counts III and IV.

The sham affidavit rule "'prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony'" unless the affidavit contains "newly discovered evidence," the deposition testimony was "demonstrably mistaken," or the affidavit is offered to clarify "ambiguous or confusing deposition testimony*." Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 569–70 (7th Cir. 2022), *quoting James v. Hale*, 959 F.3d 307, 316–17 (7th Cir. 2020);

*Donaldson v. Johnson & Johnson*, 37 F.4th 400, 406 (7th Cir. 2022) ("Affidavits offered to contradict the affiant's deposition testimony can be so lacking in credibility as to be entitled to zero weight in summary judgment proceedings") (internal quotation marks omitted). "The rule posits that 'a genuine issue of material fact cannot be conjured out of nothing.'" *Kelley v. Stevanovich*, 40 F.4th 779, 787 (7th Cir. 2022), quoting *James*, 959 F.3d at 316. Accordingly, "[a] court is well within its discretion to strike an affidavit that contradicts deposition testimony unless the affiant has offered a plausible explanation for the discrepancy." *Donaldson*, 37 F.4th at 406. *See Russell v. Acme-Evans Co*., 51 F.3d 64, 68 (7th Cir. 1995) (striking only the portions of an affidavit that contradicted the deposition testimony of the affiant).

Here, the declarations the Defendants offer in opposition to the Friends' motion for summary judgment clearly contradict their own prior testimony, without any plausible explanation. In their declarations, Ms. Heilman and Ms. Brusoe state as follows:

> WDNR has no rule or policy that authorizes the termination of a friends group agreement when a group speaks out publicly against WDNR. ECF No. 53 ¶ 4 (Heilman).

> WDNR has no rule or policy that authorizes the termination of a friends group agreement when a group speaks out publicly against WDNR. ECF No. 59 ¶ 10 (Brusoe).

These assertions, however, clearly contradict the prior sworn testimony of multiple WDNR officials, including Ms. Brusoe and Defendants Schmelzer and VanLanduyt. When questioned about a May 24, 2021 e-mail from Defendant VanLanduyt to division administrator Brusoe describing the Rule Against Speaking Out, *see* ECF No. 50-5, Ms. Brusoe testified as follows:

> Q:     Could you, please, read the first and the last bullet point.

> A:     The first bullet here is, "We have agreements with friends groups. Those agreements outline our ability to dissolve the agreement for multiple reasons including friends groups speaking out publicly against the department." And you said the last one?

Q: Yes, please.

A: The last bullet is, "In the event that a friends group does speak out publicly against the department, it is the programs responsibility to determine the risks and opportunities associated with the friends group when determining if dissolution of the agreement is warranted."

Q: Do you agree with these two bullet points?

A: Yes. I think we have that ability. As it says in the first one, it outlines our ability, so we do have an ability to do it.

PPFOF ¶ 25; May 3, 2022 Dep. Tr. of Diane Brusoe, ECF No. 24 at 116:19–117:13.

Defendant Schmelzer was questioned about the same e-mail during his deposition and testified as follows:

Q: And I guess turning to the last bullet point on that same e-mail, it says in the event that a friends group does speak out publicly against the department, it is the program's responsibility to determine the risks and opportunities associated with the friends group when determining if dissolution of the agreement is warranted. Is that still the department's position today?

A: Yeah, I think that's—that would be accurate.

PPFOF ¶ 25; Jun. 1, 2022 Dep. Tr. of Steven Schmelzer, ECF No. 20 at 85:22–86:7.

Finally, Defendant VanLanduyt—who authored the e-mail in question—testified as follows during her deposition:

Q: . . . And on Monday, May 24th, you sent an email to Diane Brusoe with some points about Friends groups. Do you see that?

A: Yes.

Q: And the first bullet -- Well, actually the first bullet and the last bullet, and we'll just focus on the last bullet, the last bullet says, "In the event that a Friends groups does speak out publicly against the department, it is the program's responsibility to determine the risk and opportunities associated with the Friends group when determining if dissolution of the agreement is warranted." Do you see that?

A: Yes.

Q. Is that still the department's position today?

A. Yes.

PPFOF ¶ 25; Jun. 2, 2022 Dep. Tr. of Melissa VanLanduyt, ECF
No. 25 at 55:21–56:12.

In short, three separate, high-ranking officials at the WDNR—including Defendants
Schmelzer and VanLanduyt—unequivocally stated that the WDNR retains authority to terminate
a friends group agreement if the group speaks out against the agency. Defendants are now flip-
flopping not because the previous testimony was "demonstrably mistaken" or to clarify
ambiguities, *see Perez*, 31 F.4th at 570, but merely to improve their litigating position at summary
judgment by manufacturing a material dispute of fact. The Court should not allow them to do so
and should disregard these contradictory statements.

Defendants claim that the e-mail these witnesses were questioned about does not reflect
WDNR policy because it merely reflected "a set of talking points that [Defendant VanLanduyt]
prepared for a meeting of the [Natural Resources Board] on May 26, 2021" and that "these talking
points were never used." Defendants' Opposition Brief ("Defs.' Op. Br."), ECF No. 60 at 14.
That's completely immaterial to this case. The fact that these talking points "were not used" at the
May 26, 2021 NRB meeting does not mean that they do not reflect the WDNR's current policy, as
the Defendants admitted during their depositions. Indeed, this policy was clearly applied against
the Friends during their August 5, 2021 meeting with Defendants Schmelzer and VanLanduyt,
where those Defendants threatened to terminate the WDNR's agreements with the Friends unless
it dropped its pending lawsuits. PPFOF ¶¶ 16–19.

Moreover, Defendants' assertion that "the 'Rule Against Speaking Out' is not the policy
of the WDNR," Defs.' Op. Br. at 14, cannot be squared with their argument regarding the Friends'

First Amendment rights. The basic premise of Defendants' argument is that, because the Friends is a public contractor, the WDNR "may regulate speech the Friends Group makes pursuant to its official duties . . . . It is within WDNR's reasonable governmental interest to regulate public speech by the Friends group *that is in opposition to its contractual duties or would otherwise unduly interfere with WDNR's mission*." *Id.* at 19 (emphasis added). They claim that WDNR "has the right to evaluate whether the speech of its contractors has interfered with WDNR's mission, and *it has the right to terminate a contractor relationship if it determines that the contractor's speech has unduly interfered with WDNR's mission*." *Id.* at 20–21 (emphasis added).

In other words, Defendants assert that the Rule Against Speaking Out is not a policy of the WDNR, *id.* at 14, while simultaneously claiming that the WDNR has the right to terminate agreements with Friends groups that speak out against the agency, *id.* at 19–21—which is, of course, the *exact policy* the Friends is suing about in this case. Defendants cannot have it both ways. They cannot, one the one hand, claim that the Rule Against Speaking Out does not exist, while asserting on the other hand that they have the right to terminate agreements with friends groups that speak out against the agency. The Court should not entertain this kind of opportunistic doublespeak. There can be no dispute that the Rule Against Speaking Out exists, based on the Defendants' own admissions and the very arguments they are pressing before this Court.

> 2.    **The Friends is not a public contractor or *de facto* branch of the WDNR whose First Amendment rights can be curtailed by its agreement with the WDNR and, in any event, its speech against the WDNR is entitled to protection under the First Amendment.**

Defendants claim that because the Friends is both a public contractor and a "de facto branch of WDNR," the WDNR has the right to place limits on its First Amendment activities. Defs.' Op. Br. at 15, 18. Defendants are wrong. While a more relaxed standard applies to government regulation of a public employees' or public contractors' speech on issues within its official duties,

*Comsys, Inc. v. Pacetti*, 893 F.3d 468, 471 (7th Cir. 2018), the Friends is neither a public contractor nor a *de facto* branch of the agency. Even if it were, the Friends' speech in this case—its opposition to a new master plan authorizing construction of a new snowmobile trail in the Park—was not made pursuant to its official duties under its agreement with the WDNR and is constitutionally protected under the *Pickering* balancing test. *Pickering v. Board of Education*, 391 U.S. 563 (1968).

### a. The Friends is not a public contractor of the WDNR.

Defendants' assertion that the Friends is a public contractor by virtue of its agreement with the WDNR lacks support in fact or the law. The Friends is an independent, nonprofit 501(c)(3) organization that provides volunteer, recreational, scientific, historical, educational, and related visitor services to enhance the Park and has entered into an agreement with the WDNR to advance that mission. PPFOF ¶ 1. That agreement affirmatively prohibits the Friends' members from holding themselves out to the public as WDNR employees and states that the Friends must "limit their activities to volunteer roles." Plaintiff's Supplemental Proposed Findings of Fact ("PSPFOF"), ECF No. 62, ¶ 1. The Friends also receive no compensation form the state for the services the Friends provide to the Park. PSPFOF, ECF No. 62, ¶ 2. The Friends' chief mission is to serve the Park—not the WDNR. Fundamentally, the Friends is a volunteer organization, not a government contractor, and nothing in the language of the agreement or the regulation authorizing it changes that, *see* Wis. Admin. Code § NR 1.71(4)(b)(2). Indeed, the regulation specifically acknowledges that Friends groups are *volunteer* organizations. *See* Wis. Admin. Code § NR 1.71(1) ("The department may work with a friends group established under the provisions of this section as the lead *volunteer organization* for a property, facility, or program.") (emphasis supplied).

Defendants cite no support for the premise that the Friends, a volunteer organization serving solely one Park, is a public contractor, or that even if it were, its speech was made pursuant to its official duties and thus is not protected by the First Amendment. For instance, *Spiegla v. Hull* concerned a First Amendment retaliation claim brought by a state correctional officer. 481 F.3d 961, 962 (7th Cir. 2007). The officer (Spiegla) reported a protected security lapse to a supervisor and the defendants retaliated against Spiegla by reassigning her. *Id*. Spiegla insisted that she was transferred for reporting the security lapse to her supervisor and she asserted that she engaged in protected speech under the First Amendment. *Id*. at 963. The Seventh Circuit found that Spiegla was speaking pursuant to her official duties—not as a citizen—when she told her supervisor about the security lapse, given that her primary responsibility was to regulate and monitor for security incidents of the exact type she ended up reporting. *Id*. at 965–66. The speech was not "citizen" speech protected by the First Amendment, but was instead made as "part of her official responsibility as a correctional officer to keep the prison secure." *Id*. Thus, in *Spiegla*, the speaker was in a markedly different position as the Friends. Spiegla spoke on a matter that was directly related to her official duties—in fact, she reported on what can be considered a core function of her job. The Friends' speech is distinctly different in that petitioning for judicial review of the WDNR's master plan regarding the Park does not pertain to a core function of the Friends' "duties" under its agreement with the WDNR.

Moreover, the Friends' ties to the WDNR and the Park are unique when compared to those of typical public contractors. The Supreme Court has opined that a "public contractor . . . is usually a corporation." *Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 696 (1996). Indeed, most government contractors have both government and private customers. *Id*. "If the contractor does not get the particular government contract on which he bids, . . . it is not the

end of the world for him; there are other government entities to bid to, and private ones as well." *Id*. at 696. Unlike these traditional public contractors, the Friends does not provide similar services to any other departments or for any other Park. It has no private customers or even other government customers. The Friends' sole mission is to serve the interests of the Park.

Defendants engage in a lengthy analysis as to how the Friends' duties under the Agreement (which include, broadly speaking, promoting, protecting, and fundraising for the Park) effectively deprive the Friends of its First Amendment right to publicly speak out against the WDNR. Defs.' Op. Br. at 18–19. Defendants, however, are conflating the volunteer activities the Friends implement pursuant to the agreement with the Friends' *advocacy* for (what it believes is) lawful and proper management of the Park. The speech at issue here—a lawsuit alleging that the WDNR improperly approved a new snowmobile through the Park—clearly falls within the latter category. The Friends did not file its lawsuit "in the context of the responsibilities under its agreement with the WDNR," as Defendants allege. Defs.' Brief in Support of Mot. for Summary Judgment, ECF No. 56 at 20. The Friends filed the lawsuit because it does not believe the WDNR's recent approval of a new master plan is lawful or appropriate. The mere fact that both the agreement and the lawsuit concern the Park is insufficient to transform the latter from private speech to "speech as a public contractor," and the Friends have pled sufficient facts in their complaint to show that their lawsuits against the WDNR were filed in the Friends' capacity as a private citizen—not a public contractor.[2] *See* First Amended Compl., ECF No. 28 ¶¶ 36–40.

_____

[2] Defendants also allude to the fact that the Iowa County Circuit Court dismissed the Friends' legal challenges to the WDNR's new master plan for the Park because the Friends lack capacity and standing to sue. Defs.' Op. Br., at 19–20, n.6–7. But as the Friends previously explained, the Friends appealed that ruling to the Wisconsin Court of Appeals and the circuit court's decision is currently stayed pending that appeal. Pl. Br. in Opposition of Defs.' Mot. for Summary Judgment ("Pl. Op. Br."), ECF No. 64 at 7. Accordingly, the circuit court's ruling should have no impact on these proceedings.

Defendants assert that the Friends necessarily cannot act in support of the WDNR's mission for the Park "when it publicly opposes WDNR's policies for the Park and engages in litigation to terminate WDNR projects for the Park." Defs.' Op. Br. at 19. That is manifestly wrong and would have sweeping and devastating impacts for citizen oversight of the agency's management of state public lands. Friends groups are not and should not be compelled to support policies that are fundamentally detrimental to the public lands the WDNR is statutorily obligated to protect and maintain. *See* Wis. Stat. § 27.01(1). Suppose that, rather than construct a new snowmobile trail through the Park, the WDNR proposed selling off or developing ecologically valuable land within the Park. Under the Defendants' rationale, the government would be free to stifle speech from friends groups that opposed these measures. These organizations can and should be allowed to advocate for (what they believe is) proper management of public lands, separately from the volunteer services that they provide to support those lands.

In sum, the Friends is not one of the WDNR's public contractors, and therefore, any attempt by the WDNR to regulate its speech through the Rule Against Speaking Out is subject to strict scrutiny. *Sorrell v. IMS Health*, Inc., 564 U.S. 552, 566 (2011) (The First Amendment requires heightened scrutiny whenever the government "creates a 'regulation of speech because of disagreement with the message it conveys.'") (citing *Ward* v. Rock Against Racism, 491 U.S. 781, 791 (1989)). As the Friends previously explained, that the rule is clearly a content-based, overbroad, and vague regulation of the Friends' First Amendment rights that cannot withstand such scrutiny. Pl. Op. Br. at 16–20.

### b. The Friends is not a *de facto* branch of the WDNR.

Defendants also claim that the Friends is a "creature of the state" and a "*de facto* branch" of the WDNR. Defs.' Op. Br. at 18. This argument fails on multiple fronts. For one thing, it cannot be squared with the Defendants' primary argument—namely, that the Friends is a public

contractor. Again, Defendants cannot have it both ways: the Friends cannot simultaneously be both a contractor for and an arm of the state.

More importantly, the undisputed facts show that the Friends is *not* a de facto branch of the state. Rather, the Friends is a private, tax-exempt nonprofit corporation organized under Wis. Stat. ch. 181, *See* PFOF ¶ 1, which means that it has the rights of a natural person, including the right to sue and be sued.[3] Indeed, to even be eligible to enter into a "written agreement" to become a formal WDNR friends group, an organization must first "organize as a non-profit, non-stock, tax-exempt corporation." *See* Wis. Admin. Code § NR 1.71(4)(b)1. And that agreement ensures a clear separation between friends groups and the WDNR by prohibiting WDNR employees from serving as officers or directors of friend groups and prohibiting the members of friends groups from representing themselves as WDNR employees. Wis. Admin. Code NR 1.71(4)(b)2(f)–(g).

In other words, the Friends was not created by the state, but pursuant to its own decision to incorporate as a non-profit organization under Wis. Stat. ch. 181. Unlike legislatively created nonprofit entities, there is no statute establishing the Friends (or any other friends group) as part of the WDNR. Dedicated parkgoers form these groups on their own volition out of a desire to protect and improve a park that they deeply care about. There is also no requirement that all groups that support WDNR's properties enter into formal friends group agreements. *See* Wis. Admin. Code NR 1.71(1). Wis. Admin. Code NR 1.71 only outlines requirements to enter into a friends group agreement with WDNR for certain privileges—it does not require the state to create the groups or supervise the groups' activities.

_____

[3] A corporation's capacity to sue and be sued in federal court is determined "by the law under which it was organized." Fed. R. Civ. P. 17(b)(2). Under Wisconsin law, "a corporation has . . . the same powers as an individual to do all things necessary or convenient to carry out its affairs, including the power to do all of the following: (1) Legal actions. Sue and be sued, complain and defend in its corporate name." Wis. Stat. § 181.0302.

Defendants rely on *Jungels v. Pierce* to support their argument that the Friends, is a *de facto* branch of the WDNR, but that case actually supports the Friends' position here. 825 F.2d 1127 (7th Cir. 1987). In *Jungels*, a member of the Civil Service Commission of Aurora published an open letter in the local newspaper criticizing grassroots Hispanic community leaders in Aurora. *Id*. at 1129. Two days after the publication of the letter, the mayor of Aurora fired Jungels. *Id*. The Seventh Circuit found that Jungels' speech was protected under the First Amendment under *Pickering v. Board of Education*, 391 U.S. 563 (1968). *Id*. at 1131. The court noted that the letter by Jungels was a "statement of opinion on a matter of public concern, and thus prima facie protected by the First Amendment." *Id*. *Jungels* supports the Friends' argument, given that much like the commissioner in *Jungels*, the Friends sued the WDNR for approving the Park's new master plan to express its opinion on a matter of public concern, and not (as was the case in *Spiegla*) on an issue that stems directly from its core duties under the Friends' agreement with the WDNR.

Lastly, Defendants' assertion that the Friends do not have "a First Amendment right to publicly speak out against WDNR when doing so is in direct opposition to WDNR's mission, policies, projects, and programs for the Park" lacks any legal support. Defs.' Op. Br. at 19. Waivers of First Amendment rights or the right to sue must be clear and express. *Faust v. Ladysmith-Hawkins School Systems, Joint Dist. No. 1*, 88 Wis. 2d 525, 532-33, 277 N.W.2d 303, 306 (1979), *on reconsideration*, 88 Wis. 2d 252, 281 N.W.2d 611 (1979) (*per curiam*); *Illinois State Emps. Union, Council 34, Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Lewis*, 473 F.2d 561, 574 n.25 (7th Cir. 1972). There is nothing in the Friends' agreement with the WDNR or state law that expressly and affirmatively waives the Friends' right to speak out against or sue the agency. Defendants' arguments to the contrary are meritless.

      **c.**    **Even assuming the Friends is a public contractor, the speech at issue here is nonetheless entitled to constitutional protection under the *Pickering* balancing test.**

Even assuming the Friends is a public contractor, the Friends nevertheless engaged in constitutionally protected speech when it initiated the lawsuit against the WDNR. "Public employees are entitled to free speech rights under the First Amendment." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). The speech of a public employee or contractor will be considered constitutionally protected when (1) the speech was as a private citizen; (2) the speech addressed a matter of public concern; and (3) the government's interests as an employer in promoting effective and efficient public service do not outweigh the plaintiff's interest in expressing that speech. *Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 792 (7th Cir. 2016); *see also Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 568 (1968).

As explained in the Friends' opposition to Defendants' Motion for Summary Judgment (Pl. Op. Br., at 4-7), the Friends' speech meets all three prongs of this test. Under the first prong, the Friends' speech was not part of its duties as a public contractor, because it was not "commissioned or created" by the WDNR. *Kristofek*, 832 F.3d at 793. Protected speech must "ordinarily [fall] within the scope of [plaintiff]'s duties" and must constitute a public employee's "work product" *Id.* The Friends did not file its lawsuit in the context of the responsibilities under its agreement with the WDNR. As explained above, *see supra* Section II.A.2.a, the Friends filed the lawsuit because it does not believe the WDNR's recent approval of a new master plan is lawful or appropriate.

Under the second prong of the test, the Friends' speech also addressed a matter of public concern. Speech that alleges "government malfeasance addresses matters of public concern in its substance." *Kristofek*, 832 F.3d at 794 (quoting *Miller v. Jones*, 444 F.3d 929, 936 (7th Cir. 2006)). "[S]tatements by public officials on matters of public concern must be accorded First Amendment

protection," even if the statements are directed against the employer. *Pickering*, 391 U.S. at 574.

Here, there can be no doubt that the Friends' speech addresses a matter of public concern: whether the WDNR fulfilled its statutory obligations under the Wisconsin Environmental Policy Act when it authorized construction of a new snowmobile trail in the Park under the new master plan. A state agency's compliance with its statutory obligations in managing public lands is obviously a "matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983).

Third, the Defendants' interest in promoting effective and efficient public service do not outweigh the Friends' interest in engaging in free speech. Under the *Connick-Pickering* balancing test, courts consider:

> (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decisionmaking; and (7) whether the speaker should be regarded as a member of the general public.

*Kristofek*, 832 F.3d at 796. Again, Defendants do not even attempt to argue that these factors weigh in their favor, instead resting their entire argument on the premise that the Friends' lawsuit relates to its status as a state contractor. Defs.' Op. Br. at 17. The *Connick-Pickering* factors clearly weigh in favor of protecting the Friends' speech. The Friends are speaking out on an issue of great importance to the general public—namely, WDNR's compliance with Wisconsin law in managing the state's public lands—and are doing so in an orderly and reasonable manner—by seeking judicial review in Wisconsin state court. There is simply no universe in which any of the *Connick-Pickering* factors weighs in favor of restricting the Friends' speech.

In sum, the Friends is not a public contractor of the WDNR—it is a non-profit organization providing volunteer services to the Park. But even if the Court concludes that the Friends is a public contractor, its speech in this instance would not lack First Amendment protection because the Friends engaged in constitutionally protected speech when it brought its petition for judicial review.

### 3. The Rule Against Speaking Out is unconstitutionally vague and overbroad.

The Rule Against Speaking Out is an unconstitutionally vague and overbroad restriction on speech because the WDNR has not established any clear, objective standards for what it means to "speak out" against the agency. Pl. Op. Br. at 10–13. Defendants essentially respond that, because the Friends is a public contractor, the WDNR has the right to evaluate whether that speech interferes with the agency's mission and to terminate the Friends' agreement accordingly. Defs.' Op. Br. at 20–21. Setting aside the fact that the Friends is not a public contractor (and even if it were, the speech at issue here would still be constitutionally protected), *see supra* Section II.A.1, this argument fails as a matter of law. The Constitution does not immunize the Defendants from First Amendment challenges to vague or overbroad rules, even if they only apply to public employees or contractors.

The fact that an agency has authority to regulate the speech of its contractors or employees does not mean that power is unlimited. That much is clear from the *Pickering* balancing test, which requires courts to consider several factors when evaluating whether an employees' or contractors' speech should be protected under the First Amendment, even though regulations restricting such speech may not be subject to strict scrutiny. *Pickering*, 391 U.S. at 574. Neither of the cases Defendants cite even address the vagueness or overbreadth doctrines—both involved First Amendment retaliation claims. *See Spiegla*, 481 F.3d at 963; *Jungels*, 825 F.2d at 1129. In reality,

this Court has on several occasions invalidated overbroad or vague restrictions on the speech of public employees or contractors. *Muller v. Conlisk*, 429 F.2d 901, 903–04 (7th Cir. 1970) (rule prohibiting police department staff from criticizing the police department deemed unconstitutionally overbroad); *Davis v. Williams*, 598 F.2d 916, 917 (5th Cir. 1979), *on reh'g*, 617 F.2d 1100 (5th Cir. 1980) (fire department regulation prohibiting "conduct prejudicial to good order" was facially overbroad and vague, absent limitation or guidance regarding their scope).

In this case, Defendants offer no substantive defense of the Rule Against Speaking Out other than to claim it reflects their "reasonable governmental interest in regulating and responding to public speech, by its contractors, that interferes with the WDNR's mission." Defs.' Op. Br. at 21. Even assuming that interest exists, it is entirely beside the point. How is an employee or contractor to determine whether a particular statement "interferes with the WDNR's mission"? As the Friends explained, the Defendants have no answer for this—aside from their own arbitrary judgment, the Defendants have failed to explain at any reasonable level of specificity what type of speech is permitted or prohibited under the rule. Defs.' Op. Br. at 20–21. Thus, the rule prohibits potentially protected speech, while simultaneously failing to apprise employees or contractors of what kind of speech is not allowed, and is therefore both unconstitutionally overbroad and vague. The First Amendment does not authorize Defendants to engage in this kind of arbitrary line-drawing, even for employees or contractors.

**4.** **The Court should grant the Friends' motion for summary judgment on Counts III and IV[4] as to Defendants Schmelzer and VanLanduyt because the Friends are properly suing those individuals in their official capacity and seeking prospective relief under *Ex Parte Young*.**

Defendants argue that the Friends' facial First Amendment challenges to the Rule Against Speaking Out (Counts III and IV) must be dismissed because the WDNR is not a "person" that can be sued under 42 U.S.C. § 1983. Defs.' Op. Br. at 21. But the Defendants were the ones that removed this case from Iowa County Circuit Court to this Court and should not now be allowed to claim immunity from suit when they are responsible for putting this case in federal court in the first place. In any event, even if the WDNR is not subject to suit under section 1983, that does not mean that these claims can or should be dismissed in their entirety. Defendants' argument rests on the mistaken assumption that the Friends is asserting these claims solely against the WDNR. Defs.' Op. Br. at 21-23. This is incorrect. The Friends is also asserting these claims against Defendants Schmelzer and VanLanduyt and is seeking prospective relief. Accordingly, while the WDNR may be subject to dismissal as to Counts III and IV, the remaining individual Defendants, sued in their official capacities, are not.

It is well-established that the Eleventh Amendment prohibits an unconsenting state from being subject to suit in federal court, by either its own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). However, this immunity is not absolute. *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 520 (7th Cir. 2021). Under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), there is an exception to state sovereign immunity where

---

[4] Count III of the Complaint alleges that the Rule Against Speaking Out is an unconstitutional content-based restriction on free speech, and Count IV is a vagueness and overbreadth challenge to the Rule Against Speaking Out.

a plaintiff sues a state official seeking prospective relief for an ongoing violation of federal law. *Driftless Area Land Conservancy*, 16 F.4th at 520–21; *see also Edelman*, 415 U.S. at 664.

In this case, the Friends assert facial constitutional challenges to the Rule Against Speaking Out (Counts III and IV) not only against the WDNR, but also against Defendants' Schmelzer and VanLanduyt. Specifically, the Friends have alleged—and indeed, demonstrated at summary judgment—that these officials acted under color of state law when they used the Rule Against Speaking Out as the basis for threatening to terminate the Friends' agreement in response to the lawsuits the Friends filed. (*See* First Amended Compl., ECF No. 28, ¶¶ 45, 52–57, 82, 90–92, 96–98; PPFOF ¶ 24) And the Friends is seeking prospective declaratory relief against those Defendants (*Id.* at Prayer for Relief). Under *Ex Parte Young*, "[d]eclaratory and injunctive relief are paradigmatic examples of prospective relief." *Driftless Area Land Conservancy*, 16 F.4th at 521; *see also Alden v. Maine*, 527 U.S. 706, 747 (1999) (recognizing that *Ex Parte Young* allows "certain suits for declaratory or injunctive relief against state officers" to proceed in federal court); *Steffel v. Thompson*, 415 U.S. 452 (1974) (holding that under *Ex Parte Young*, federal courts can issue declaratory judgment where there is no criminal prosecution in state court). Accordingly, the claims the Friends assert and the relief the Friends is seeking against Defendants Schmelzer and VanLanduyt falls well within the *Ex Parte Young* exception to sovereign immunity. The Defendants' Motion for Summary Judgment as to these individuals on Counts III and IV should therefore be denied.

**B.** **The Court should grant the Friends' motion for summary judgment on Count V because the WDNR did not promulgate the Rule Against Speaking Out pursuant to the required procedures under Wis. Stat. ch. 227.**

**1.** **The Court has subject matter jurisdiction over the Friends' rulemaking claims under Wis. Stat. ch. 227.**

Defendants assert that the Court lacks jurisdiction over the Friends' rulemaking claim under Wis. Stat. ch. 227. Defs.' Op. Br. at 23. That argument is not only at odds with the position the Defendants took just a few weeks ago—when they answered the Friends' amended complaint and *affirmatively alleged* that the Court does indeed have jurisdiction over this claim—but is also directly undermined by the weight of available authority. The Court clearly has supplemental jurisdiction over the Friends' rulemaking claim and there is no good reason for it to decline to exercise that jurisdiction now.

**a.** **This Court has supplemental jurisdiction over the Friends' state-rulemaking claim.**

After the Friends filed this action in Iowa County Circuit Court, the Defendants removed it to this Court, asserting that the Court had federal question jurisdiction over the Friends' constitutional claims under 28 U.S.C. § 1331. Notice of Removal, ECF No. 1, ¶ 6. And because the Court has original (federal question) jurisdiction over the Friends' constitutional claims, it also has supplemental jurisdiction over the Friends' rulemaking claim, which derives from a "common nucleus of operative fact" as the constitutional claims. *See City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164–165 (1997) (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *see also* 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.") Indeed, both claims concern the Defendants' (unlawful) Rule Against Speaking Out and arise from the same set of facts—namely, the Defendants' decision to apply that

rule to the Friends after the Friends filed lawsuits in state court challenging the new master plan and environmental assessment for the Park. *See* PPFOF ¶ 16.

Defendants completely ignore the supplemental jurisdiction statute, instead arguing that Wisconsin law effectively confines challenges to agency rulemaking to Wisconsin circuit court. Defs.' Op. Br. at 23. But that very argument has been rejected by the Supreme Court and at least four federal courts of appeals. In *City of Chicago v. International College of Surgeons*, a property owner filed a petition for judicial review in Illinois state court pursuant to the Illinois Administrative Review Law, raising constitutional and state law claims against the Chicago Landmarks Commission for rejecting its request to demolish a building that had been designated as a historical landmark. 552 U.S. at 160–61. The Defendant removed the case to federal court, but the Seventh Circuit held that the district court lacked jurisdiction over the action. *Id.* at 161–62. The Supreme Court then reversed. It held that the district court clearly had jurisdiction over the constitutional challenges and could exercise supplemental jurisdiction over the related state law claims, notwithstanding the fact that those claims arose under the state administrative procedure act and required "on-the-record review" of the Landmark Commission's decision. *Id.* at 165–68. The Court noted that 28 U.S.C. § 1367 "generally confers supplemental jurisdiction over 'all other claims' in the same case or controversy as a federal question, without reference to the nature of the review." *Id.* at 169.

Following that decision, at least four federal courts of appeals have recognized that state law cannot confine or otherwise limit the original jurisdiction of the federal courts, which is essentially what Defendants are arguing here. *See Wong v. Minn. Dep't of Human Servs.*, 820 F.3d 922, 932 (8th Cir. 2016) (citing cases). In *Wong*, an individual applied for aid from the Minnesota Department of Human Services for a rare genetic condition from which he was suffering. *Id*. at

926. After the agency denied his application, Wong filed an administrative appeal, but the administrative law judge affirmed the department's decision. *Id.* at 927. Wong then filed suit in federal district court, asserting federal constitutional and statutory claims and seeking judicial review of the agency's decision denying his application for aid. *Id.* The district court held that it lacked jurisdiction over the Wong's claim for judicial review of the department's denial of the aid application, reasoning that the relevant Minnesota statute effectively required Wong to seek judicial review in state court.

On appeal, the Eighth Circuit rejected this reasoning. *Id.* at 931–33. The court noted that the district court's reasoning "runs afoul of the well-established notion that 'a state statute cannot proscribe or limit federal jurisdiction.'" *Id.* at 931 (citations omitted). It held that federal jurisdiction is defined by the Constitution and federal law—not state legislatures. *Id.* Following the Supreme Court's lead from *City of Chicago*, 522 U.S. at 174, the Eighth Circuit noted that the district court could exercise supplemental jurisdiction over Wong's state law claim if it derives from a common nucleus of operative fact as a claim otherwise within its jurisdiction. *Id.* at 931–32. The court acknowledged that the Third, Fifth, and Ninth Circuits reached the same conclusion in similar cases and noted that the state law the district court relied upon "lays out one permissible route through which an aggrieved party may appeal from the [department's] order . . . but does not strip the federal court of its authority to hear the same appeal through the exercise of supplemental jurisdiction." *Id.* at 932.

The same rationale applies here. Defendants' attempt to argue that Wisconsin law effectively prevents this Court from hearing the Friends' rulemaking challenge, but *City of Chicago*, 522 U.S. at 174, and its progeny make clear that this is not so. The Friends have asserted claims against the WDNR's Rule Against Speaking Out under the First Amendment and

Fourteenth Amendment, which fall into this Court's original jurisdiction under 28 U.S.C. § 1331. The Friends' state law rulemaking arises from the same facts as these constitutional claims and relates to the Rule Against Speaking Out, making them both part of the same case or controversy. Under the rationale set forth in *City of Chicago*, , 522 U.S. at 174, it makes no difference that the rulemaking claim involves judicial review of a state agency's decision under the state's administrative procedure act. Accordingly, since this Court has original jurisdiction over the Friends' constitutional claims, and the rulemaking claim is inextricably intertwined with those claims, this Court can exercise jurisdiction over both.

   **b.**  **This Court should appropriately apply the law in the cases provided by Defendants.**

   Defendant's assertion that this Court does not have jurisdiction to hear this case is predicated on two cases that are factually and procedurally inapplicable to this case. In *Appointment of Couns. in State v. Wittig*, the Wisconsin Court of Appeals considered whether the Circuit Court of Fond du Lac County had jurisdiction to invalidate a rule under Wis. Stat. § 227.40. 198 Wis. 2d 1, 6, 542 N.W.2d 548 (Ct. App. 1995). At the time of that decision, Wis. Stat. § 227.40 limited judicial review of agency rules to the Dane County Circuit Court. *Wittig*, 198 Wis. 2d at 6. The Court of Appeals concluded that neither the appellate court nor the trial court had jurisdiction to issue an order because the action was originally brought in the Circuit Court of Fond du Lac County, instead of Dane County, as Wis. Stat. § 227.40 required at that time. *Id.* at 6. ("If the trial court lacked jurisdiction, we lack appellate jurisdiction.").

   Unlike *Wittig*, this case was originally and properly filed in Iowa County Circuit Court, since the law now permits judicial review of agency rulemakings in the circuit court for the county where the party asserting the invalidity of the rule resides, or if the party is a nonresident, in the circuit court for the county where the dispute arose. Wis. Stat. § 227.40. Here, the Friends initially

brought this case Iowa County Circuit Court because the Friends is a resident of Iowa County, the claims arose in Iowa County, and the Park is partially located in Iowa County. Even though the case has been removed, Defendants have affirmatively alleged that this Court has jurisdiction following removal, Petition and Notice of Removal, ECF No. 1, at 2, and as noted above, the Court has supplemental jurisdiction over the Friends' rulemaking claim.

Defendants also argue that in *Seneca v. Great Lakes Inter-Tribal Council, Inc*, this Court dismissed claims brought under Wis. Stat. ch. 227 for lack of subject matter jurisdiction. That statement is misleading for several reasons. The plaintiff in *Seneca* argued that the defendant terminated his employment in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disability Act of 1990, the Age Discrimination in Employment Act of 1967, and the Genetic Information Nondiscrimination Act of 2008. No. 21-CV-304-WMC, 2022 WL 1618758, *1 (W.D. Wis. May 23, 2022). In addition to filing that federal suit in this court, the plaintiff filed a complaint with the Equal Rights Division of the Wisconsin Department of Workforce Development, which was dismissed. *Id.* at *2. The Wisconsin Industry and Labor Review Commission ("LIRC") affirmed that dismissal, and the plaintiff sought judicial review in Vilas County Circuit Court, which remained pending while the federal case was ongoing. *Id.*

This Court ultimately dismissed the Plaintiffs' complaint after determining that the defendant was entitled to sovereign immunity as an arm of a federally recognized Native American tribe. *Id.* at **4–5. The Court then provided a fleeting discussion of Wis. Stat. ch. 227 in response to the plaintiff's argument that this court should review LIRC's decision affirming dismissal of his complaint. *Id.* at *5. The Court rejected this argument, noting that this review was already ongoing in Vilas County Circuit Court and that, if plaintiff wanted to appeal that decision, he must proceed to the Wisconsin Court of Appeals. *Id.* Thus, *Seneca* is clearly distinguishable from this case,

where Defendants affirmatively removed this ch. 227 judicial review action that was otherwise properly filed in circuit court and affirmatively alleged that this Court has jurisdiction over that action.

2. **The "Rule Against Speaking Out" is a "rule" subject to Wisconsin rulemaking procedures.**

The WDNR's Rule Against Speaking Out satisfies all elements of the definition of agency rulemaking. It is a statement of policy, of general order or application, that has the force of law, and that is issued by the agency to implement, interpret, or make specific legislation enforced or administered by the agency or to govern the organization or procedure of the agency. Wis. Stat. § 227.01(13); *Wisconsin Legislature v. Palm,* 2020 WI 42, ¶ 22, 391 Wis. 2d 497, 942 N.W.2d 900. Nothing in the Defendants' response brief changes this reality.

a. **The Rule Against Speaking Out is a statement of policy or general order of the WDNR.**

Defendants go to great lengths to minimize the Rule Against Speaking Out, arguing that the Friends' "only proffered evidence to support these allegations is an internal email written by Defendant VanLanduyt." Defs.' Op. Br. at 24. Defendants argue that since the "talking points" within this e-mail "were never used" at a May 24, 2021 meeting of the NRB, they are not a general order or statement of policy from the WDNR. *Id.* at 25. This argument fails for multiple reasons.

First, the Defendants' effort to mischaracterize the WDNR's policy regarding friends groups is supported only by a declaration from Ms. Diane Brusoe, ECF No. 59. As explained in Section II.A.1, *supra*, Ms. Brusoe's new declaration contradicts her sworn deposition testimony, as well testimony from two other WDNR employees, and is nothing more than a thinly veiled attempt to create a genuine issue of material fact where none exists.

Second, looking beyond the problematic nature of the Brusoe Declaration, the WDNR's argument that the talking points "were never used" is both immaterial and false. The WNDR's

Rule Against Speaking Out was used at least once: against the Friends at the meeting that took place on August 5, 2022. PPFOF ¶¶ 18–19. Defendant VanLanduyt prepared an agenda for that meeting that essentially reflected the Rule Against Speaking Out: her notes indicate that WDNR would be initiating its option to terminate its agreement with the Friends within 30 days "with an opportunity to cure if necessary," and that the "only way to cure is to drop the suit." PPFOF ¶ 16. Defendant Schmelzer had a copy of these notes and used them to guide the discussion with the Friends on August 5. PPFOF ¶ 17. At that meeting, the Defendants informed the Friends that, if the Friends did not drop its pending lawsuits, the WDNR would terminate the Agreement and the Friends' association with the Park would be severed. PPFOF ¶ 19.

Thus, Defendants' assertion that the so-called "talking points" in Defendant VanLanduyt's e-mail were not used during one NRB meeting in May 2021 *does not* change the fact that the Rule Against Speaking Out is an official WDNR policy. This much is clear from the actions the Defendants took and the statements they made leading up to and during their August 5, 2021 meeting with the Friends.

<p style="text-align:center"><strong>b.      The Rule Against Speaking Out has the force of law.</strong></p>

Defendants argue that the Rule Against Speaking Out lacks the force of law because the agency has not taken any action against the Friends. Defs.' Op. Br. at 26. This assertion is false, and even if it were true, that does not mean the Rule Against Speaking Out lacks the force of law.

As explained above, the Defendants threatened to terminate its agreement with the Friends unless the Friends withdraw its lawsuits against the WDNR. PPFOF ¶¶ 18–19. Although the WDNR has not yet terminated the agreement, an agency action has the force of law where criminal or civil sanctions may be assessed as a result of a violation; where licensure can be denied; or where the interests of the individuals in a class can be legally affected through enforcement of the agency action. *Wisconsin Elec. Power Co. v. Dep't of Nat. Res.*, 93 Wis. 2d 222, 235, 287 N.W.2d

113 (1980); *Schoolway Transp. Co., Inc. v. Div. of Motor Vehicles, Dep't of Transp.*, 72 Wis. 2d 223, 233–234, 240 N.W.2d 403 (1976). For instance, Wisconsin courts have found that a set of written instructions had the effect and force of law where they could be used to deny certain benefits to individuals. *Cholvin v. Dep't of Health & Fam. Servs.*, 2008 WI App 127, ¶ 29, 313 Wis. 2d 749, 758 N.W.2d 118.

Here, the Rule Against Speaking Out has the force of law because all friends groups, as a class, can be affected through its enforcement. If a friends group voices dissent against WNDR's action, then the WDNR retains discretion to terminate its group's agreement. The rule is not simply some harmless agency guidance or a piece of informal advice from agency management to staff— it threatens to effectively terminate the core of a friends group's contractual relationship with the WDNR and the rights and responsibilities the friends group derives from being a friends group with the WDNR. Therefore, the rule has the force and effect of law.

c.     **The WDNR's Rule Against Speaking Out was issued by the agency.**

Defendants' argument that the Rule Against Speaking Out is merely an "unused internal document," Defs.' Op. Br., at 28, is plainly not true. Wisconsin case law does not provide extensive guidance on the meaning of "issued by an agency," but courts have found that even an unpublished document may be considered "issued." *State ex. rel. Clifton v. Young*, 133 Wis. 2d 193, 200, 394 N.W.2d 769 (Ct. App. 1986) (Memorandum of the executive assistant of the Department of Health and Safety stating that the Department was adopting procedures for determining good forfeitures in case of mandatory release parole violators and directing examiners to consider specific criteria in making such determinations constituted a rule).

Here, of course, the Rule Against Speaking Out summarized the contents of the WDNR's policy with respect to Friends groups. The Rule was used against the Friends Group at the August

5, 2021 meeting, PPFOF ¶¶ 18–19, and three-high ranking agency officials confirmed that it represents the WDNR's current position and policy regarding friends groups. PPFOF ¶¶ 23, 49. Thus, it is clear that the Rule Against Speaking Out was *issued* by the agency.

> **d.     The WDNR's Rule Against Speaking Out was not an internal management rule not subject to Chapter 227 rulemaking procedures.**

The premise of the WDNR's argument—that the Rule Against Speaking Out does not affect private rights or interests and is instead an act of internal management concerning  merely the agency—is plainly incorrect. For one, the Rule Against Speaking Out affects the Friends' First Amendment right to free speech. The WNDR argues that the Friends, as a public contractor, lack such rights. Defs.' Op. Br., at 28. The Friends is not a public contractor, *see* supra II.B. 1, but even assuming *arguendo* that the Friends is a public contractor, the Friends nevertheless engaged in constitutionally protected speech (and thus, a private interest) when it initiated its lawsuits against the WDNR. (*See* Pl. Op. Br. at 7) The Rule Against Speaking Out plainly affects the Friends' First Amendment rights.

Second, the Rule Against Speaking Out also affects the Friends' rights under the Agreement with the WDNR. Under the Agreement, the Friends have a protected property interest in the use of the Park and the proceeds they raise for the park. The Friends' Agreement with the WDNR establishes that the Friends has a protected property interest in using and supporting the Park, as well as the proceeds that the Friends collect pursuant to its fundraising and other promotional activities for the Park. (Pl. Op. Br. at 12) The Rule Against Speaking Out, which threatens termination of said Agreement unless the Friends stop engaging in constitutionally protected speech, obviously threatens the Friends' legally protected right or interest.

## III.    CONCLUSION

For the reasons stated above, this Court should grant Plaintiff's motion for summary judgment on Counts III, IV, and V of the Complaint.

Respectfully submitted,

DATED:  November 14, 2022

<div style="margin-left:50%">

*s/ Brian H. Potts*

Brian H. Potts
BPotts@perkinscoie.com
David R. Zoppo
DZoppo@perkinscoie.com
Jared E. Padway
JPadway@perkinscoie.com
Olivia S. Radics
ORadics@perkinscoie.com
33 E Main St, Ste 201
Madison, Wisconsin 53703-3095
Telephone:  +1.608.663.7460
Facsimile:   +1.608.663.7499

Cassie D. Roberts, *Admitted PHV*
CRoberts@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone:  +1.503.727.2000
Facsimile:   +1.503.727.2222

Kaela M. Shiigi, *Admitted PHV*
KShiigi@perkinscoie.com
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone:  +1.415.344.7000
Facsimile:   +1.415.344.7050

**PERKINS COIE LLP**

*Attorneys for Plaintiff*
*Friends of Blue Mound State Park*

</div>