IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FRIENDS OF BLUE MOUND STATE PARK,

                    Plaintiff,

          v.                                          OPINION and ORDER

WISCONSIN DEPARTMENT OF NATURAL                       21-cv-676-jdp
RESOURCES, STEVEN SCHMELZER,
and MELISSA VANLANDUYT,

                    Defendants.

---

This case arises out of a dispute over the proposed construction of a snowmobile trail in Blue Mound State Park, which is located about 25 miles west of Madison, Wisconsin. The Friends of Blue Mound State Park is a volunteer group organized under state law to "support, assist, and promote the mission and activities" of the park. Wis. Admin. Code § NR 1.71.  In 2021, the Wisconsin Department of Natural Resources approved a master plan for the park that included a new snowmobile trail. The Friends objected to the trail and ultimately sued the department in state court, alleging that the proposed trail was in "a sensitive ecological area" and contending that the department violated state law by failing to consider the environmental impact of the trail. Two months later, department officials threatened to terminate the Friends' agreement with the department unless the Friends dropped its lawsuit.

In response, the Friends filed this lawsuit, contending that the threat was retaliation in violation of the First Amendment and a denial of due process in violation of the Fourteenth Amendment. In addition, the Friends contends that defendants violated both the First Amendment and state law by issuing what the Friends calls a "rule against speaking out" and that the department failed to comply with an open records request related to the threat and

alleged rule. Defendants move for summary judgment on each of these claims, Dkt. 52; the Friends moves for partial summary judgment on its claims related to the alleged "rule against speaking out."

The court will deny defendants' motion for summary judgment on the Friends' retaliation claim. Defendants' position is that the Friends should be treated like an arm of the state that has no First Amendment rights against the department. The court is not persuaded by that extreme view. As a contractor for the department, the Friends has more limited First Amendment rights than a private citizen. But the Friends retains the right to advocate for matters of public concern that fall outside its contractual duties and do not unduly interfere with the department's ability to provide services. The Friends' state-court lawsuit appears to meet that standard.

The Friends' status as a friend group makes it well situated to protect interests of the park that may be overlooked by the department, but the Friends' contractual duties do not include advocacy activities. The objectives of the state-court lawsuit—preventing harm to a sensitive ecological area and requiring the department to comply with the law—are both matters of public concern that are consistent with the department's own mission and duties. The Friends' lawsuit may hinder the department's plans to build the trail, but the department hasn't met its burden to show that its interest in constructing the trail outweighs the Friends' right to seek enforcement of environmental laws in state court. The department isn't entitled to immunity from dissent.

As for the Friends' remaining claims, the court will deny defendants' summary judgment motion on the opens records claims and grant defendants' motion on the due process claim and the claims related to the alleged "rule against speaking out," for the reasons explained

2

below. The court will also give the parties an opportunity to explain whether a trial is needed to resolve the remaining claims, and, if so, whether the court or the jury should serve as the factfinder for the trial.

## BACKGROUND

The following facts are undisputed.

State law gives the department the authority to enter into agreements with "organizations, individuals or others on any subject considered of concern and benefit to the state parks." Wis. Stat. § 27.01(2)(d). Based on that authority, the department enacted Wis. Admin. Code § NR 1.71, which creates a policy on "friends groups," defined as "non-profit, non-stock, tax-exempt corporation[s] organized to support, assist and promote the mission and activities of department properties, facilities and programs and other activities as approved by the department under the provisions of a written agreement with the department." *Id.* § 1.71(3)(b). The stated objectives of friends groups include raising money for department properties and promoting department properties through publications, special events, and interpretive programs. *Id.* § 1.71(4).

The Friends is the official friends group for Blue Mound State Park. The Friends' agreement with the department allows the Friends to host special events, raise money for the park and the department, and sell souvenirs, merchandise, food, and drink, among other things. Dkt. 28-2, §§ 5–9. The department must approve the Friends' interpretative activities and fundraising activities and, each year, the department must review the Friends' projects for compliance with the park's master plan. *Id.* §§ 1.D, 1.E, and 7.B. The Friends receives no

compensation from the department or the state, and its members may not represent themselves as department employees. *Id.* § 2.H.

Either party may terminate the agreement with 30 days' written notice and an explanation of the reasons for the termination. *Id.* § 12.A. If either party terminates or the Friends dissolves, the Friends' assets become property of the department. *Id.* §§ 12.B and 12.C.

In May 2021, the Natural Resources Board for the department approved a Master Plan for the park, authorizing the construction of a new snowmobile trail. In June 2021, the Friends filed a petition for judicial review in Dane County Circuit Court and a petition for a contested case hearing with the department. In the lawsuit, the Friends challenged the department's decision to construct a new snowmobile trail, contending that the department violated state environmental laws by failing to adequately consider the environmental impact of the trail and that the decision to construct the trail was arbitrary and capricious. Dkt. 54-2. The Friends also alleged that the trail "will significantly harm the sensitive ecological landscape that is unique to the Park, create undue strain on other recreational uses at the Park, and decrease the attractiveness of the Park to silent sport enthusiasts." *Id.*, ¶ 24.

On July 15, 2021, the department denied the Friends' petition for a contested case hearing.[1]

In late July 2021, members of the Friends were contacted by defendant Melissa VanLanduyt, who is the recreation partnership section chief for the department's Bureau of Parks and Recreation Management. In an email, VanLanduyt requested a meeting with "one

---

[1] The parties do not explain the basis for the petition before the department or why the department denied it.

or two board members" to "discuss the Blue Mound [State Park] master plan, our agreement and answer any questions you may have."

The day before the meeting, VanLanduyt sent an agenda for the meeting to defendant Steven Schmelzer, who is the department's Parks Director. The agenda included the following topics:

- Review of existing agreement
  - We will be initiating our 30 days with an opportunity to cure if necessary
  - Only way to cure is to drop the suit

Dkt. 28-11.

On August 5, Schmelzer, VanLanduyt, and two representatives from the Friends attended the meeting. Schmelzer told the Friends that it would have to drop its lawsuit, or the department would initiate termination of the existing friends group agreement. Dkt. 20 (Schmelzer Dep. 59:5–61:22).

Approximately one week after the meeting, the Friends filed a second petition for judicial review in Dane County Circuit Court, this time challenging the department's decision to deny the petition for a contested case hearing. The case was later consolidated with the previous petition, and both cases were transferred to Iowa County. In May 2022, the circuit court dismissed the case on the ground that the Friends was barred from suing the department by its articles of incorporation and by § NR 1.71. Dkt. 54-4, at 45.[2] The court also concluded that the Friends was "not in the zone of interests" protected by the statutes it was suing under.

---

[2] The parties did not submit the Friends' articles of incorporation to this court, and defendants do not contend in this case that the articles or § NR 1.71 create a procedural bar to the Friends asserting any of its claims in this court.

*Id.* at 46. The Friends' appeal of that decision is pending, and the circuit court has stayed construction of the snowmobile trail until the appeal is resolved. Dkt. 63-2.

On August 18, 2021, the Friends submitted a public records request to the department, asking for documents related to the August 5 meeting. In November 2021, the department produced the following email dated May 24, 2021, from VanLanduyt to Diane Brusoe, who is the department's deputy division administrator for the Division of Fish, Wildlife, and Parks:

> Here are some points about friends groups.
>
> - We have agreements with friends groups. Those agreements outline our ability to dissolve the agreement for multiple reasons including friends groups speaking out publicly against the department
>
> - Friends groups across the state are generally supportive of the department and remain neutral on most issues Potawatomi is a good example
>
> - Friends groups provide nearly 100 000 hours of volunteer labor they donate tens of thousands of dollars per year in supplies and equipment in small individual amounts and are currently fundraising for more than 60 million in projects to improve the customer experience
>
> - Friends groups from time to time do weigh in publicly on property issues
>
> - The Blue Mound Friends group provided comment on all aspects of the plan and were in support of all elements except for the snowmobile route alternative
>
> - Other partners of the property have also provided comment in support or in opposition of elements of the plan
>
> - Property staff work to keep friends groups and partners up to date on facts regarding property issues especially complex and controversial issues however it is not the departments place to guide or direct any partnership group in their support or communications

- In the event that a friends group does speak out publicly against the department it is the programs responsibility to determine the risks and opportunities associated with the friends group when determining if dissolution of the agreement is warranted

The Friends' claims challenging the alleged "rule against speaking out" are based primarily on this email.

The department has not terminated its agreement with the Friends, and it has not terminated any other agreement with a friends group for speaking out against the department.

ANALYSIS

The Friends is asserting six claims against defendants:

1) Retaliation in violation of the First Amendment by threatening to terminate the Friends' agreement

2) Failure to provide due process by threatening to terminate the agreement

3) Facial challenge under the First Amendment to the "rule against speaking out" as a content-based restriction

4) Facial challenge under the First Amendment to the "rule against speaking out" as vague and overbroad

5) Facial challenge under Wisconsin administrative law to the "rule against speaking out"

6) Failure to comply with the Wisconsin open records law.[3]

---

[3] The Friends also asserts claims under the Wisconsin Constitution for the same conduct that the First Amendment claims are based on. But both sides ignore the state constitutional claims in their summary judgment briefs, so the court will assume that the state and federal constitutional claims rise and fall together. See *Lawson v. Hous. Auth. of Milwaukee,* 270 Wis. 269, 274, 70 N.W.2d 605, 608 (1955) (holding that Article I, Sections 3 and 4 of the Wisconsin Constitution "guarantee the same freedom of speech and right of assembly and petition as do the First and Fourteenth [A]mendments of the United States [C]onstitution.").

Defendants move for summary judgment on each claim; the Friends moves for summary judgment on claims 3) through 5). On a motion for summary judgment, the question is whether there are any genuine factual disputes that could make a difference to the outcome of the case, or, stated another way, whether a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC,* 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). When reviewing cross-motions for summary judgment, the court construes all inferences in favor of the party against whom the motion under consideration is made. *Medical Protective Company of Fort Wayne, Indiana v. American International Specialty Lines Insurance Company*, 911 F.3d 438, 445 (7th Cir. 2018).

## A.  Threshold issues

Before considering the merits of the Friends' claims, the court must consider threshold procedural issues raised by defendants. First, defendants say that the Friends is suing the department on its due process and facial challenges, but the department has sovereign immunity on those claims. The Friends concedes this point, but it clarifies in its summary judgment briefs that it is asserting its federal claims against Schmelzer and VanLanduyt in their official capacities and it is seeking only injunctive and declaratory relief on those claims, so sovereign immunity doesn't apply under *Ex parte Young*, 209 U.S. 123 (1908). *See McDonough Associates, Inc. v. Grunloh,* 722 F.3d 1043, 1049 (7th Cir. 2013) ("*Ex parte Young* recognized what has become one of several well-established exceptions to the Eleventh Amendment bar on suing states in federal court, permitting private citizens to sue state officials in their official capacities to require them to comply with federal law on an ongoing basis.").

Defendants object that the amended complaint doesn't say that the Friends is suing the individual defendants for the facial challenges. That's true, but a claim against individuals in their official capacity is not factually different from a claim against the government entity that employs them. Rather, "[o]fficial capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Both the individuals and the department are named defendants, so defendants weren't deprived of fair notice. Defendants knew the factual basis of the Friends' claims, which is all that matters. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014). So the court will evaluate each of the Friends' federal claims as official-capacity claims against the individual defendants.

Second, defendants say that the court doesn't have jurisdiction over the state-law claims. As for the claim under Wis. Stat. ch. 227, defendants cite Wis. Stat. § 227.40, which states that a lawsuit in the circuit court where the plaintiff resides is "the exclusive means of judicial review" to challenge the validity of a state rule. In response, the Friends cites *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 168 (1997), which holds that 28 U.S.C. § 1367 provides jurisdiction over state-law claims that are sufficiently related to federal claims, even if state law prescribes a specific process for resolving the claim in state court. The Friends also cites *Wong v. Minnesota Dept. of Human Services*, 820 F.3d 922, 931 (8th Cir. 2016), which held that a state statute cannot withdraw federal jurisdiction over a claim that would otherwise be encompassed by § 1367. *Wong* relied on *International College of Surgeons*, several appellate decisions, and *Railway Co. v. Whitton's Administrator*, 80 U.S. (13 Wall.) 270, 286 (1871), which held that a state right "cannot be withdrawn from the cognizance of [a] Federal court by any provision of State legislation that it shall only be enforced in a State court." These cases

9

are persuasive, and defendants don't attempt to distinguish them in their reply brief, so the court concludes that it may exercise jurisdiction over the Friends' ch. 227 claim under § 1367.

As for the Friends' claim under the Wisconsin open records law, defendants contend that the court doesn't have jurisdiction to compel the department to produce records. Defendant cite *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 469 (7th Cir. 1988), which stated that a federal court has "no jurisdiction to issue a mandamus against state officials for violating their duties under state law." The court of appeals' use of the term "jurisdiction" in *Coniston* was imprecise and outdated. *See Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 90 (1998) (jurisdiction has been a "word of many, too many, meanings" (internal quotation marks omitted)). In concluding that a federal court cannot enjoin state officials under state law, the court of appeals relied on *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106, 120–21 (1984), which is about sovereign immunity, and sovereign immunity is not jurisdictional. *Wisconsin Valley Imp. Co. v. U.S.*, 569 F.3d 331, 333–34 (7th Cir. 2009). One of the limitations to the sovereign immunity doctrine discussed in *Pennhurst* is that it is waived when the state removes the case to federal court, as defendants did in this case. *See Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 624 (2002); *Wollwert v. Washburn Cnty.*, No. 19-cv-752-bbc, 2019 WL 6619295, at *1 (W.D. Wis. Dec. 5, 2019). So there is no bar related to jurisdiction or sovereign immunity that prevents the court from deciding the Friends' state law claims.

## B. Claims based on the threat to terminate the agreement

The Friends asserts two claims based on the August 5 meeting with Schmelzer and VanLanduyt. First, the Friends says that defendants' threat to terminate the agreement between the department and the Friends violated the Friends' First Amendment rights under

a retaliation theory. Second, the Friends says that the threat violated its right to due process under the Fourteenth Amendment.

The Friends' requested relief is limited to a declaration and an injunction; it is not seeking damages for its constitutional claims. Only defendants seek summary judgment on these claims.

### 1. Retaliation claim

A retaliation claim under the First Amendment has three elements: (1) conduct of the plaintiff that is protected by the First Amendment; (2) conduct of the defendant that would likely deter the plaintiff from exercising her First Amendment rights; and (3) a causal connection between the plaintiff's protected activity and the defendant's retaliatory act. *See Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). Defendants challenge only the Friends' ability to satisfy the first element.

The Friends' summary judgment briefs refer to both the right to free speech and the right to petition the government for redress of grievances under the First Amendment. *See, e.g.,* Dkt. 64, at 4, 7, 9. The scope of the speech and petition clauses is "not identical," *Thomas v. Collins*, 323 U.S. 516, 530 (1945), but both the Supreme Court and the Court of Appeals for the Seventh Circuit have applied the same standard to retaliation claims under both clauses. *See, e.g, Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 (2011); *Hagan v. Quinn,* 867 F.3d 816, 822–23 (7th Cir. 2017). And both sides assume that the same standard applies, so the court will do so as well.

Determining whether the Friends' state-court lawsuit is protected by the First Amendment involves multiple steps. As an initial matter, the parties dispute whether the court should apply the standard for retaliation claims brought by public contractors or the standard

11

for private citizens. The court concludes that the Friends is properly treated as a public contractor for the reasons explained in the next section.

A First Amendment retaliation claim brought by a public contractor involves three inquiries: (1) was the contractor acting pursuant to its official duties or as a private citizen when it engaged in the conduct at issue? (2) does the contractor's conduct raise issues of public concern? and (3) does the government's interest in promoting effective and efficient public service outweigh the contractor's interest in petitioning the government through its lawsuit? Defendants raise a fourth issue, which is whether the Friends' state-court lawsuit is barred because the Friends didn't have the right under state law to file the lawsuit. The court will address each issue in turn.

### a. Public contractor vs. private citizen

A threshold question is whether the Friends should be treated as a private citizen or a public contractor. This is an important distinction because a public contractor's First Amendment rights are more limited than a private citizen's. A content-based restriction on a private citizen's speech generally must be justified by a narrowly tailored, compelling state interest. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 171 (2015). But a public contractor is subject to the same First Amendment limitations as a public employee. *See O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712, 718–20 (1996); *Board of Cnty. Com'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996); *Comsys, Inc. v. Pacetti*, 893 F.3d 468, 471 (7th Cir. 2018). First Amendment activities of an employee or a contractor have a greater effect than those of a private citizen on the government's ability to provide effective and efficient services, so the government is entitled to more deference when it restricts the speech of an employee or contractor. *See Umbehr*, 518 U.S. at 675–76, 678.

The court agrees with defendants that the Friends is appropriately treated as a public contractor for the purpose of this case because it has an agreement with the department and the threat to terminate that agreement is what prompted this lawsuit. The Friends says that it's not a public contractor because it's a nonprofit organization, its only "customer" is the department, the agreement prohibits the Friends' members from holding themselves out as employees, and they don't get paid. The court isn't persuaded that any of these attributes of the Friends detracts from a conclusion that the Friends is a public contractor for the purpose of its retaliation claim. The bottom line is that it is appropriate to treat the Friends as a public contractor because that's what it is: it provides services to the government on a contractual basis. Its status as an unpaid charitable organization doesn't change the fundamental nature of its relationship with the department.

### b. Pursuant to official duties

In the public employment context, an employee's speech is not protected by the First Amendment if it is "made pursuant to the employee's official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006). The court of appeals has extended this holding to public contractors. *See Comsys*, 893 F.3d at 471.

Defendants contend that the Friends' state-court lawsuit is not protected by the First Amendment under *Garcetti*, citing a section of the petition in which the Friends describes its interests in bringing the petition. Dkt. 54-2, ¶¶ 26–31. Those interests include the Friends' efforts to "enhance the Park," the funds it has raised for the park, the events it has hosted at the park, and the members' personal use of the park. Defendants say that the all the Friends' stated interests are "based on its capacity as an official friends group." Dkt. 56, at 20.

Defendants are conflating interests with duties. Speech or conduct may be protected by the First Amendment even if that speech or conduct is "related to the speaker's job." *Garcetti*, 547 U.S. at 421. *Garcetti* pointed to the example from *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563 (1968), of school teachers who may speak out about how school funds should be spent. Teachers may be interested in that issue because of how it will affect their ability to do their job, and their opinions may be informed by their work experiences. *See id*. But that speech is not part of their job duties, so a teacher's letter to the editor about the issue was protected by the First Amendment. *See id.* In fact, the Court has observed that public employees and contractors "are often in the best position to know what ails the agencies for which they work." *Umbehr*, 518 U.S. at 674 (internal quotations omitted), and "the public has a right to the benefit of those employees' participation in petitioning activity." *Guarnieri*, 564 U.S. at 397.

The Friends is in a similar situation. Its status as a friend group makes it more informed than most members of the public about how the department's policies will affect the park and the community. And its opposition to the snowmobile trail and its decision to file a state-court lawsuit may have been motivated in part by its work for the department. But that doesn't mean that the lawsuit is part of the Friends' duties under its agreement with the department. The agreement is about raising money for the park, promoting the park, and hosting events for the park. Defendants point to nothing in the agreement that requires or encourages the Friends to consider the environmental impact of the department's master plan or to implement state laws aimed at protecting the environment.

Even if the Friends' agreement could be construed as including environmental stewardship of the park, it wouldn't follow that the Friends filed the lawsuit "pursuant to its

official duties" under the agreement. The Friends is not a law firm, and the agreement doesn't direct the Friends to file lawsuits on behalf of the park. Under similar circumstances, courts have held that that *Garcetti* doesn't bar a claim based on retaliation for filing a lawsuit, even when the litigation was about the workplace. *See, e.g., Devlin v. Kalm*, 630 Fed. Appx. 534, 537 (6th Cir. 2015); *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 180 (3d Cir. 2015); *Jordan v. Stroughter*, 520 F. Supp. 3d 892, 898–99 (E.D. Mich. 2021); *Ladach v. City of Romulus*, 2018 WL 5077181, at *8 (E.D. Mich. 2018). These cases are consistent with both Supreme Court and Seventh Circuit precedent concluding that participation in legal proceedings that were related to an employee's job were nonetheless protected under the First Amendment. *See Lane v. Franks*, 573 U.S. 228, 238 (2014) (*Garcetti* didn't apply to testimony at trial about corruption that the plaintiff had uncovered at work); *Fairley v. Fermaint*, 482 F.3d 897, 902 (7th Cir. 2007) (*Garcetti* did not apply to testimony given by county jail guards in prisoner lawsuits because assisting prisoners in their litigation did not fall within the guards' official duties).

Defendants rely on *Comsys*, which involved a public contractor's claim that the city had terminated its contract partly because of a letter that the contractor sent to the city council to provide "as much information as possible [as] they contemplate[d] options with [Comsys's] contracts." 893 F.3d at 471. The court of appeals held that the letter wasn't protected by the First Amendment because "it dealt with contract administration." *Id.* That ruling doesn't help defendants because the Friends' state-court lawsuit had nothing to do with the administration of the Friends' contract with the department. If anything, *Comsys* supports the Friends because the court went on to say that *Garcetti* did *not* bar claims based on alleged retaliation for a criminal complaint that the contractor filed, reasoning that the complaint was not part of the

contractor's duties under the contract. *Id.* at 472. Defendants cite no cases in which a court concluded that a lawsuit filed in the plaintiff's own name was barred by *Garcetti*.

The court concludes that the Friends did not file its state-court lawsuit pursuant to official duties under the contract with the department. The lawsuit was not about matters addressed by the parties' contract, and litigation is not one of the Friends' duties. So *Garcetti* doesn't bar the Friends' retaliation claim.

### c.   Public concern

A lawsuit is protected under the First Amendment only if it relates to a matter of "public concern," *Guarnieri*, 564 U.S. at 398, which means that it has "legitimate news interest," or is "a subject of general interest and of value and concern to the public." *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004).

Defendants say nothing about this issue in their briefs, suggesting that they concede that the Friends' state-court lawsuit relates to matters of public concern. In any event, the court concludes that it does. The Friends' petition alleges that the proposed snowmobile trail would threaten "a sensitive ecological area" of the park and that the department violated state laws by failing to consider the environmental impact of the proposed trail. Dkt. 54-2. Protecting the environment and trying to ensure compliance with the law have both been recognized by the court of appeals as matters of public concern. *See, e.g.*, *Ezell v. City of Chicago*, 846 F.3d 888, 895 (7th Cir. 2017) ("[P]rotecting the environment . . . [is an] important public concern[]."); *Myers v. Hasara*, 226 F.3d 821, 826 (7th Cir. 2000) (proper enforcement of the law is a matter of public concern).

### d. Balancing of the parties' rights and interests

Once a public contractor shows that it wasn't acting pursuant to its official duties and that its speech or conduct relates to a matter of public concern, the burden shifts to the government to show that its interest in promoting effective and efficient public service outweighs the contractor's rights under the First Amendment. *See Umbehr*, 518 U.S. at 675–76; *Matrisciano v. Randle*, 569 F.3d 723, 732–33 (7th Cir. 2009). In the employment context, the court of appeals has identified seven factors, derived from *Pickering*, that may be relevant to this determination:

1) whether the employee's conduct would create problems in maintaining discipline by immediate supervisors or harmony among co-workers;

2) whether the employment relationship is one in which personal loyalty and confidence are necessary;

3) whether the conduct impeded the employee's ability to perform her daily responsibilities;

4) the time, place, and manner of the speech;

5) the context in which the underlying dispute arose;

6) whether the matter was one on which debate was vital to informed decisionmaking;

7) whether the speaker should be regarded as a member of the general public.

*Matrisciano,* 569 F.3d at 732–33. Courts refer to the application of these factors as "*Pickering* balancing." *See, e.g., Roe*, 543 U.S. at 82. It isn't necessary to discuss every factor, *Harnishfeger v. United States*, 943 F.3d 1105, 1115(7th Cir. 2019), and the court shouldn't simply count up the factors to determine how many favor one side or the other, *Volkman v. Ryker,* 736 F.3d 1084, 1091–92 (7th Cir. 2013). Rather, the facts of the case may show that "one factor of great weight" offsets several other factors. *Id.*

The Supreme Court has acknowledged that the balancing may change when the plaintiff is a public contractor. *See Umbehr*, 518 U.S. at 678–79. For example, there may be cases in which "the lack of day-to-day control accentuates the government's need to have the work done by someone it trusts," but in others "the government interests in maintaining harmonious working environments and relationships . . . are attenuated" because "the contractor does not work at the government's workplace and does not interact daily with government officers and employees." *Id.* The Court did not create a list of factors for courts to consider but instead approved "a nuanced approach, which recognizes the variety of interests that may arise in independent contractor cases." *Id.* Neither side cites any cases in which courts have provided further guidance on adapting the *Pickering* test to public contactors.

In their opening brief, defendants contended only that the Friends' lawsuit was categorically unprotected by the First Amendment, so defendants did not engage in *Pickering* balancing. In their reply brief, they acknowledge the factors applied in employment cases but discuss only one of them. Specifically, defendants say that loyalty and confidence are necessary to the parties' relationship because the Friends "closely works" with the department as the "lead volunteer organization for the Park," and the Friends has special access to park facilities. Dkt. 67, at 8. Defendants go on to say that the Friends "cannot be trusted to help finance the snowmobile trail or to provide volunteers to help maintain the trail while it fights tooth and nail for the trail's elimination." *Id.*

Defendants' argument is unpersuasive for multiple reasons. First, loyalty and confidence are only one of several factors under *Pickering*. There are situations in which loyalty and confidence are so important that they are alone sufficient to justify a limitation on First Amendment rights. *See Vargas–Harrison v. Racine Unified School District*, 272 F.3d 964, 971 (7th

Cir. 2001). But this is most often in the context of policy-making employees who exercise significant discretion on political issues on behalf of elected officials. *See, e.g., Hagan*, 867 F.3d at 824–26 (arbitrators appointed by the governor); *Embry v. City of Calumet City, Ill.*, 701 F.3d 231, 235–36 (7th Cir. 2012) (city commissioner appointed by mayor). Defendants don't contend that the Friends qualifies as a policymaker under this line of cases.

Second, defendants don't support their assertion about the closeness of their relationship to Friends groups and the need for loyalty and confidence, and the parties' agreement undermines that assertion. The agreement requires the Friends to meet with a department representative once a year, Dkt. 28-2, § 2.I, and the department representative is required to approve proposed interpretive activities and "maintain regular communications" with the Friends, *id.*, § 1.B and § 1.E. This suggests that the relationship contemplated by the agreement is much less intimate than the typical employee-employer relationship.

Third, defendants' concern that the Friends "cannot be trusted" to meet its obligations under the agreement is speculative. As an initial matter, defendants cite no evidence that the Friends are required or expected to do trail maintenance or that the Friends have control over how the state spends the money they raise for the park. Regardless, defendants cannot rely on hypothetical concerns. They must come forward with evidence that their concerns are reasonable. *See Harnishfeger*, 943 F.3d at 1115–16; *Chaklos v. Stevens*, 560 F.3d 705, 715 (7th Cir. 2009). If the Friends fails to meet its contractual obligations, or if it cannot maintain a collaborative relationship with the department because of its opposition to the trail, that would be the type of disruption that would justify terminating the relationship. But at this point, defendants point to nothing that the Friends has done or said to indicate that it "cannot be trusted" to do its job.

Defendants contend more generally that the Friends' lawsuit isn't protected by the First Amendment because the lawsuit "interferes with [the department's] mission," Dkt. 67, at 7 (citing *Jungels v. Pierce*, 825 F.2d 1127, 1131–32 (7th Cir. 1987) (employer can fire an employee under the *Pickering* standard if the employee's speech "interferes unduly with the mission of his employer")). But defendants don't explain how the Friends' lawsuit interferes with the department's "mission." Defendants appear to equate the department's mission with anything that the department wants to do, including construct a snowmobile trail. But if the government's mission were construed so broadly, it would make the *Pickering* balancing test a meaningless exercise that would require judgment in the government's favor in any case that involved a plaintiff raising a dissenting viewpoint. That is not the law. In the case defendants cite, the alleged interference was the employee's inability to "fairly execute his duties" and disruption caused by the government's potential legal liability for the employee's speech. *Id.*[4] Other cases involving *Pickering* balancing also focus on the employee's ability to do his job and potential disruption to the government's day-to-day functions.[5]

---

[4] The court of appeals ultimately rejected the government's reliance on these asserted interests because the government didn't present any evidence to show that the employee would be unable to perform his duties or that the government would be liable for his speech. *Id.* at 1132.

[5] *See, e.g., Lalowski v. City of Des Plaines*, 789 F.3d 784, 792 (7th Cir. 2015) (police officer's use of "profane and disrespectful language" to members of the public at a protest not protected because it led to confrontation with other officers and undermined public's confidence in department); *Graber v. Clarke*, 763 F.3d 888, 896 (7th Cir. 2014) (focusing on whether union representative's objection to mandatory overtime "interfere[d] with [the employer's] staffing duties"); *Craig v. Rich Twp. High Sch. Dist. 227*, 736 F.3d 1110, 1118 (7th Cir. 2013) (focusing on whether employee's speech would prevent him from being effective at his job); *Chaklos*, 560 F.3d at 715 (focusing on whether speech of employee responsible for training would "slow[] the training process substantially").

In this case, defendants have not presented any evidence that the Friends' lawsuit is preventing the department from running the park. The aim of the Friends' state-court lawsuit is to protect the environment at the park and compel the department to comply with the law. These goals are consistent with the department's own mission statement, which includes "protect[ing] and enhance[ing] our natural resources" and "provid[ing] a healthy, sustainable environment."[6] And implicit in any state agency's mission is compliance with state law.

The time, place, and manner of the plaintiff's conduct is also relevant. *Matrisciano*, 569 F.3d at 732–33. The Friends did not hold a loud protest at the park or lash out at the department in the media. A lawsuit allows the department's day-to-day operations at the park to proceed without disruption or unnecessary friction. It is true that lawsuits "consume the time and resources of the government." *Guarnieri*, 564 U.S. at 390. For this reason, the Supreme Court has extended First Amendment protection to employee lawsuits only when they raise issues of public concern. *See id.* at 383. But defendants cite no authority for the view that the ordinary burdens of litigation are enough to justify suppression of activity that would otherwise be protected under the First Amendment. In any event, defendants do not allege that the Friends' state-court lawsuit is unduly burdensome.

The bottom line is that defendants have not shown that their interest in effective and efficient government outweighs the Friends' right to petition the government.

### e.  Right to bring state-court state lawsuit

Defendants contend that the Friends' state-court lawsuit isn't protected by the First Amendment because the circuit court concluded that that the Friends didn't have the right

---

[6] Wisconsin Department of Natural Resources, "Our mission," https://dnr.wisconsin.gov/about/mission.

under state law to file the case.[7] Defendants cite *Belk v. Town of Minocqua*, 858 F.2d 1258, 1262 (7th Cir. 1988), which states, "only if the substance of Belk's threatened grievance is deserving of first amendment protection does her allegedly retaliatory discharge violate the petition clause."

*Belk* did not hold that a lawsuit isn't protected by the First Amendment unless the plaintiff was able to persuade the court that she was entitled to relief. Rather, *Belk*'s reference to a "grievance . . . deserving of first amendment protection" was simply a reference to the issues whether the grievance raised a matter of public concern and whether the government's interests outweighed the employee's rights. As already discussed, the court has resolved both of those issues in the Friends' favor, so *Belk* doesn't support defendants.

Defendants cite no authority for the view that they may retaliate against a contractor for filing a lawsuit that is later dismissed on procedural grounds. In *Guarnieri*, 564 U.S. at 390, the Court cited *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60–61 (1993), for the proposition that "the Petition Clause does not protect 'objectively baseless' litigation." The court of appeals has similarly held that a litigant doesn't have a constitutional right to file frivolous lawsuits. *Eichwedel v. Chandler*, 696 F.3d 660, 673 (7th Cir. 2012).

But defendants do not contend that the Friends' state-court lawsuit is frivolous, either substantively or procedurally, and there is no indication that it is. The circuit court stayed its decision pending appeal, *see* Dkt. 63-2, which would have required a conclusion that the Friends

---

[7] The Friends says that the circuit court's decision doesn't have preclusive effect because it's on appeal, but that's inconsistent with Wisconsin law. *See Gerard v. Gerard*, 780 F.3d 806, 809 (7th Cir. 2015) ("[A] Wisconsin judgment has preclusive effects even while it is on appeal.").

has some likelihood of success on appeal. *See Waity v. LeMahieu*, 2022 WI 6, ¶ 52, 400 Wis. 2d 356, 389, 969 N.W.2d 263, 279 (in determining whether decision should be stayed, "the relevant inquiry is whether the movant made a strong showing of success on appeal"). Further, defendants filed a 48-page brief with the Wisconsin Court of Appeals, which suggests that the resolution of the issue is not obvious. *See* Respondent's Brief, *Friends of Blue Mound State Park v. Wisconsin Department of Natural Resources*, No. 22AP1127 (Dec. 9, 2022).[8]

Defendants haven't shown that the Friends' state-court lawsuit is frivolous. And the court isn't persuaded that a lawsuit necessarily loses First Amendment protection if it is filed in error.

### f.   Whether a trial is needed on the retaliation claim

Defendants seek summary judgment on the Friends' retaliation claim solely on the ground that the Friends' state-court lawsuit isn't protected by the First Amendment. The court has rejected that conclusion, so defendants aren't entitled to summary judgment on this claim.

The Friends did not move for summary judgment on this claim, and neither side briefed whether the Friends satisfies the other two elements of a retaliation claim. But the undisputed facts appear to show that the Friends can prove each element, so the court will direct the parties to show cause why the court should not grant summary judgment to the Friends.

As for the first element of the Friends' retaliation claim—whether the Friends' state-court lawsuit is protected by the First Amendment—a conclusion that defendants aren't entitled to summary judgment doesn't necessarily mean that the Friends is so entitled. If there

---

[8]https://wscca.wicourts.gov/appealHistory.xsl?caseNo=2022AP001127&cacheId=896074ED CCFA68F3AF5CC1559C86AFB5&recordCount=1&offset=0&linkOnlyToForm=false&sort Direction=DESC.

were genuinely disputed facts about the nature of the Friends' duties or the disruptive effect of their state-court lawsuit on the department, a trial would be needed to resolve those disputes. But neither side has identified a factual dispute, and the facts presented to the court thus far support a conclusion that the Friends' state-court lawsuit is protected by the First Amendment.

The second element of the Friends' retaliation claim is whether the defendants engaged in conduct that would likely deter a person of "ordinary firmness" from exercising her First Amendment rights. *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 585 (7th Cir. 2021). Schmelzer admitted during his deposition that he told the Friends that their agreement would be terminated if the Friends didn't drop its state-court lawsuit, Dkt. 20 (Schmelzer Dep. 59:5–61:22); and VanLanduyt authored an email the previous day stating her intent to raise the issue. The court is not aware of any evidence calling into doubt that both defendants gave the Friends the ultimatum.

The department did not carry through with the threat (at least not yet), but that's not required. The court of appeals has repeatedly held that threats to take adverse actions can satisfy the second element of a First Amendment retaliation claim. *See Douglas*, 964 F.3d at 649 (threat to a prisoner to "withhold small sums" may be sufficient); *Surita v. Hyde*, 665 F.3d 860, 878–79 (7th Cir. 2011) (threat to selectively impose $1,500 fee was sufficient); *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) (threat to "bury" a coworker was sufficient); *see also Fritz v. Charter Tp. of Comstock,* 592 F.3d 718, 725–26 (6th Cir. 2010) (threat to terminate employment contract was sufficient). In this case, terminating the Friends' contract would threaten the group's existence and prevent it from doing much of its work. And it doesn't matter that the Friends was not deterred. The standard is an objective one based on a person

of ordinary firmness, not on whether the plaintiff's First Amendment conduct was actually chilled. *Douglas*, 964 F.3d at 646–47.

The third element is whether the Friends' lawsuit was a motivating factor in defendants' decision to threaten the Friends' with termination, and, if so, whether the defendants would have made the same threat even without the lawsuit. *See Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011). In this case, defendants were explicit: they conditioned a continued relationship with the department on a dismissal of the Friends' lawsuit. This is the rare case in which the plaintiff has direct evidence of a retaliatory intent.

All of this suggests that no reasonable factfinder could decide in defendants' favor on the Friends' retaliation claim. The court may not enter summary judgment without giving defendants an opportunity to be heard, *see Pactiv Corp. v. Rupert,* 724 F.3d 999, 1001–02 (7th Cir. 2013), so the parties will be directed to show cause why the court should not grant summary judgment to the Friends. If the court determines that summary judgment is appropriate, the court will ask for the parties' input on an appropriate declaration and injunction.

### 2.  Due Process claim

The Friends contends that defendants' threat to terminate the agreement violated the Friends' right to due process. A claim under the Due Process Clause requires the plaintiff to prove that the defendant deprived her of liberty or property within the meaning of the clause without giving her fair notice and an opportunity to be heard. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

This claim has multiple problems. First, the Friends doesn't point to a deprivation that it suffered. It says that a threat of a deprivation is sufficient to sustain a due process claim, and

it cites *Cevilla v. Gonzales*, 446 F.3d 658, 661–62 (7th Cir. 2006), which states that "no due process challenge may be made unless the challenger has been (or is threatened with being) deprived of life, liberty, or property."[9] In *Cevilla*, the plaintiff raised a due process claim in the context of removal proceedings, and the court concluded that he had a liberty interest in remaining in the United States. *Id. Cevilla* implicitly recognizes that the Constitution requires pre-deprivation process under some circumstances. But that basic principle doesn't help the Friends under the circumstances of this case. The Friends isn't asking for an injunction requiring defendants to provide it with process because of an imminent deprivation of property or liberty. Rather, the Friends is simply asking for a declaration that defendants already denied the Friends due process. *See* Dkt. 29, at 18. That hasn't happened yet, so the Friends' request for a declaration isn't ripe.

Second, even if a threat of a deprivation were sufficient, the Friends doesn't identify any potential loss that qualifies as a deprivation of liberty or property under the Due Process Clause. Not every adverse action by the government triggers constitutional protections; the plaintiff must identify a property interest or liberty interest first. *Minch v. City of Chicago*, 486 F.3d 294, 302 (7th Cir. 2007). The Friends doesn't contend that it was deprived of a liberty interest. Instead, the Friends says in its amended complaint that it has "a protected property

_____

[9] The Friends also cites *Ford v. Bender*, 768 F.3d 15, 24 (1st Cir. 2014), which states that the right to due process "assures individuals who are threatened with the deprivation of a significant liberty or property interest by the state notice and an opportunity to be heard at a meaningful time and in a meaningful manner." But the court didn't elaborate on its use of the word "threatened," and the word had no bearing on the case. The plaintiff was contending that that the defendant failed to give him due process before placing him in segregation. So *Ford* isn't instructive.

interest in the use of the Park, and protected state-created due process rights under Wis. Stat. ch. 277." Dkt. 28, ¶ 76. Both of these contentions are wrong.

As for the use of the park, citizens generally don't have a property interest in using a park or controlling how it's used. *See Protect Our Parks, Inc. v. Chicago Park District*, 971 F.3d 722, 737 (7th Cir. 2020). The Friends clarifies in its opposition brief that its asserted property interest comes from the friends group agreement, which the Friends says "authorizes—indeed, requires—the Friends to support the Park and engage in activities that benefit the Park" and "grants the Friends the right to use Park facilities." Dkt. 64, at 12. This argument rests on an assumption that a contract necessarily creates a property interest in any right or obligation protected by the contract. That's incorrect. A contract creates a property interest if it contains "substantive criteria" that "clearly limit discretion such that the plaintiff cannot be denied the interest unless specific conditions are met." *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 773–74 (7th Cir. 2021). The Friends cites nothing in the agreement that places substantive limits on the department's right to terminate the agreement, so the Friends' reliance on the agreement fails.

As for the Friends' right under state law to bring the state-court lawsuit, the parties dispute whether the Friends satisfies the criteria for suing under Wis. Stat. ch. 227. But the court need not resolve that dispute because there is a more fundamental problem, which is that a state-created procedural right doesn't trigger the protections of the Due Process Clause. *Manley v. Law*, 889 F.3d 885, 893 (7th Cir. 2018). So even if the Friends has the right to sue under state law, that doesn't give the Friends a federal due process right.

In its opposition brief, the Friends contends for the first time that it has a property interest in the proceeds it collects for the department. But the agreement states that any funds

27

the Friends collects on behalf of the park become property of the state upon termination of the agreement. Dkt. 28-2, § 12. So the Friends would have a property interest in the proceeds upon termination only if the contract placed substantive limits on the department's discretion in terminating the agreement. As already discussed, the Friends hasn't identified any substantive limits on the department's discretion, so the Friends doesn't have a property interest in fundraising proceeds upon termination.

Third, the Friends doesn't identify what additional process it was entitled to receive. The Friends says only that the threat by VanLanduyt and Schmelzer "suggest[s] bias and a lack of impartiality within the [the department] concerning the [department's] and [Natural Resource Board]'s approval of the [Master] Plan and [Environmental Analysis] and the adjudication of Plaintiff's and its members' request for a contested case hearing." Dkt. 78, ¶ 28. Due process does require the government to provide an impartial decisionmaker before depriving a person of liberty or property. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). But the Friends doesn't explain how the approval of the master plan, the environmental analysis, or the denial of the request for a hearing resulted in a deprivation of liberty or property or even threatened such a result. As relevant to this case, those matters were about approval of the new snowmobile trail, which doesn't affect the Friends' liberty or property.

For all of these reasons, the court will grant summary judgment to defendants on the Friends' due process claim.

## C.  Claims based on the "rule against speaking out"

The Friends asserts two claims based on what it says is the department's "rule against speaking out." The claims are based primarily on VanLanduyt's November 18, 2021 email in which she made "some points about friends groups," including the following:

28

- The department's agreements with friends groups "outline our ability to dissolve the agreement for multiple reasons including friends groups speaking out publicly against the department."

- "[I]t is the program[']s responsibility to determine the risks and opportunities associated with the friends group when determining if dissolution of the agreement is warranted" if "a friends group does speak out publicly against the department."

The Friends contends that the email represents a rule that violates the First Amendment because it is vague and overbroad and is invalid under Wis. Stat. ch. 227 because the department enacted the rule without following rulemaking procedures, such as providing notice and an opportunity to comment. The Friends seeks only declaratory relief for both claims.

Plaintiffs are not entitled to declaratory relief as a matter of right. *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 707 (7th Cir. 2014). Rather, courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 379 (7th Cir. 2019) (internal quotation marks omitted).

Courts often decline to decide declaratory judgment actions when there are parallel state proceedings, but the court's discretion is not limited to that situation. *Medical Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 378–79 (7th Cir. 2010). The determination whether to entertain a claim for a declaratory judgment involves "considerations of practicality and wise judicial administration," including "the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288–289 (1995). More specifically, courts may consider what a declaration would add to the other claims in the case, *see Haze v. Kubicek*, 880 F.3d 946, 951 (7th Cir. 2018), whether the declaration would threaten to prematurely decide important and uncertain legal questions, *see Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 534–35 (1st Cir. 1995); 12 *Moore's Federal Practice* § 57.42[5] (3d ed. 2022), and whether a declaration is needed to resolve a ripe legal dispute

between the parties, *see NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 5796 (7th Cir. 1994).

These factors weigh against granting declaratory relief under both federal and state law on the Friends' claims arising out of the May 24 email. One reason for caution is that there is so much uncertainty about whether there is a rule or how it would apply. VanLanduyt doesn't purport to be issuing a "rule" in her email; rather, she is making "some points about friends groups." And the points she makes are about her understanding of what authority the department has under the friends groups' agreements; they are not a directive. VanLanduyt does say that it is "the program's responsibility to determine the risks and opportunities associated with the friends group when determining if dissolution of the agreement is warranted." But VanLanduyt doesn't explain what she means by "risks and opportunities," and she doesn't identify any specific circumstances requiring or even warranting termination of an agreement.

Also unclear is whether VanLanduyt would have the authority to issue a rule or make policy for the department, even if she wanted to. The parties say only that she is the recreation partnership section chief for the department's Bureau of Parks and Recreation Management. Neither side cites evidence regarding what VanLanduyt's authority is within the department.

The Friends attempts to fill the factual gap with deposition testimony from Schmelzer, the parks director. The Friends' counsel asked Schmelzer whether different sections of VanLanduyt's email represent "the department's position." Dkt. 20 (Schmelzer Dep. 85:4–86:7). When asked about the statement that the friends group agreements "outline our ability to dissolve the agreement for multiple reasons including friends groups speaking out publicly against the department," Schmelzer said, "I think they [friends groups] could voice—voice that

30

for sure if there was something they might be opposed to," which suggests that Schmelzer disagrees with a general rule against "speaking out." When asked about the statement that "it is the program[']s responsibility to determine the risks and opportunities associated with the friends group when determining if dissolution of the agreement is warranted" if "a friends group does speak out publicly against the department," Schmelzer said "Yeah, I think that's—that would be accurate."

Schmelzer's testimony indicates partial agreement with VanLanduyt. But Schmelzer's understanding of what the department's "position" is doesn't necessarily represent a department rule, and the court cannot declare that a "position" is unlawful. Officials may have many "positions" or beliefs about the scope of their authority that aren't reduced to rules. The Friends points to no testimony by Schmelzer or anyone else that department staff have been directed to terminate a Friends group agreement if members of the group "speak out" against the department or that the alleged rule has been communicated to anyone outside the participants of this case.

Creating more uncertainty is the lack of enforcement of the alleged rule. Defendants deny that the department has ever terminated a Friends group's agreement for "speaking out," and the Friends cites no contrary evidence. Instead, the Friends points to defendants' threat to terminate the department's agreement with the Friends because of the state-court lawsuit. But the Friends' retaliation claim will resolve the question of whether defendants' threat violated the First Amendment, and if the Friends prevails on that claim, it may seek appropriate injunctive relief. The Friends does not identify a ripe legal dispute that requires the broader relief of invalidating a rule that may not exist.

31

The bottom line is that the Friends' claims based on the May 24 email involve substantial legal and factual uncertainty. And issuing a declaration would provide little legal benefit to the Friends. For those reasons, the court declines to entertain these claims and will grant summary judgment to defendants.

## D. Open records claim

Wisconsin's open records law requires state agencies to make public records available to anyone who requests them, subject to statutory or common-law exceptions. Wis. Stat. §§ 19.35–36; *Mastel v. School District of Elmbrook*, 2021 WI App 78, ¶ 12, 399 Wis. 2d 797, 967 N.W.2d 176. The Friends alleges in its amended complaint that the department initially refused to provide the Friends with at least two documents that were responsive to its records request:

1) the May 24, 2021 email in which VanLanduyt stated her belief that the department had the "ability to dissolve the agreement for multiple reasons including friends groups speaking out publicly against the department"; and

2) the August 4 email in which VanLanduyt outlined the plan to tell the Friends that the department will terminate the agreement unless the Friends drops its state-court lawsuit.

The Friends acknowledges that the department ultimately produced both documents, but the Friends asks the court to order the department "to comply fully with the Plaintiff's open records request submitted on August 18, 2021," Dkt. 28, at 19, presumably because it believes that the department may be withholding other documents. The Friends also asks for punitive damages under Wis. Stat. § 19.37(3), which applies when a defendant has "arbitrarily and capriciously denied or delayed" a response to a request.

The Friends did not move for summary judgment on this claim, and defendants' only argument for dismissal was that the court lacks authority to grant relief under the open records

law. The court rejected that argument in Section A of the opinion, so defendants' motion for summary judgment on this claim will be denied.

The question remains whether a trial is needed on this claim. Neither side submitted any evidence regarding the efforts the department took to locate documents responsive to the Friends' request or the reasons the department failed to provide some relevant documents with its first disclosure. But claims based on the government's failure to comply with a records request are usually decided on the briefs. Wisconsin courts have decided requests for punitive damages under § 19.37(3) on the briefs as well. *See, e.g., State ex rel. Ledford v. Turcotte*, 536 N.W.2d 130, 131 & n.4, 195 Wis. 2d 244, 247 (Ct. App. 1995). So the court will direct the parties to show cause why a trial is needed to decide this claim. If the parties agree that the claim can be decided without a trial, the court will direct the parties to submit supplemental briefs and evidence on this claim.

CONCLUSION

The court will grant summary judgment to defendants on all claims except those for First Amendment retaliation against the individual defendants and violations of Wisconsin's open records law against the department. As for those two claims, the court will give the parties the opportunity to show cause why: (1) the court should not grant summary judgment to the Friends on its retaliation claim; and (2) a trial is needed on the Friends' open records claim.

If a trial is needed, that raises a different question, which is whether the trial should be to the court or a jury. The case is scheduled for a jury trial, *see* Dkt. 38, but that may be a mistake. The Friends is seeking only injunctive and declaratory relief on their retaliation claim. An injunction is a form of equitable relief, which is granted by a court rather a jury. *Marseilles*

33

*Hydro Power, LLC v. Marseilles Land and Water Co.*, 299 F.3d 643, 648 (7th Cir. 2002). A request for declaratory relief also doesn't create a right to a jury trial. *Id.* at 649.

The Friends is seeking punitive damages on their open records claim, and punitive damages are normally decided by a jury. But under Wis. Stat. § 19.37(1) and (3), open records claims, including requests for punitive damages, are decided by the court.

It doesn't appear that there is a jury trial right on either of the Friends' remaining claims, so the court will give the parties an opportunity to show cause why those claims should not be tried to the court if they cannot be resolved without a trial. In the meantime, the court will also stay the deadline for the parties' pretrial disclosures, motions in limine, and proposed trial documents. That deadline is approaching, and the parties' responses to this court could eliminate or alter what the parties need to file, so it makes sense to evaluate those responses before requiring the parties to submit their trial documents.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants Wisconsin Department of Natural Resources, Steven Schmelzer, and Melissa VanLanduyt, Dkt. 52, is GRANTED in part and DENIED in part.

    a. The motion is granted on the following claims: (1) the Wisconsin Department of Natural Resources violated the First Amendment and the Wisconsin Constitution by threatening to terminate the Friends' agreement; (2) all defendants violated the Due Process Clause by threatening to terminate the Friends' agreement; (3) all defendants violated the First Amendment and the Wisconsin Constitution by issuing the "rule against speaking out"; and (4) defendants violated Wis. Stat. ch. 227 by issuing the "rule against speaking out." These claims are DISMISSED with prejudice.

    b. The motion is DENIED on the following claims: (1) defendants Steven Schmelzer and Melissa Vanlanduyt violated the First Amendment and

the Wisconsin Constitution by threatening to terminate the Friends'
agreement; and (2) the Wisconsin Department of Natural Resources
violated Wisconsin's open records law by failing to fully comply with the
Friends' document request.

2. The motion for summary judgment filed by plaintiff Friends of Blue Mound State
Park, Dkt. 48, is DENIED.

3. The parties may have until February 13, 2023, to show cause why: (1) summary
judgment should not be granted to the Friends on its retaliation claim; (2) a trial is
needed on the Friends' open records claim; and (3) any remaining claims should be
decided by a jury rather than the court.

Entered February 2, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge