IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FRIENDS OF BLUE MOUND STATE PARK,

Plaintiff,

v.

WISCONSIN DEPARTMENT OF NATURAL
RESOURCES, STEVEN SCHMELZER,
and MELISSA VANLANDUYT,

Defendants.

OPINION and ORDER

21-cv-676-jdp

---

Two claims remain in this case: (1) a First Amendment claim against defendants Steven Schmelzer and Melissa VanLanduyt for retaliating against plaintiff Friends of Blue Mound State because the Friends filed a lawsuit in state court against the Wisconsin Department of Natural Resources; and (2) a Wisconsin open records claim against the department for arbitrarily and capriciously denying or delaying responses to the Friends' records request. In its previous order, the court directed the parties to show cause on three issues: (1) why summary judgment should not be granted to the Friends on its retaliation claim; (2) why a trial is needed on the Friends' open records claim; and (3) why any remaining claims should be decided by a jury rather than the court. Dkt. 73, at 35.

Both sides have responded to the court's order. Not surprisingly, the parties disagree about whether the court should enter summary judgment in the Friends' favor on the retaliation claim. But the parties agree that the open records claim can be decided on written submissions and that any claims that require a trial should be tried to the court rather than a jury. Dkt. 74 and Dkt. 77.

For the reasons explained below, the court concludes that the Friends is entitled to summary judgment on the retaliation claim. The court will set a schedule to resolve all remaining issues.

ANALYSIS

**A. Retaliation claim**

The Friends contends that Schmelzer and VanLanduyt violated the Friends' First Amendment rights by threatening to terminate the Friends' contract with the department unless the Friends dropped a lawsuit it filed in state court challenging a plan to construct a new snowmobile trail. Defendants moved for summary judgment on this claim, contending that the Friends didn't have a First Amendment right to file the state-court lawsuit. The court denied defendants' motion and directed the parties to show cause why summary judgment should not be granted in the Friends' favor.

A retaliation claim under the First Amendment has three elements: (1) conduct of the plaintiff that is protected by the First Amendment; (2) conduct of the defendant that would likely deter an ordinary person from exercising her First Amendment rights; and (3) a causal connection between the plaintiff's protected activity and the defendant's retaliatory act. *See Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). In their response to the order to show cause, defendants challenge only the second element. They don't challenge the court's conclusion from the show cause order that threats to take an adverse action satisfy the second element of a retaliation claim. *See* Dkt. 73, at 24 (citing *Douglas*, 964 F.3d at 649; *Surita v. Hyde*, 665 F.3d 860, 878–79 (7th Cir. 2011); *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009); *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 725–26 (6th Cir. 2010)). Instead,

defendants say that it is genuinely disputed whether defendants actually threatened the Friends.

In the show cause order, the court relied on two pieces of evidence to support its tentative conclusion that defendants had threatened the Friends with termination. First, the court cited Schmelzer's own deposition testimony. The Friends' counsel asked Schmelzer whether "during the August 5th meeting [he told] the friends group that they would have to drop their lawsuit or the department would be initiating termination of the existing friends group agreement." Dkt. 20, at 59:5–8. In response, Schmelzer said, "we talked about that, yes." *Id.* at 16–17. Second, the court cited the email that VanLanduyt sent Schmelzer the day before the meeting. The email included the agenda for the meeting which stated that "[w]e will be initiating our 30 days [notice of termination] with an opportunity to cure if necessary" and that the "[o]nly way to cure is to drop the suit." Dkt. 28-11.

In their response to the show cause order, defendants say that deposition testimony from both Schmelzer and VanLanduyt shows that there is a material factual dispute. As for VanLanduyt's testimony, defendants cite her response to the question "What did you tell [the Friends] about the agreement and the litigation during [the August 5] meeting?" VanLanduyt answered, "I don't recall if it was Steve or I that specifically said it, but the premise was that their actions were not consistent with the MOU and that termination was one of the options to potentially move forward." Dkt. 25, at 36:15–37:2.

VanLanduyt's testimony is vague and uncertain. She doesn't remember who spoke about the agreement, and she recalls only the "premise" of the conversation. The three other attendees at the meeting all recall Schmelzer telling the Friends' representatives that the agreement would be terminated if the Friends didn't drop the lawsuit. Dkt. 75 (Friends

3

representative recalls Schmelzer twice saying that the department would terminate the agreement with the Friends if the Friends didn't drop its lawsuit) and Dkt. 76 (Friends group representative recalls Schmelzer saying that the department would terminate the agreement if the Friends didn't drop its lawsuit). In other cases, the court of appeals has held that an equivocal statement from a witness isn't enough to create a factual dispute against more definite testimony from other witnesses. *See Tinder v. Pinkerton Security*, 305 F.3d 728, 735–36 (7th Cir. 2002) (statement that witness "does not recall" receiving a document didn't create factual dispute when other witnesses testified that the document "was definitely sent").

In any event, even if VanLanduyt or Schmelzer said only that termination was an "option" if the Friends didn't terminate the lawsuit, the court isn't persuaded that the difference between VanLanduyt's testimony and the testimony of the other witnesses is material. Regardless of whether defendants told the Friends that termination was a certainty or only a possibility, the statement was still a threat that would hang over the Friends so long as the group continued with the lawsuit. VanLanduyt doesn't say that she or Schmelzer identified any way that the Friends could "move forward" and avoid termination without dropping the suit. The statement as VanLanduyt remembers it is akin to a mob boss saying, "That's a nice agreement you've got there. It'd be a shame if something happened to it." Language can be threatening even when it leaves room for ambiguity.

As for Schmelzer's testimony, defendants cite his statement that "we talked about that [the Friends' lawsuit] was—it was contrary to the agreement, the friends group friends' agreement that they signed, or signed off on." Dkt. 20, at 59:9–11. Based on this testimony, defendants say that Schmelzer was not threatening the Friends; he "merely pointed out this

fundamental problem with the Friends' state-court lawsuit and that, by bringing such a suit, they were in violation of the agreement." Dkt. 74, at 4.

This is a legal argument, not a factual dispute. The *reason* why Schmelzer was threatening the Friends with termination doesn't change the fact that Schmelzer was threatening the Friends with termination. Schmelzer doesn't explain why the threat would be any less coercive if the threat was based on Schmelzer's belief that the Friends' state-court lawsuit was a breach of contract rather than simply Schmelzer's displeasure with the lawsuit.

Defendants appear to be contending that their conduct can't qualify as a threat under the First Amendment if they honestly believed that the Friends had breached the agreement. If that's what defendants mean to argue, they haven't made a persuasive case. As an initial matter, Schmelzer was unable to identify during his deposition any provision of the agreement that the Friends violated, Dkt. 20, at 61:17–22, and defendants have not identified a provision now. Rather, defendants' view appears to be based on a general understanding that the purpose of the Friends is to support the department, so anything that the Friends do to oppose the department is a breach of the agreement. But the court already rejected that view in the summary judgment decision, and defendants offer no new support for the view now.

In any event, defendants cite no authority for the view that an adverse act is immune from First Amendment scrutiny if the act is based on a belief that the other party breached an agreement. It is true that an employer can't be held liable on a retaliation claim if the employer took an adverse action against an employee because of an honest belief that the employee had engaged in some wrongdoing unrelated to the employee's protected conduct. *See v. Illinois Gaming Board*, 29 F.4th 363, 369 (7th Cir. 2022). That principle could apply in this case if there were a factual dispute over whether defendants had threatened termination because of

the Friends' lawsuit or because of some failure to comply with a contractual requirement that didn't implicate the First Amendment, such as fundraising or selling souvenirs. But there is no such factual dispute in this case. It's undisputed that defendants' threat was based solely on the Friend's lawsuit. The government cannot evade the First Amendment simply by broadly and unreasonably construing a contract as prohibiting the contractor from engaging in conduct that would otherwise be protected by the First Amendment.[1]

Defendants also point out that "[w]hether retaliatory conduct is sufficiently severe to deter is generally a question of fact." *Douglas*, 964 F.3d at 647. But even questions of fact can be decided without a trial if no reasonable factfinder could answer the question in favor of the nonmoving party. *Id.* That is the situation here. As already discussed, there are no material factual disputes. Even if the court accepts VanLanduyt's testimony—that defendants told the Friends that they might (rather than will) terminate the agreement—that qualifies as a threat that would deter an ordinary person from exercising her rights.

A trial would serve no purpose. Defendants identify no credibility determinations that the court needs to make to decide this issue. And they don't say that they wish to present any additional evidence not covered by their depositions. So a determination of this issue at trial would be no different from a determination based on the evidence in front of the court now. Under these circumstances, the court can discern no reason to delay resolution of the claim.

The court concludes that the Friends is entitled to summary judgment on its retaliation claim. Neither side has discussed the appropriate declaratory and injunctive relief on this claim,

---

[1] If the Friends were seeking damages, a mistaken but reasonable view about how the agreement limited the Friends' First Amendment rights would be relevant to the issue of qualified immunity. But the Friends is seeking only declaratory and injunctive relief, so qualified immunity isn't at issue. *See Volkman v. Ryker,* 736 F.3d 1084, 1091 (7th Cir. 2013).

so the court will give the parties an opportunity to submit a proposed judgment and supplemental briefing on that issue.

## B. Open records claim

The court has not yet considered the merits of the Friends' open records claim because neither side asked the court to do so in their summary judgment briefs. But the parties agree that the Friends' open records claim can be decided on written submissions, so the court will strike the trial date and related deadlines and set a new deadline for filing cross motions for summary judgment on this claim. The parties' briefs should address not just whether the department violated the open records law, but also what the appropriate relief should be for any violations of the law.

## ORDER

IT IS ORDERED that:

1. Summary judgment is GRANTED to the Friends of Blue Mound State Park on its claim that defendants Steven Schmelzer and Melissa VanLanduyt violated the First Amendment by threatening to terminate the agreement between the Friends and the Wisconsin Department of Corrections unless the Friends dropped its state-court lawsuit.

2. The trial date and all related deadlines are STRUCK.

3. The parties may have until March 22, 2023, to submit cross motions for summary judgment that address the following issues: (1) what the appropriate injunctive and declaratory relief is on the retaliation claim; (2) whether the Wisconsin Department of Resources violated Wisconsin's open records law; and (3) whether the Friends is entitled to injunctive relief or punitive damages for any violations of the open records law, and if so, what the relief should be. The parties should also submit a proposed judgment that incorporates all relief. The parties may have until April 12,

2023, to file responses. If the court needs additional input from the parties after receiving the responses, the court will request it.

Entered February 22, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge